**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CARESTREAM HEALTH, INC., *et al.*,[1] | Case No. 22-10778 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' APPLICATION FOR AUTHORIZATION TO
EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC
AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF AUGUST 23, 2022**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this application (the "Application"):[2]

**Relief Requested**

1.    The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), authorizing the Debtors to employ and retain Kurtzman Carson

Consultants LLC ("KCC") as the claims and noticing agent (the "Claims and Noticing Agent") in

the Debtors' chapter 11 cases effective as of August 23, 2022.  In support of this Application, the

Debtors submit the *Declaration of Robert Jordan in Support of the Debtors' Application for*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Carestream Health, Inc. (0334); Carestream Health Acquisition, LLC (0333); Carestream Health Canada Holdings, Inc. (7700); Carestream Health Holdings, Inc. (7822); Carestream Health International Holdings, Inc. (5771); Carestream Health International Management Company, Inc. (0532); Carestream Health Puerto Rico, LLC (8359); Carestream Health World Holdings, LLC (1662); and Lumisys Holding Co. (3232).  The location of the Debtors' service address is:  150 Verona Street, Rochester, New York 14608.

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Scott H. Rosa, Chief Financial Officer of Carestream Health, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not defined in this application have the meanings ascribed to them in the First Day Declaration or in the contemporaneously filed *Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc. and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), as applicable.

*Authorization to Employ and Retain Kurtzman Carson Consultants LLC as Claims and Noticing Agent Effective as of August 23, 2022* (the "Jordan Declaration"), attached hereto as **Exhibit B**.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are section 156(c) of title 28 of the United States Code, sections 503 and 1107 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1(f) and 9013-1(m).

### Background

5.      The Debtors, together with their non-Debtor affiliates (collectively, "Carestream" or the "Company"), are a leading provider of medical imaging and non-destructive testing products with over 100 years of industry experience.  The Company is a partner of choice to approximately 8,000 direct customers and approximately 900 dealers in more than 130 countries.  Its products are used by prominent health systems, hospitals, imaging centers, specialty practices and industrial

companies worldwide.  Headquartered in Rochester, New York, Carestream employs a global workforce of approximately 3,410 employees with approximately 180 contractors.

6.      Carestream, like many businesses, faced significant headwinds in 2020, principally as a result of changing product and customer trends and the global COVID-19 pandemic, which, in light of the Debtors' capital structure, placed substantial strain on the Debtors' businesses.  To alleviate the strain, the Debtors executed a voluntary amend-and-extend transaction in early 2020 that extended the maturities of their first lien revolver and term loan and second lien term loan debt.  The amend-and-extend transaction provided the Debtors with time to meaningfully examine various strategic alternatives, including sale transactions and debt-for-equity exchanges to deleverage the Company.

7.      Ultimately, the Debtors determined that a substantial deleveraging combined with new capital investment was the best path forward for their business.  To implement the foregoing, the Debtors negotiated, and ultimately agreed, with a majority of their prepetition secured lenders and their equity sponsor on the terms of a comprehensive financial restructuring.  The terms of the proposed restructuring are memorialized in a restructuring support agreement (the "RSA") that serves as the foundation of the Debtors' prepackaged Plan.  Under the RSA, the Debtors will eliminate approximately $470 million of prepetition funded debt and raise up to $75 million of new equity capital, while also leaving general unsecured claims unimpaired.  As of August 23, 2022 (the "Petition Date"), the Debtors have fully solicited their Plan, which was accepted by all creditor classes entitled to vote, including lenders collectively holding approximately 73% of the Debtors' prepetition first lien revolver and term loan debt and approximately 98% of the Debtors' prepetition second lien term loan debt.

8.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtors have also filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).   The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

### KCC's Retention

9.      The terms of retention and employment of KCC are set forth in that certain services agreement (the "Services Agreement"), annexed as Exhibit 1 to **Exhibit A**, attached hereto. Pursuant to this Application, the Debtors are seeking to retain and employ KCC as the Claims and Noticing Agent solely on the terms and provisions set forth in this Application and the proposed Order.  The Debtors' selection of KCC to act as the Claims and Noticing Agent satisfies the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)* (the "Claims Agent Protocol") in that the Debtors have obtained and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of services and expertise.

10.      Local Rule 2002-1(f) provides that "[i]n all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file [a] motion [to retain a claims and noticing agent] on the first day of the case or within seven (7) days thereafter."  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is

required by Local Rule 2002-1(f) and is otherwise in the best interests of both the Debtors' estates and their creditors.

