# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CARESTREAM HEALTH, INC., *et al.*,[1] | ) Case No. 22-10778 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:[2]

### Relief Requested

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), (a) authorizing the Debtors to (i) maintain coverage under the Insurance Policies and the Surety Bonds (each as defined herein) and pay related obligations, and (ii) renew, supplement, modify, or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Carestream Health, Inc. (0334); Carestream Health Acquisition, LLC (0333); Carestream Health Canada Holdings, Inc. (7700); Carestream Health Holdings, Inc. (7822); Carestream Health International Holdings, Inc. (5771); Carestream Health International Management Company, Inc. (0532); Carestream Health Puerto Rico, LLC (8359); Carestream Health World Holdings, LLC (1662); and Lumisys Holding Co. (3232). The location of the Debtors' service address is: 150 Verona Street, Rochester, New York 14608.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Scott H. Rosa, Chief Financial Officer of Carestream Health, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration or in the contemporaneously filed *Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc. and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), as applicable.

purchase insurance and surety coverage in the ordinary course of business; and (b) granting related relief. In addition, the Debtors request that the Court schedule a final hearing approximately thirty-five days after the commencement of these chapter 11 cases to consider entry of the Final Order.

**Jurisdiction and Venue**

2.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1 and 9013-1.

**Background**

5.  The Debtors, together with their non-Debtor affiliates (collectively, "Carestream" or the "Company"), are a leading provider of medical imaging and non-destructive testing products with over 100 years of industry experience. The Company is a partner of choice to approximately 8,000 direct customers and approximately 900 dealers in more than 130 countries. Its products

are used by prominent health systems, hospitals, imaging centers, specialty practices and industrial companies worldwide. Headquartered in Rochester, New York, Carestream employs a global workforce of approximately 3,410 employees with approximately 180 contractors.

6. Carestream, like many businesses, faced significant headwinds in 2020, principally as a result of changing product and customer trends and the global COVID-19 pandemic, which, in light of the Debtors' capital structure, placed substantial strain on the Debtors' businesses. To alleviate the strain, the Debtors executed a voluntary amend-and-extend transaction in early 2020 that extended the maturities of their first lien revolver and term loan and second lien term loan debt. The amend-and-extend transaction provided the Debtors with time to meaningfully examine various strategic alternatives, including sale transactions and debt-for-equity exchanges to deleverage the Company.

7. Ultimately, the Debtors determined that a substantial deleveraging combined with new capital investment was the best path forward for their business. To implement the foregoing, the Debtors negotiated, and ultimately agreed, with a majority of their prepetition secured lenders and their equity sponsor on the terms of a comprehensive financial restructuring. The terms of the proposed restructuring are memorialized in a restructuring support agreement (the "RSA") that serves as the foundation of the Debtors' prepackaged Plan. Under the RSA, the Debtors will eliminate approximately $470 million of prepetition funded debt and raise up to $75 million of new equity capital, while also leaving general unsecured claims unimpaired. As of August 23, 2022 (the "Petition Date"), the Debtors have fully solicited their Plan, which was accepted by all creditor classes entitled to vote, including lenders collectively holding approximately 73% of the Debtors' prepetition first lien revolver and term loan debt and approximately 98% of the Debtors' prepetition second lien term loan debt.

8. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have also filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

**The Insurance Policies, the Surety Bonds, and Related Payment Obligations**

9. In the ordinary course of business, the Debtors maintain thirty-eight insurance policies (collectively, the "Insurance Policies") administered by various third-party insurance carriers (collectively, the "Insurance Carriers"), as well as twenty surety bonds (collectively, the "Surety Bonds") issued by Atlantic Specialty Insurance Company (the "Surety"). The Insurance Policies provide coverage for, among other things, the Debtors' property, general liability, automobile liability, transportation liability, cyber liability, workers' compensation, umbrella coverage, casualty liability, and directors' and officers' liability. The Surety Bonds are issued in favor of various federal, state, and industry regulatory agencies to guarantee certain obligations related to U.S. Customs imports and drawbacks, and various state licenses and permits.

