# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CARESTREAM HEALTH, INC., *et al.*,[1] | ) Case No. 22-10778 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE PAYMENT OF CERTAIN TAXES AND FEES AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:[2]

**Relief Requested**

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), (a) authorizing the Debtors to remit and pay (or use tax credits to offset) Taxes and Fees (as defined herein) in the ordinary course of business that are payable or become payable during these chapter 11 cases (including any obligations subsequently determined upon audit or otherwise to be owed for periods prior to the Petition Date); and (b) granting related relief. In addition, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Carestream Health, Inc. (0334); Carestream Health Acquisition, LLC (0333); Carestream Health Canada Holdings, Inc. (7700); Carestream Health Holdings, Inc. (7822); Carestream Health International Holdings, Inc. (5771); Carestream Health International Management Company, Inc. (0532); Carestream Health Puerto Rico, LLC (8359); Carestream Health World Holdings, LLC (1662); and Lumisys Holding Co. (3232). The location of the Debtors' service address is: 150 Verona Street, Rochester, New York 14608.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Scott H. Rosa, Chief Financial Officer of Carestream Health, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration or in the contemporaneously filed *Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc. and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), as applicable.

Debtors request that the Court schedule a final hearing approximately thirty-five days after the commencement of these chapter 11 cases to consider entry of the Final Order.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1 and 9013-1.

**Background**

5. The Debtors, together with their non-Debtor affiliates (collectively, "Carestream" or the "Company"), are a leading provider of medical imaging and non-destructive testing products with over 100 years of industry experience. The Company is a partner of choice to approximately 8,000 direct customers and approximately 900 dealers in more than 130 countries. Its products are used by prominent health systems, hospitals, imaging centers, specialty practices and industrial

companies worldwide. Headquartered in Rochester, New York, Carestream employs a global workforce of approximately 3,410 employees with approximately 180 contractors.

6. Carestream, like many businesses, faced significant headwinds in 2020, principally as a result of changing product and customer trends and the global COVID-19 pandemic, which, in light of the Debtors' capital structure, placed substantial strain on the Debtors' businesses. To alleviate the strain, the Debtors executed a voluntary amend-and-extend transaction in early 2020 that extended the maturities of their first lien revolver and term loan and second lien term loan debt. The amend-and-extend transaction provided the Debtors with time to meaningfully examine various strategic alternatives, including sale transactions and debt-for-equity exchanges to deleverage the Company.

7. Ultimately, the Debtors determined that a substantial deleveraging combined with new capital investment was the best path forward for their business. To implement the foregoing, the Debtors negotiated, and ultimately agreed, with a majority of their prepetition secured lenders and their equity sponsor on the terms of a comprehensive financial restructuring. The terms of the proposed restructuring are memorialized in a restructuring support agreement (the "RSA") that serves as the foundation of the Debtors' prepackaged Plan. Under the RSA, the Debtors will eliminate approximately $470 million of prepetition funded debt and raise up to $75 million of new equity capital, while also leaving general unsecured claims unimpaired. As of August 23, 2022 (the "Petition Date"), the Debtors have fully solicited their Plan, which was accepted by all creditor classes entitled to vote, including lenders collectively holding approximately 73% of the Debtors' prepetition first lien revolver and term loan debt and approximately 98% of the Debtors' prepetition second lien term loan debt.

8. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have also filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

**Taxes and Fees Overview**

9. In the ordinary course of business, the Debtors collect, withhold, and incur sales, use and, income taxes, customs and import duties, and property taxes, as well as other governmental taxes, fees, and assessments (collectively, the "Taxes and Fees").[3] The Debtors pay or remit, as applicable, Taxes and Fees to various governmental authorities (each, an "Authority," and collectively, the "Authorities") on a periodic basis (monthly, quarterly, semi-annually, annually, and on an ad hoc basis depending on the Debtors' reporting calendar) depending on the nature and incurrence of a particular Tax or Fee and as required by applicable laws and regulations. A schedule identifying the Authorities is attached hereto as **Exhibit C**.[4] The Debtors generally pay and remit Taxes and Fees through checks and electronic transfers that are processed through their banks and other financial institutions or service providers. From time to time, the Debtors

---

[3] This motion does not seek relief with respect to the Debtors' collection and remittance of employee-related taxes and withholdings, which are instead addressed in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*, filed contemporaneously herewith.