11.     Although the Services Agreement contemplates that KCC will provide services for the Debtors outside the scope of 28 U.S.C. § 156, the Debtors will seek authorization by separate application to retain and employ KCC as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for those services.

**KCC's Qualifications**

12.     KCC is a leading chapter 11 administrator and comprises industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  KCC has acted as the official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide.  KCC's cases in this district include the following:  *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. June 6, 2021) (authorizing employment and retention of KCC as debtors' claims and noticing agent); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. June 16, 2020) (same); *In re Pace Indus., LLC*, No. 20-10927 (MFW) (Bankr. D. Del. Apr. 14, 2020) (same); *In re TZEW Holdco LLC*, No. 20-10910 (CSS) (Bankr. D. Del. Apr. 14, 2020) (same); *In re Art Van Furniture, LLC*, No. 20-10553 (CSS) (Bankr. D. Del. Mar. 8, 2020) (same); *In re Valeritas Holdings, Inc.*, No. 20-10290 (LSS) (Bankr. D. Del. Feb. 12, 2020) (same); *In re Melinta Therapeutics, Inc.*, No. 19-12748 (LSS) (Bankr. D. Del. Dec. 30, 2019) (same); *In re Celadon Grp., Inc.*, No. 19-12606 (KBO) (Bankr. D. Del. Dec. 10, 2019) (same); *In re HRI Holding Corp.*, No. 19-12415 (MFW) (Bankr. D. Del. Nov. 15, 2019) (same); *In re Highland Capital Mgmt., L.P.*, No. 19-12239 (CSS) (Bankr. D. Del. Oct. 18, 2019) (same); *In re Bayou Steel BD Holdings, L.L.C.*, No. 19-12153 (KBO) (Bankr. D. Del. Oct. 3, 2019) (same); *In re Pancakes & Pies, LLC (f/k/a Perkins & Marie Callender's, LLC)*, No. 19-11743 (KG) (Bankr. D. Del. Aug. 6, 2019)

(same); *In re Emerge Energy Services LP*, No. 19-11563 (KBO) (Bankr. D. Del. Jul. 17, 2019) (same); *In re Fuse, LLC*, No. 19-10872 (KG) (Bankr. D. Del. Apr. 24, 2019) (same); *In re Achaogen, Inc.*, No. 19-10844 (BLS) (Bankr. D. Del. Apr. 16, 2019) (same); *In re Southcross Energy Partners, L.P.*, No. 19-10702 (MFW) (Bankr. D. Del. Apr. 2, 2019) (same); *In re Novum Pharma, LLC*, No. 19-10209 (KJC) (Bankr. D. Del. Feb. 5, 2019) (same); *In re Egalet Corp.*, No. 18-12439 (BLS) (Bankr. D. Del. Nov. 1, 2018) (same); *In re Welded Constr., L.P.*, No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) (same); *In re ATD Corp.,* No. 18-12221 (KJC) (Banrk. D. Del. Oct. 5, 2018) (same); *In re RM Holdco LLC*, No. 18-11795 (MFW) (Bankr. D. Del. Aug. 7, 2018) (same); *In re Heritage Home Grp. LLC*, No. 18-11736 (KG) (Bankr. D. Del. Jul. 31, 2018) (same); *In re Tintri, Inc.*, No. 18-11625 (KJC) (Bankr. D. Del. Jul. 11, 2018) (same); *In re VER Techs. Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. Apr. 6, 2018) (same); *In re The Walking Co. Holdings, Inc*., No. 18-10474 (LSS) (Bankr. D. Del. Mar. 8, 2018) (same); *In re Rand Logistics, Inc.*, No. 18-10175 (BLS) (Bankr. D. Del. Jan. 31, 2018) (same).

13.    By appointing KCC as the Claims and Noticing Agent in these chapter 11 cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Bankruptcy Court for the District of Delaware (the "Clerk") will be relieved of the administrative burden of processing any such claims.