10. The Insurance Policies and the Surety Bonds, each of which is listed in **Exhibit C** attached hereto, are essential to the ongoing operation of the Debtors' business.[3] The Insurance

---

[3] The Debtors also maintain certain self-insurance policies that are not reflected in **Exhibit C** and for which relief is sought through the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* (the "Wages Motion") filed contemporaneously herewith. The attached **Exhibit C** includes an Insurance Policy related to the Debtors' workers' compensation program, which program is described in the Wages Motion. For the avoidance of doubt, this motion asks the

Policies generally are one-year in length, with no obligation to renew upon expiration of any of the Insurance Policies. The annual premiums for the Insurance Policies and the Surety Bonds total approximately $3.96 million, not including applicable deductibles.[4] The majority of Insurance Policy premiums are paid in a single lump sum shortly after the Insurance Policy inception date.[5] The Debtors estimate that approximately $650,000 in prepetition premiums are outstanding on account of the Insurance Policies or the Surety Bonds. The Debtors seek authority to pay any prepetition obligations owing on account of the Insurance Policies and the Surety Bonds in the ordinary course of business as they become due to ensure uninterrupted coverage thereunder.

11. The Debtors' ability to maintain the Insurance Policies and the Surety Bonds, to renew, supplement, and modify the same as needed, and to enter into new insurance policies and surety bonds as needed in the ordinary course of business, is essential to preserving the value of the Debtors' businesses, operations, and assets. Moreover, in many instances, insurance or surety coverage is required by statutes, rules, regulations, and contracts that govern the Debtors' commercial activities, including the requirements of the Office of the United States Trustee for the

---

Court to authorize the Debtors' payment of any prepetition obligations on account of the related Insurance Policy to the extent not covered by the relief requested in the Wages Motion.

[4] Some of the Insurance Policies require the Debtors to pay a per-incident deductible (collectively, "Deductibles"). Generally, if a claim is made against such Insurance Policies, the applicable Insurance Carrier will administer the claim and make payments in connection therewith. As of the Petition Date, the Debtors believe that there is approximately $615,000 of accrued but unpaid amounts outstanding on account of the Deductibles, none of which has been invoiced. Out of an abundance of caution, the Debtors seek authority, but not direction, to pay all prepetition amounts that may be due and owing on account of the Deductibles and to continue honoring all payment obligations under the Deductibles in the ordinary course of business to ensure uninterrupted coverage thereunder.

[5] The following Insurance Policies are paid in installments, based on estimated exposures, and are subject to audit after the expiration of such policy: (i) the U.S. Automobile Liability policy, by and among the Debtors and Everest Denali Insurance Company (RM5CA 00001-221, RM5CA 00002-221); (ii) the Commercial General Liability policy, by and among, the Debtors and Everest National Insurance Company (RM5GL 00001-221); and (iii) the Worker's Compensation and Employer's Liability policies, by and among, the Debtors and Everest Premier Insurance Company (RM5WC 00001-221, RM5WC 00013-221 & RM5WC 00015-221). The premiums are recalculated based upon the actual exposures during the policy period resulting in an additional or return premium.

District of Delaware (the "U.S. Trustee") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, the Debtors seek authorization to maintain the Insurance Policies and the Surety Bonds, to pay related prepetition obligations, to renew, supplement, or modify the Insurance Policies and the Surety Bonds as needed, and to enter into new insurance policies and surety bonds in the ordinary course of business.

### The Debtors' Insurance and Surety Brokers

12. The Debtors obtain all of their Insurance Policies and the Surety Bonds through either Willis Towers Watson Northeast, Inc. or Marsh USA Inc. (collectively, the "Brokers"). The Brokers, among other things: (a) assist the Debtors in obtaining comprehensive insurance and surety coverage for their operations in a cost-effective manner; (b) manage renewal data; and (c) provide ongoing support throughout the applicable policy periods for the Insurance Policies and the Surety Bonds. In exchange for these services, the Debtors pay a broker commission and brokerage fees (collectively, the "Broker Fees").