[4] Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from **Exhibit C**. The Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified in **Exhibit C**.

may also receive tax credits for overpayments or refunds in respect of Taxes or Fees. The Debtors generally use these credits in the ordinary course of business to offset against future Taxes or Fees, or have the amount of such credits refunded to the Debtors.

10. Additionally, the Debtors are and may become subject to routine audit investigations on account of tax returns and/or tax obligations in respect of prior years ("Audits") during these chapter 11 cases. Audits may result in additional prepetition Taxes and Fees being assessed against the Debtors (such additional Taxes and Fees, "Assessments").[5] The Debtors seek authority to pay or remit tax obligations on account of the Audits as they arise in the ordinary course of the Debtors' business, including as a result of any resolutions of issues addressed in an Audit.

11. The Debtors seek authority to pay and remit all prepetition and postpetition obligations on account of Taxes and Fees, including: (a) where Taxes and Fees accrue or are incurred postpetition; (b) Taxes and Fees that have accrued or were incurred prepetition but were not paid prepetition, or were paid in an amount less than actually owed; (c) where payments made prepetition by the Debtors were lost or otherwise not received in full by any of the Authorities; and (d) Taxes and Fees incurred for prepetition periods that become due and payable after the commencement of these chapter 11 cases. In addition, for the avoidance of doubt, the Debtors seek authority to pay Taxes and Fees for so-called "straddle" periods.[6]

---

[5] Nothing in this motion, or any related order, constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Assessment. The Debtors expressly reserve all rights with respect to any Audit and the right to contest any Assessments claimed to be due as a result of any Audit.

[6] The Debtors reserve their rights with respect to the proper characterization of any "straddle" Taxes and Fees and to seek reimbursement of any portion of any payment made that ultimately is not entitled to administrative or priority treatment.

12.     Any failure by the Debtors to pay the Taxes and Fees could materially disrupt the Debtors' business operations in several ways, including (but not limited to): (a) the Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from these chapter 11 cases; (b) the Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and/or pursue other remedies that will harm the estates; and (c) in certain instances, the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract those key individuals from their duties related to the Debtors' restructuring. Taxes and Fees not paid on the due date as required by law may result in fines and penalties, the accrual of interest, or both. The Debtors also collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and these funds may not constitute property of the Debtors' estates. Risking any of these negative outcomes is particularly unnecessary here given the prepackaged nature of the Debtors' chapter 11 cases. Accordingly, the Debtors seek authority to pay, in their reasonable discretion, the Taxes and Fees in the ordinary course as they become due.

13.     The Debtors estimate that approximately $1,761,000 in Taxes and Fees is outstanding as of the Petition Date.[7]

| Category | Description | Approximate Amount Accrued and Unpaid as of Petition Date |
|---|---|---|
| Income and Franchise Taxes | Income and franchise taxes incurred in the ordinary course of business based on the jurisdictions in which the Debtors do business, generally payable on an annual basis. | $500,000 |

---

[7] The Debtors cannot predict the amounts of any potential Assessments that may result from Audits, if any. Accordingly, the Debtors' estimate of outstanding Taxes and Fees as of the Petition Date does not include any amounts relating to potential Assessments.

| Category | Description | Approximate Amount Accrued and Unpaid as of Petition Date |
|---|---|---|
| Sales and Use Taxes | Taxes on goods and services sold or used, assessed based on the value of such goods and services, generally payable on a monthly, quarterly, or annual basis. | $165,000 |
| Property Taxes | Taxes related to real and personal property holdings, generally payable on an annual or semi-annual basis. | $913,000 |
| Customs and Import Duties | The Debtors remit taxes to Authorities imposed for importing goods from outside the United States. | $180,000 |
| Regulatory and Other Taxes and Fees | Taxes and Fees related to compliance with regulatory requirements, including periodic licensing, permitting, reporting, and similar requirements, generally payable on an annual basis, depending on the specific Tax or Fee. | $3,000 |
| | **Total** | **$1,761,000** |

14. Further, the Debtors estimate that approximately $845,000 in Taxes and Fees will become due and owing to the Authorities within the first thirty-five days of these chapter 11 cases.