## Services to Be Provided by KCC

14.    This Application pertains only to the work to be performed by KCC under the Clerk's delegation of duties as permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f).  Any

work to be performed by KCC outside of this scope is not covered by this Application or by any

order of the Court granting approval hereof.[3]

15.    Subject to the Court's approval, at the request of the Debtors, and to the extent

necessary, KCC will perform the following tasks in its role as the Claims and Noticing Agent in

these chapter 11 cases (collectively, the "Claims and Noticing Services"), as well as all quality

control relating thereto:

> (a)    preparing and serving required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors or the Court, including, without limitation:  (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code (if any); (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan or plans, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

> (b)    if necessary, maintaining an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

> (c)    maintaining a (i) list of all potential creditors, equity holders, and other parties in interest and (ii) "core" service list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010, and updating said lists and making said lists available upon request by a party-in-interest or the Clerk;

> (d)    if necessary, furnishing a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim,

---

[3]    As noted above, the Debtors plan to seek authorization to retain and employ KCC as administrative advisor in these chapter 11 cases by separate application pursuant to section 327(a) of the Bankruptcy Code because the administration of these chapter 11 cases will require KCC to perform duties outside the scope of 28 U.S.C. § 156(c).

after such notice and form are approved by the Court, and notifying such potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     maintaining a post office box or address for the purpose of receiving claims and returned mail, and processing all mail received;

(f)     for all notices, motions, orders, or other pleadings or documents served, preparing and filing, or causing to be filed, with the Clerk an affidavit or certificate of service within seven business days of service which includes:  (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was served (in alphabetical order) with their mailing or email addresses as appropriate; (iii) the manner of service; and (iv) the date served;

(g)     processing all proofs of claim received, including those received by the Clerk, checking said processing for accuracy, and maintaining the original proofs of claim in a secure area;

(h)     maintaining the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk, and, upon the Clerk's request, providing the Clerk with certified, duplicate unofficial Claims Registers;

(i)     specifying in the Claims Registers the following information for each claim docketed:  (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(j)     implementing necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(k)     recording all transfers of claims and providing any notices of such transfers, as required by Bankruptcy Rule 3001(e);

(l)     relocating, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of KCC, not less than weekly;

(m)    upon completion of the docketing process for all claims received to date for each case, turning over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(n)    monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and making necessary notations on or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(o)    identifying and correcting any incomplete or incorrect addresses in any mailing or service lists;

(p)    assisting in the dissemination of information to the public and responding to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website or call center;

(q)    if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contacting the Clerk's office within three days of KCC receiving notice to KCC of entry of the order converting the cases;

(r)    30 days prior to the close of these chapter 11 cases, to the extent practicable, requesting that the Debtors submit to the Court a proposed order dismissing KCC as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(s)    within seven days of notice to KCC of entry of an order closing these chapter 11 cases, providing to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

(t)    at the close of these chapter 11 cases:  (i) boxing and transporting all original documents, in proper format, as provided by the Clerk, to (1) the Philadelphia Federal Records Center, located at 14700 Townsend Road, Philadelphia, PA 19154, or (2) any other location requested by the Clerk; and (ii) docketing a completed SF-135 Form indicating the accession and location numbers of the archived claims.

16.    The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

**KCC's Compensation**

17.     The Debtors respectfully request that the undisputed fees and expenses incurred by KCC in the performance of the Claims and Noticing Services in accordance with the terms of the Services Agreement be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

18.     KCC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred.  KCC further agrees to serve monthly invoices on (a) the Debtors, (b) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (c) counsel for the Debtors, (d) counsel for any official committee appointed to monitor the expenses of the Debtors in these chapter 11 cases, and (e) any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Services Agreement or the monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If a resolution is not achieved, the parties may seek resolution of the matter from the Court.

19.     Prior to the Petition Date, the Debtors provided KCC a retainer in the amount of $25,000.  KCC seeks to first apply the retainer to all prepetition invoices and, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during the cases as security for the payment of fees and expenses incurred under the Services Agreement.

20.     Additionally, under the terms of the Services Agreement, the Debtors have agreed to indemnify, defend, and hold harmless KCC and its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from KCC's gross negligence or

willful misconduct or as otherwise provided in the Services Agreement or any order authorizing

the employment and retention of KCC.  The Debtors believe that such an indemnification

obligation is customary, reasonable, and necessary to retain the services of a claims and noticing

agent in these chapter 11 cases.