13. As of the Petition Date, the Debtors owe approximately $160,550 to the Brokers on account of Broker Fees.[6] The Debtors request authority to pay the prepetition obligations owed to the Brokers and to continue to pay the Brokers for services rendered in the ordinary course of business to ensure uninterrupted coverage under their Insurance Policies and Surety Bonds.

### Basis for Relief

14. The relief requested herein is essential to the Debtors' continuation of ordinary-course operations and, as such, is warranted under sections 105(a) and 363 of the

---

[6] The Debtors paid Marsh USA, Inc. ("Marsh") an initial Broker Fee at the beginning of 2022. Marsh earns commissions throughout the year in connection with renewal or replacement of certain policies. At the end of 2022, to the extent the initial Broker Fee and commissions paid to Marsh on such policies exceed $260,550, Marsh will remit the excess to the Debtors, up to the amount of the initial Broker Fee.

Bankruptcy Code. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

15. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also Armstrong World*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *In re Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).

16. Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies

7

a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re Just for Feet*, 242 B.R. at 825−26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *In re Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497.

17. For the Debtors, as for many other businesses, maintaining appropriate insurance and surety coverage is essential to the continuation of ordinary-course operations. Failure to do so could, among other things, expose the Debtors to significant economic and operational risk and jeopardize their going-concern value and also violate applicable legal requirements (including the U.S. Trustee's operating guidelines).

8

18. The relief requested in this motion is necessary to allow the Debtors to maintain appropriate insurance and surety coverage during these chapter 11 cases and thereby continue ordinary-course operations while these cases are pending.

19. Courts in this district have granted relief similar to the relief requested herein under sections 105(a) and 363(b) of the Bankruptcy Code. *See, e.g., In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (authorizing debtors on a final basis to continue their current insurance policies, pay prepetition premiums and brokerage fees, enter into new insurance policies, and continue and renew their surety bond program); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. Jul. 14, 2021) (authorizing debtors on a final basis to continue their current insurance policies, pay prepetition premiums, brokerage fees, and related financing agreement premiums, and enter into new insurance policies); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (authorizing debtors on an interim basis to continue their current insurance policies, pay prepetition premiums, brokerage fees, and related financing agreement premiums, enter into new insurance policies, and continue and renew their surety bond program); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Jun. 16, 2020) (authorizing debtors on a final basis to continue their current insurance policies, pay prepetition premiums, brokerage fees, and related financing agreement premiums, enter into new insurance policies, and continue and renew their surety bond program); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 12, 2019) (same).[7]

---

[7] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

20. The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

21. Bankruptcy Rule 6003 empowers a court to grant certain relief within the first 21 days after the petition date only "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations, and the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this important juncture. The requested relief is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and the Court should grant the requested relief.

### Reservation of Rights

22. Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment

made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

23. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

24. The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Agent; (d) counsel to the First Lien Agent and Second Lien Agent; (e) counsel to the Crossover

Group; (f) the office of the attorney general for each of the states in which the Debtors operate; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) the Insurance Carriers; (j) the Surety; (k) the Brokers; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

25. No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

| | |
|---|---|
| Dated: August 23, 2022<br>Wilmington, Delaware | */s/ Laura Davis Jones*<br>Laura Davis Jones (DE Bar No. 2436)<br>Timothy P. Cairns (DE Bar No. 4228)<br>Edward Corma (DE Bar No. 6718)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-4100<br>Facsimile: (302) 652-4400<br>Email: ljones@pszjlaw.com<br>tcairns@pszjlaw.com<br>ecorma@pszjlaw.com<br><br>-and-<br><br>Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)<br>Tricia Schwallier Collins (*pro hac vice* pending)<br>Yusuf U. Salloum (*pro hac vice* pending)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br>Email: patrick.nash@kirkland.com<br>tricia.schwallier@kirkland.com<br>yusuf.salloum@kirkland.com<br><br>-and-<br><br>Nicole L. Greenblatt, P.C. (*pro hac vice* pending)<br>Rachael M. Bentley (*pro hac vice* pending)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>Email: nicole.greenblatt@kirkland.com<br>Email: rachael.bentley@kirkland.com<br><br>*Proposed Co-Counsel for the Debtors and Debtors in Possession* |