**I. Income and Franchise Taxes.**

15. The Debtors incur and are required to pay various state, local, and federal (i) income taxes and (ii) franchise taxes, as applicable (collectively, the "Income and Franchise Taxes"), in the jurisdictions where the Debtors operate. The Debtors generally pay Income and Franchise Taxes on an annual basis.[8] In 2021, the Debtors remitted approximately $38,000 in Income and Franchise Taxes to the applicable Authorities.[9] As of the Petition Date, the Debtors estimate that they owe approximately $500,000 to the applicable Authorities on account of

---

[8] While certain Income and Franchise Taxes are due on a quarterly basis, the Debtors frequently prepay such Income and Franchise Taxes once per year.

[9] The Debtors made a payment in April 2022 for approximately $120,000 on account of 2021 federal income tax liabilities.

7

prepetition Income and Franchise Taxes. The Debtors request authority, but not direction, to satisfy any amounts owed on account of such Income and Franchise Taxes that may become due and owing in the ordinary course of business during their chapter 11 cases.

II. **Sales and Use Taxes.**

16. The Debtors incur, collect, and remit sales and use taxes to the Authorities in connection with the sale, purchase, and use of goods and services (collectively, the "Sales and Use Taxes"). The Debtors generally pay Sales and Use Taxes on a monthly, quarterly, semi-annual, or annual basis. In 2021, the Debtors paid approximately $2,150,000 in aggregate Sales and Use Taxes to the Authorities. As of the Petition Date, the Debtors estimate that they have incurred or collected approximately $165,000 in Sales and Use Taxes that have not been remitted to the relevant Authorities. The Debtors request authority, but not direction, to satisfy any amounts owed on account of such Sales and Use Taxes that may become due and owing in the ordinary course of business during their chapter 11 cases.

III. **Property Taxes.**

17. State and local laws in the jurisdictions where the Debtors operate generally grant Authorities the power to levy property taxes against the Debtors' real and personal property (collectively, the "Property Taxes"). To avoid the imposition of statutory liens on their real and personal property, the Debtors generally pay the Property Taxes in the ordinary course of business on an annual or semi-annual basis, depending on the specific Taxes or Fees. This includes Property Taxes collected from certain third parties and paid to the applicable Authorities. In 2021, the Debtors paid approximately $2,160,000 in aggregate Property Taxes to the Authorities. As of the Petition Date, the Debtors estimate that they have incurred or collected approximately $913,000 in Property Taxes that have not been remitted to the relevant Authorities. The Debtors request

authority, but not direction, to satisfy any amounts owed on account of such Property Taxes that may become due and owing in the ordinary course of business during their chapter 11 cases.

## IV. Customs and Import Duties.

18. The Debtors incur certain duty and excise taxes related to the purchase and sale of goods from or in foreign jurisdictions (the "Customs and Import Duties"). In 2021, the Debtors paid approximately $8,200,000 in aggregate Customs and Import Duties to the applicable Authorities. As of the Petition Date, the Debtors estimate that they have incurred, but have not remitted, approximately $180,000 in Customs and Import Duties.[10]

## V. Regulatory and Other Taxes and Fees.

19. The Debtors incur, in the ordinary course of business, certain regulatory assessments, permitting, licensing and other operational fees, including fees related to certain regulations, franchise taxes, and other miscellaneous taxes and fees (collectively, "Regulatory and Other Taxes and Fees"). The Debtors generally pay Regulatory and Other Taxes and Fees to the relevant Authorities on an annual basis. The Debtors have paid approximately $25,000 in aggregate Regulatory and Other Taxes and Fees on account of 2022 fees. Such amounts were remitted to the Authorities in late 2021 and early 2022. As of the Petition Date, the Debtors estimate that approximately $3,000 in Regulatory and Other Taxes and Fees will have accrued and remain unpaid to the relevant Authorities. The Debtors request authority, but not direction, to satisfy any amounts owed on account of such Regulatory and Other Taxes and Fees that may become due and owing in the ordinary course of business during their chapter 11 cases.

---

[10] For the avoidance of doubt, a significant portion of the Debtors' duties that are paid in United Sates are paid for shipments of products coming from China, including the Debtors' plant in Shanghai. Due to the Shanghai lockdowns between April and June of 2022, the amounts are currently lower than usual.