### KCC's Disinterestedness

21.    Although the Debtors do not propose to employ KCC under section 327 of the

Bankruptcy Code pursuant to this Application, KCC has nonetheless reviewed its electronic

database to determine whether it has any relationships with the creditors and parties in interest

provided by the Debtors, and the Debtors have been advised that, to the best of KCC's knowledge,

information and belief, and except as disclosed in the Jordan Declaration, KCC has represented

that it neither holds nor represents any interest materially adverse to the Debtors' estates in

connection with any matter on which it would be employed.

22.    Moreover, in connection with its retention as Claims and Noticing Agent, KCC

represents in the Jordan Declaration, among other things, that:

(a)    KCC is not a creditor of the Debtors;

(b)    KCC is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;

(c)    KCC will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(d)    by accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(e)    in its capacity as the Claims and Noticing Agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(f)     KCC will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(g)     in its capacity as the Claims and Noticing Agent in these chapter 11 cases, KCC will not intentionally misrepresent any fact to any person;

(h)     KCC shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)     KCC will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by KCC as the Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk.

23.     If any new facts or circumstances are discovered that require additional disclosure, KCC will supplement its disclosure to the Court.

### Basis for Relief Requested

**I.     Retention and Employment of KCC as Claims and Noticing Agent Is Permitted.**

24.     Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases. Fed. R. Bankr. P. 2002(f). Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the Clerk give notice of the various matters described below. Moreover, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases. 28 U.S.C. § 156(c). Specifically, the statute states, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of

such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

25.     In addition, Local Rule 2002-1(f) provides:

Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c).  In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven days thereafter.  The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the [Claims and Noticing Services].

Del. Bankr. L.R. 2002-1(f).  Accordingly, Bankruptcy Rule 2002, Local Rule 2002-1(f), and section 156(c) of title 28 of the United States Code empower the Court to utilize outside agents and facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of such services.

26.     For all of the foregoing reasons, the Debtors believe that the retention of KCC as the Claims and Noticing Agent in these in the chapter 11 cases is necessary and in the best interests of the Debtors, their estates and creditors, and all parties in interest.  Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by KCC under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

27.     By separate application, the Debtors intend to seek authorization to retain and employ KCC as the administrative agent in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, because the administration of the chapter 11 cases will require KCC to perform duties outside the scope of 28 U.S.C. § 156(c).

**II.      Relief Effective as of the Petition Date Is Appropriate.**

28.      Pursuant to the Debtors' request, KCC has agreed to serve as the Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention effective as of the Petition Date, so that KCC may be compensated for its services prior to approval of this Application.  The Debtors believe that no party in interest will be prejudiced by granting the employment effective as of the Petition Date, as provided in this Application, because KCC has provided and continues to provide valuable services to the Debtors' estates in the interim period.  The Local Rules empower courts in this district to approve employment effective as of the petition date, and the Debtors submit that such approval is justified here.  *See, e.g.*, Del. Bankr. L.R. 2014-1(b) ("If the retention application is granted, the retention shall be effective as of the date the application was filed, unless the Court orders otherwise.").

29.      Courts in this jurisdiction have routinely approved employment effective as of the petition date, similar to that requested herein, in matters comparable to this matter. *See, e.g.*, *In re Riverbed Tech., Inc.,* No. 21-11503 (CTG) (Bankr. D. Del. Nov 18, 2021) (approving employment of a claims and noticing agent to perform claims and noticing services effective as of the petition date); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. June 11, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021) (same); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Sept. 16, 2020) (same); *In re Extraction Oil & Gas, Inc.,* No. 20-11548 (CSS) (Bankr. D. Del. June 16, 2020) (same).[4]

---

[4]      Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application.  Copies of these orders are available upon request to the Debtors' proposed counsel.

## Compliance with Claims and Noticing Agent Protocol

30.     This Application complies with the Claims Agent Protocol, in that the Debtors have obtained and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of services and expertise.

31.     To the extent that there is any inconsistency between this Application, the Order, and the Engagement Agreement, the Order shall govern.

## Notice

32.     The Debtors will provide notice of this Application to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Agent; (d) counsel to the First Lien Agent and the Second Lien Agent; (e) counsel to the Crossover Group; (f) the office of the attorney general for each of the states in which the Debtors operate; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Application is seeking "first day" relief, within two business days of the hearing on this Application, the Debtors will serve copies of this Application and any order entered in respect to this Application as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

33.     No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated:  August 23, 2022
Wilmington, Delaware

*/s/ Scott H. Rosa*
NAME: Scott H. Rosa
TITLE: Chief Financial Officer
of Carestream Health, Inc., *et al.*