**Basis for Relief**

I.  **Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates.**

20. Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." Certain of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors. *See, e.g.*, 26 U.S.C. § 7501 (stating that certain Taxes and Fees are held in trust); *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57–60 (1990) (holding that certain taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *In re Shank*, 792 F.2d 829, 833 (9th Cir. 1986) (holding that a sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge). For example, all U.S. federal internal revenue tax withheld is considered to be held in a special fund in trust for the United States. *Begier*, 496 U.S. at 60. Because the Debtors may not have an equitable interest in funds held on account of such "trust fund" Taxes and Fees, the Debtors should be permitted to pay those funds to the applicable Authorities as they become due.[11]

II. **Certain of the Taxes and Fees May Be Priority Claims Entitled to Priority Treatment Under the Bankruptcy Code.**

21. Claims on account of certain of the Taxes and Fees may be priority claims entitled to payment before general unsecured claims. *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment). Moreover, to the extent that such amounts are entitled to priority treatment

---

[11] For clarity, the Debtors are requesting authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

under the Bankruptcy Code, the respective Authorities may attempt to assess interest and penalties if such amounts are not paid. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors. Payment of such Taxes and Fees likely will give Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan and will save the Debtors the potential interest expense, legal expense, and penalties that might otherwise accrue on the Taxes and Fees during these chapter 11 cases.[12]

### III. Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.

22. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

---

[12] Pursuant to the Plan, all Allowed Claims on account of prepetition Taxes and Fees will either be reinstated, paid in full in the ordinary course, or, if applicable, paid in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

23. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also Armstrong World*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *In re Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).

24. Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re Just for Feet*, 242 B.R. at 825−26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *In re Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of

prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497.

25. The Debtors' timely payment of the Taxes and Fees is critical to their continued and uninterrupted operations. If certain Taxes and Fees remain unpaid, the Authorities may seek to recover such amounts directly from the Debtors' directors, officers, or employees, thereby distracting such key personnel from the administration of these chapter 11 cases. *See, e.g.*, *Schmehl v. Helton*, 662 S.E.2d 697, 707 (W. Va. 2008) (noting that corporate officers may be held responsible for payment of certain corporate taxes); *In re Am. Motor Club, Inc.*, 139 B.R. 578, 581–83 (Bankr. E.D.N.Y. 1992) (stating "[i]f the employer fails to pay over the trust fund taxes, the IRS may collect an equivalent amount directly from officers or employees of the employer who are responsible for collecting the tax" and finding director personally liable for unpaid taxes) (citing *United States v. Energy Res. Co.*, 495 U.S. 545, 547 (1990)). Any collection action on account of such amounts, and any potential ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest. The dedicated and active participation

of the Debtors' officers and employees is integral to the Debtors' continued operations and essential to the orderly administration and, ultimately, the success of these chapter 11 cases.

26. Finally, the Debtors' failure to timely pay Taxes and Fees may result in increased tax liability for the Debtors if interest and penalties accrue on the unpaid Taxes and Fees. Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders. For the foregoing reasons, the Court should authorize the Debtors to pay all prepetition and postpetition obligations on account of Taxes and Fees, including any Assessments.

27. Courts in this district and elsewhere routinely approve relief similar to that requested herein. *See, e.g.*, *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (authorizing debtors to pay prepetition taxes and fees in the ordinary course of business); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. Jul. 14, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (same); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Sept. 16, 2020); (same); *In re Extraction Oil and Gas, Inc.*, No. 20-10548 (Bankr. D. Del. July 13, 2020) (same).[13]

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

28. The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that

---

[13] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

29. Bankruptcy Rule 6003 empowers a court to grant certain relief within the first 21 days after the petition date only "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations, and the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this important juncture. The requested relief is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and the Court should grant the requested relief.

## Reservation of Rights

30. Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in

this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

31. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

32. The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Agent; (d) counsel to the First Lien Agent and Second Lien Agent; (e) counsel to the Crossover Group; (f) the office of the attorney general for each of the states in which the Debtors operate; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) the Authorities; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion

as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

33. No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated: August 23, 2022
Wilmington, Delaware

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
tcairns@pszjlaw.com
ecorma@pszjlaw.com

-and-

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Tricia Schwallier Collins (*pro hac vice* pending)
Yusuf U. Salloum (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
tricia.schwallier@kirkland.com
yusuf.salloum@kirkland.com

-and-

Nicole L. Greenblatt, P.C. (*pro hac vice* pending)
Rachael M. Bentley (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: nicole.greenblatt@kirkland.com
Email: rachael.bentley@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*