**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CARESTREAM HEALTH, INC., *et al.*,[1] | ) | Case No. 22-10778 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF**
**AN ORDER (I) SCHEDULING A COMBINED**
**DISCLOSURE STATEMENT APPROVAL AND PLAN**
**CONFIRMATION HEARING, (II) APPROVING RELATED DATES,**
**DEADLINES, NOTICES, AND PROCEDURES, (III) APPROVING**
**THE SOLICITATION PROCEDURES AND RELATED DATES,**
**DEADLINES, AND NOTICES, (IV) APPROVING THE RIGHTS**
**OFFERING PROCEDURES AND RELATED DATES, DEADLINES, AND**
**NOTICES, AND (V) CONDITIONALLY WAIVING THE REQUIREMENTS**
**THAT (A) THE U.S. TRUSTEE CONVENE A MEETING OF CREDITORS**
**AND (B) THE DEBTORS FILE SCHEDULES OF ASSETS AND LIABILITIES,**
**STATEMENTS OF FINANCIAL AFFAIRS, AND RULE 2015.3 FINANCIAL REPORTS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion:[2]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Carestream Health, Inc. (0334); Carestream Health Acquisition, LLC (0333); Carestream Health Canada Holdings, Inc. (7700); Carestream Health Holdings, Inc. (7822); Carestream Health International Holdings, Inc. (5771); Carestream Health International Management Company, Inc. (0532); Carestream Health Puerto Rico, LLC (8359); Carestream Health World Holdings, LLC (1662); and Lumisys Holding Co. (3232).  The location of the Debtors' service address is:  150 Verona Street, Rochester, New York 14608.

[2]   A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Scott H. Rosa, Chief Financial Officer of Carestream Health, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration or in the contemporaneously filed *Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc., and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), as applicable.

**Preliminary Statement**

1.      Carestream is a leading global provider of highly innovative medical imaging and non-destructive testing products which promote efficacy and accuracy of care around the world. Headquartered in Rochester, New York, Carestream offers best-in-class products and materials to its customers.  As of the date hereof, among other obligations, the Debtors have approximately $1,032.9 million in aggregate outstanding principal amount of funded debt obligations, consisting of approximately:

- $507.7 million in first lien term loan indebtedness;

- $77.0 million in outstanding first lien revolver borrowings; and

- $448.2 million in second lien term loan indebtedness.

2.      Carestream has spent significant time over the past several months working together with its existing lenders to explore strategic alternatives to best position the Company for success.  The Plan reflects the culmination of those efforts and seeks to implement a comprehensive recapitalization of the Debtors' balance sheet with overwhelming creditor support. Specifically, after extensive diligence and arms' length negotiations with an ad hoc group of holders of First Lien Claims and Second Lien Term Loan Claims (the "Crossover Group"), the Debtors reached an agreement with their Sponsor, First Lien Lenders holding more than 70 percent of the outstanding First Lien Claims, and Second Lien Lenders holding more than 99 percent of the outstanding Second Lien Term Loan Claims on the terms of the restructuring transactions set forth in that certain restructuring support agreement, dated as of August 21, 2022 (the "Restructuring Support Agreement" or "RSA," and the transactions contemplated thereby, the "Restructuring Transactions").  To facilitate the implementation of the Restructuring Transactions, concurrently with the execution of the Restructuring Support Agreement, (i) certain members of the Crossover Group have committed to provide the Debtors with up to $80 million

2

in debtor-in-possession financing to cover the administrative costs of these chapter 11 cases and to bolster the Debtors' liquidity upon their exit from chapter 11, and (ii) certain parties, including certain First Lien Lenders, have committed to provide an $85 million New ABL Facility to support the Debtors' working capital needs following emergence.  Importantly, the Plan will also deleverage the Debtors' balance sheet by approximately $470 million.

3.    The key terms of the Restructuring Transactions, as reflected in the Plan, including the following:

- certain members of the Crossover Group have committed to provide the Debtors with access to up to $80 million in debtor-in-possession financing consisting of (a) a $5 million tranche that will be repaid in full in cash, and (b) a $75 million tranche that will be partially satisfied with proceeds of an equity rights offering, if any, and the remainder will be equitized into the New Common Stock through the DIP Rollover, subject to dilution by the Debtors' Management Incentive Plan;

- each holder of an Allowed First Lien Claim shall receive (a) cash in an amount equal to 3% of its Allowed First Lien Claim and (b) its pro rata share of the New Term Loan Facility in aggregate principal amount between $536 million and $547 million (depending on the level of participation in the ABL Roll Option) for the remainder of its claim, *provided* that holders of Allowed First Lien Revolving Claims may elect to roll a portion of their Allowed First Lien Revolving Claims into new loans under the New ABL Facility pursuant to the ABL Roll Option;

- the Debtors' existing Second Lien Term Loan will be cancelled and each holder of an Allowed Second Lien Term Loan Claim shall receive its pro rata share of  (a) 10% of the New Common Stock, subject to dilution by the Debtors' Management Incentive Plan, and (b) the right to purchase for cash its pro rata share of 80% of the New Common Stock, subject to dilution by the Debtors' Management Incentive Plan;

- each Holder of an Allowed General Unsecured Claim will be paid in full in cash or have its claim reinstated; and

- existing equity interests will be cancelled on the Effective Date.

4.    To provide the Reorganized Debtors with sufficient liquidity as a going concern, the Reorganized Debtors will enter into the New ABL Facility upon the Debtors' emergence from chapter 11.  Certain parties, including certain First Lien Lenders, have committed to provide the Reorganized Debtors with the New ABL Facility in an aggregate principal amount of $85 million.

5.      Notably, the Plan leaves general unsecured creditors unimpaired and will allow the Debtors to minimize disruptions to their operations while effectuating a value-maximizing transaction through the chapter 11 process.  In light of the foregoing, the Debtors expect to continue operating normally throughout the court-supervised process and remain focused on serving their customers and working with suppliers on normal terms.

6.      Given that the Plan has been unanimously accepted by Holders of First Lien Claims and Second Lien Term Loan Claims that submitted a Ballot (as defined herein) and pays all other claims in full, a prolonged stay in chapter 11 is unnecessary and would result in significant incremental administrative costs and business disruption.  Furthermore, pursuant to the milestones in the Restructuring Support Agreement, the Debtors must obtain confirmation of the Plan within 45 days of the Petition Date.  With the overwhelming support of their lenders, the Debtors are seeking authority to move through the chapter 11 process on an expedited basis to implement the Restructuring Transactions as set forth below.

7.      Specifically, the Debtors request authority to proceed with these chapter 11 cases on the Confirmation Schedule (as defined herein).  The Debtors propose that the Court schedule a combined hearing to consider approval of the adequacy of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing") on **September 28, 2022**, or as soon thereafter as the Court is available.  Notably, the proposed Combined Hearing and the other dates and deadlines provided in the Confirmation Schedule comport with the required notice periods under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, while avoiding the potential burdens of a prolonged stay in chapter 11.  Further, as described below, the Debtors will provide notice of the Combined Hearing (the "Combined Hearing Notice") to all parties in interest as soon as practicable following the Court's approval of this motion.  The Combined Hearing Notice,

4

among other things, provides notice of the key upcoming dates and deadlines in the chapter 11 cases, including the Objection Deadline (as defined herein), summarizes the material terms of the Plan, including classification and treatment of claims, provides the full text of the Plan's third-party release and other key provisions that may affect stakeholder rights, and offers multiple methods by which stakeholders may obtain copies of the Plan, the Disclosure Statement, and the other documents filed in these chapter 11 cases.

8.      The Debtors therefore submit that the facts and circumstances of these chapter 11 cases justify and support the proposed Confirmation Schedule.  Approval of the proposed Confirmation Schedule and the other relief requested herein is in the best interests of the Debtors, their estates, and all stakeholders, and should be granted.

**Relief Requested**

9.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):

    a.  scheduling the Combined Hearing for September 28, 2022 (or as soon thereafter as the Court's schedule permits) to consider approval of the adequacy of the Disclosure Statement and confirmation of the Plan;

    b.  establishing a deadline of September 21, 2022, at 5:00 p.m., prevailing Eastern Time, for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline"), and approving related procedures;

    c.  approving the solicitation procedures regarding votes to accept or reject the Plan (the "Solicitation Procedures");

    d.  approving the form and manner of the Combined Hearing Notice, substantially in the form attached to the Order as Exhibit 1, the form and manner of the publication notice of the Combined Hearing (the "Publication Notice"), substantially in the form attached to the Order as Exhibit 2, and approving the form and manner of the Debtors' solicitation cover letter (the "Solicitation Cover Letter"), substantially in the form attached to the Order as Exhibit 3;

e.  approving the form and manner of the Class 3 Ballot, substantially in the form attached to the Order as Exhibit 4, and the Class 4 Ballot, substantially in the form attached to the Order as Exhibit 5;

f.  approving procedures and instructions for participation in the Rights Offering (the "Rights Offering Procedures"), substantially in the form attached to the Order as Exhibit 6;

g.  approving the form for participation in the Rights Offering (the "Rights Offering Subscription Form"), substantially in the form attached to the Order as Exhibit 7;

h.  approving the form for Holders of First Lien Revolving Claims to elect to participate in the ABL Roll Option (the "ABL Roll Election Form"), substantially in the form attached to the Order as Exhibit 8;

i.  waiving the requirement that the United States Trustee for the District of Delaware (the "U.S. Trustee") convene a meeting of creditors (the "Creditors' Meeting") pursuant to section 341(e) of the Bankruptcy Code (as defined below), provided that the Plan is confirmed no later than seventy-five days after the Petition Date;

j.  waiving the requirement that the Debtors file statements of financial affairs ("SOFAs"), schedules of assets and liabilities ("Schedules"), and initial reports of financial information with respect to entities in which the Debtors hold a controlling or substantial interest as set forth in Federal Rule of Bankruptcy Procedure 2015.3 (the "2015.3 Reports"), provided that the Plan is confirmed no later than seventy-five days after the Petition Date; and

k.  allowing the notice period for the Disclosure Statement and the Combined Hearing to run simultaneously.

10.  In connection with the foregoing, the Debtors request that the Court approve the following schedule of proposed dates (the "Confirmation Schedule"), subject to the Court's availability:

| Event | Date |
|---|---|
| Voting Record Date[3] and Rights Offering Record Date[4] | August 15, 2022 |
| Solicitation Commencement[5] Date | August 21, 2022 |
| Voting Deadline and Rights Offering Subscription Deadline[6] | August 22, 2022, at 12:00 p.m., prevailing Eastern Time |
| Petition Date | August 23, 2022 |
| Service of Combined Hearing Notice | As soon as practicable following approval of the Combined Hearing Notice |
| Initial Plan Supplement Deadline | September 14, 2022 |
| Objection Deadline | September 21, 2022, at 5:00 p.m., prevailing Eastern Time |
| Deadline to File Confirmation Brief and Reply | September 26, 2022, at 12:00 p.m., prevailing Eastern Time[7] |
| Combined Hearing | September 28, 2022, subject to Court availability |

### Jurisdiction and Venue

11. The United States Bankruptcy Court for the District of Delaware (the "Court") has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

---

[3] The "Voting Record Date" is the date as of which a Holder of record of a Claim in Class 3 or Class 4 (collectively, the "Voting Classes") must have held such Claim to cast a vote to accept or reject the Plan.

[4] The "Rights Offering Record Date" is the date as of which a Holder of record of a Claim in Class 4 must have held such Claim to be an Eligible Holder for purposes of participation in the Rights Offering.

[5] The "Solicitation Commencement Date" refers to August 21, 2022, the date on which the Debtors served and noticed the Solicitation Packages (as defined herein).

[6] The "Rights Offering Subscription Deadline" is the deadline for all Eligible Holders to submit a completed Subscription Form (as defined in the Rights Offering Procedures (as defined herein)), in accordance with the Rights Offering Procedures.

[7] The Debtors request that the Court modify Local Rule 9006-1(d) (governing time for filing reply papers) to the extent necessary to permit the Debtors to file a brief in support of confirmation of the Plan (and approval of the adequacy of the Disclosure Statement) and reply to any objections concurrently with filing their agenda for the Combined Hearing.

7

*Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.    The statutory bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 1007, 2002, 3016, 3017, 3018, 3020 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 1007-1, 3017-1, and 9006-1.

### Background

14.    The Debtors, together with their non-Debtor affiliates (collectively, "Carestream" or the "Company"), are a leading provider of medical imaging and non-destructive testing products with over 100 years of industry experience. The Company is a partner of choice to approximately 8,000 direct customers and approximately 900 dealers in more than 130 countries. Its products are used by prominent health systems, hospitals, imaging centers, specialty practices and industrial companies worldwide. Headquartered in Rochester, New York, Carestream employs a global workforce of approximately 3,410 employees with approximately 180 contractors.

15.    Carestream, like many businesses, faced significant headwinds in 2020, principally as a result of changing product and customer trends and the global COVID-19 pandemic, which, in light of the Debtors' capital structure, placed substantial strain on the Debtors' businesses. To

alleviate the strain, the Debtors executed a voluntary amend-and-extend transaction in early 2020 that extended the maturities of their first lien revolver and term loan and second lien term loan debt. The amend-and-extend transaction provided the Debtors with time to meaningfully examine various strategic alternatives, including sale transactions and debt-for-equity exchanges to deleverage the Company.

16.    Ultimately, the Debtors determined that a substantial deleveraging combined with new capital investment was the best path forward for their business. To implement the foregoing, the Debtors negotiated, and ultimately agreed, with a majority of their prepetition secured lenders and their equity sponsor on the terms of a comprehensive financial restructuring. The terms of the proposed restructuring are memorialized in a restructuring support agreement that serves as the foundation of the Debtors' prepackaged Plan. Under the RSA, the Debtors will eliminate approximately $470 million of prepetition funded debt and raise up to $75 million of new equity capital, while also leaving general unsecured claims unimpaired. As of August 23, 2022 (the "Petition Date"), the Debtors have fully solicited their Plan, which was accepted by all creditor classes entitled to vote, including lenders collectively holding approximately 73% of the Debtors' prepetition first lien revolver and term loan debt and approximately 98% of the Debtors' prepetition second lien term loan debt.

17.    On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have also filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee

or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

**The Notice Procedures**

18.    As detailed below, the Debtors are taking extensive measures to ensure that they provide all parties in interest listed on their creditor matrix with (a) ample notice of the commencement of these chapter 11 cases, the Combined Hearing, the Objection Deadline, and the other key dates and deadlines associated with the chapter 11 cases, and (b) access to the Plan, the Disclosure Statement, and the other key documents pertinent to such parties' participation in these chapter 11 cases.

- Specifically, on **August 21, 2022**—the Solicitation Commencement Date—the Debtors:

  - distributed the Solicitation Cover Letter, the Disclosure Statement, the Plan, and the Ballots[8] to Holders of Claims in the Voting Classes as of the Voting Record Date by email;

  - distributed the ABL Roll Election Form to Holders of First Lien Revolving Claims in Class 3; and

  - distributed the Rights Offering Procedures and the Rights Offering Subscription Form to Holders of Claims in Class 4 as of the Rights Offering Record Date by email.

- On the Petition Date, the Debtors:

  - filed with the Court, among other things, this motion, the First Day Declaration, the Plan, and the Disclosure Statement, each of which are available on the Debtors' public restructuring website maintained by Kurtzman Carson Consultants LLC (the "Solicitation Agent"), https://kccllc.net/Carestream (the "Case Website").

- Promptly following the Court's approval of the Order, the Debtors:

  - will distribute the Combined Hearing Notice to all parties in interest listed on the Debtors' creditor matrix—a total of more than 9,600 creditors, equity holders, and other interested parties—by first-class mail; and

---

8    The "Ballots" refer to the Class 3 and Class 4 ballots attached to the Order as Exhibit 4 and Exhibit 5, respectively.

- will publish the Publication Notice in *The New York Times* (national and international editions) and the *Rochester Democrat and Chronicle*.

19. The Combined Hearing Notice, the Publication Notice, the Solicitation Cover Letter, and the Ballots all prominently note the various methods by which parties can obtain, at no cost, copies of the Plan, the Disclosure Statement, and the other documents filed in these chapter 11 cases in paper or electronic form.  Thus, the Debtors have ensured that any party that wishes to review these documents may do so easily, quickly, and in their preferred format.

## The Solicitation Procedures

20. The Disclosure Statement describes in detail the Restructuring Transactions contemplated by the Plan and the treatment of Claims and Interests under the Plan.  The following chart summarizes the Classes of Claims and Interests under the Plan, as well as their respective impaired or unimpaired status and voting rights.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | First Lien Claims | Impaired | Entitled to Vote |
| Class 4 | Second Lien Term Loan Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 6 | Intercompany Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 7 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 8 | Existing Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

21. On the Solicitation Commencement Date, the Debtors caused the Solicitation Agent to distribute via email packages (the "Solicitation Packages") containing (a) the Solicitation

Cover Letter, the Disclosure Statement, the Plan, and the applicable Ballot(s) to Holders of Claims in the Voting Classes as of the Voting Record Date, (b) with respect to Holders of First Lien Revolving Claims in Class 3, the ABL Roll Election Form, and (c) with respect to Holders of Second Lien Term Loan Claims in Class 4 as of the Rights Offering Record Date, the Rights Offering Procedures and the Rights Offering Subscription Form.  Holders of Claims or Interests in Classes 1, 2, 5, 6, 7, 8, and 9 were not provided with full Solicitation Packages because their respective Claims or Interests are either (a) unimpaired under, and conclusively presumed to accept, the Plan under section 1126(f) of the Bankruptcy Code or (b) do not receive or retain any property under, and are conclusively deemed to reject, the Plan under section 1126(g) of the Bankruptcy Code.  As discussed above, however, all parties in interest will be served with the Combined Hearing Notice, the Debtors will publish the Publication Notice, and the Plan, the Disclosure Statement, and the other key documents filed in these chapter 11 cases are available free of charge on the Case Website.

22.     As of the Voting Deadline, each Holder of a Claim in the Voting Classes that submitted a Ballot voted to accept the Plan, as reflected in the below summary of voting results.[9]

| Total Ballots Received | | | |
|---|---|---|---|
| **Accept** | | **Reject** | |
| **Number** <br> (*% of Number*) | **Amount** <br> (*% of Amount*) | **Number** <br> (*% of Number*) | **Amount** <br> (*% of Amount*) |
| **Class 3 - First Lien Claims** | | | |
| 226 <br> (100%) | $425,488,812.60 <br> (100%) | 0 <br> (0%) | $0.00 <br> (0%) |
| **Class 4 - Second Lien Term Loan Claims** | | | |
| 187 <br> (100%) | $438,268,289.47 <br> (100%) | 0 <br> (0%) | $0.00 <br> (0%) |

---

[9]   *See Declaration of Adam Gorman Regarding the Solicitation and Tabulation of Votes on the Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc., and Its Debtor Affiliates*, filed contemporaneously herewith.

23.     Holders of Claims in the Voting Classes were directed to follow the instructions contained in the Ballots to complete and submit their respective Ballots to cast a vote to accept or reject the Plan.  The Disclosure Statement and the Ballots expressly provided that each such Holder needed to submit its Ballot so that it would be ***actually received*** by the Solicitation Agent on or before the Voting Deadline to be counted.

24.     The Debtors' procedures and standard assumptions for tabulating Ballots include:

| | |
|---|---|
| **Votes Not Counted** | – any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;<br><br>– any Ballot that was transmitted by means other than as specifically set forth in the Ballots;<br><br>– any Ballot that was cast by an entity that is not entitled to vote on the Plan;<br><br>– any Ballot that was sent to any person or entity other than the Solicitation Agent;<br><br>– any Ballot that is unsigned; or<br><br>– any Ballot that is not clearly marked to either accept or reject the Plan or is marked both to accept and reject the Plan. |
| **No Vote Splitting** | – Holders are required to vote all of their Claims in a particular Voting Class to either accept or reject the Plan and are not permitted to split any votes in a particular Voting Class. |

### The Rights Offering Procedures[10]

25.     The Plan contemplates that the Debtors shall raise up to an aggregate of $75 million through a Rights Offering, pursuant to which Holders of the Second Lien Term Loan Claims may

---

[10]   The following is intended to provide a summary of the terms of the Rights Offering and the Rights Offering Procedures.  To the extent that this summary is inconsistent with the Rights Offering Procedures, the terms of the Rights Offering Procedures shall control.  Capitalized terms not otherwise defined in this section have the meanings given to them in the Rights Offering Procedures.

elect to purchase for cash their *pro rata* share of 80% of the New Common Stock, subject to dilution on account of the Management Incentive Plan.

26.    The Rights Offering is a vital component of the Debtors' comprehensive restructuring under the Plan.  Approval of the Rights Offering Procedures is necessary to successfully implement the Rights Offering, and, as a corollary, the Plan.  The Rights Offering Procedures include the following material provisions:

- **Rights Offering**:  Eligible Holders have the right, but not the obligation, to participate in the Rights Offering, and such Eligible Holders received rights to subscribe for their *pro rata* portion of the Rights Offering Shares.

  - Subject to the terms and conditions set forth in the Plan and the Rights Offering Procedures, each Eligible Holder is entitled to subscribe for up to approximately 17.85 Rights Offering Shares per $1,000 of principal amount of the Eligible Claims, subject to the treatment of fractional shares provided for in the Rights Offering Procedures. The purchase price for each Rights Offering Share is $9.375 per share.

  - There is no over-subscription privilege in the Rights Offering.  Any Rights Offering Shares that were unsubscribed by the Eligible Holders entitled thereto will not be offered to other Eligible Holders.

  - The Rights Offering is not backstopped.

  - Any Eligible Holder that subscribed for Rights Offering Shares is subject to restrictions under the Securities Act and the New Shareholders Agreement on its ability to resell those securities, as discussed in more detail in Article XI, Section C of the Disclosure Statement, entitled "Resales of Non-1145 Securities."

- **Subscription Period**:  The Rights Offering commenced on the Rights Offering Commencement Date of August 21, 2022, and expired at the Rights Offering Subscription Deadline of August 22, 2022, at 12:00. p.m., prevailing Eastern Time.

  - Each Eligible Holder that intended to purchase Rights Offering Shares in the Rights Offering must have affirmatively elected to exercise its Subscription Rights in the manner set forth in the Subscription Form by the Rights Offering Subscription Deadline.

  - Any exercise of Subscription Rights by an Eligible Holder after the Rights Offering Subscription Deadline is not allowed and any purported exercise received by the Subscription Agent after the Rights Offering Subscription Deadline, regardless of when the documents or payment relating to such

14

exercise were sent, will not be honored, unless the Rights Offering Subscription Deadline is extended by the Debtors.

- **Delivery of Subscription Documents**:  To facilitate the exercise of the Subscription Rights, beginning on the Rights Offering Commencement Date, the Subscription Forms and the Rights Offering Procedures were sent to the Agent and the Eligible Holders concurrently with the Solicitation Packages, together with appropriate instructions for the proper completion, due execution, and timely delivery of the executed Subscription Form and for the payment of the Aggregate Purchase Price. Each Eligible Holder had the option to exercise all or any portion of such Eligible Holder's Subscription Rights, but subject to the terms and conditions contained in the Rights Offering Procedures.

- **Exercise of Subscription Rights**:  In order to validly exercise its Subscription Rights, each Eligible Holder must have:  (a) returned its duly completed and executed Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) so that such documents were actually received by the Subscription Agent by the Rights Offering Subscription Deadline; (b) no later than the Funding Deadline, paid, or have paid on their behalf, the applicable Purchase Price to the Subscription Agent by wire transfer **ONLY** of immediately available funds in accordance with the instructions included in the Subscription Form(s); and (c) prior to the Effective Date, executed and delivered a signature page to the New Stockholders Agreement to the Subscription Agent.

- **Transfer Restriction; Revocation**:  The Subscription Rights are not detachable from the corresponding Second Lien Term Loan Claims and may not be Transferred.  If any Subscription Rights are impermissibly Transferred by an Eligible Holder, such Subscription Rights will be cancelled and neither such Eligible Holder nor the purported transferee will receive any Rights Offering Shares otherwise purchasable on account of such Transferred Subscription Rights. No Rights Offering Shares may be Transferred absent registration under the Securities Act or pursuant to an exemption from registration under the Securities Act, as discussed in more detail in Article XI, Section C of the Disclosure Statement, entitled "Resales of Non-1145 Securities." Once an Eligible Holder has properly exercised its Subscription Rights, subject to the terms and conditions contained in these Rights Offering Procedures, such exercise will be irrevocable.

- **Termination/Return of Payment**:  Unless the Effective Date has occurred, the Rights Offering will be deemed automatically terminated without any action of any party upon the termination of the RSA in accordance with its terms. In the event the Rights Offering is terminated, any payments received pursuant to these Rights Offering Procedures will be returned, without interest, to the applicable Eligible Holder as soon as reasonably practicable.

- **Settlement of the Rights Offering and Distribution of the Rights Offering Shares**: The settlement of the Rights Offering is conditioned on confirmation of the Plan by the Bankruptcy Court, compliance by the Debtors with these Rights Offering Procedures, and the simultaneous occurrence of the Effective Date.  The Rights Offering Shares

15

will be issued directly to the Eligible Holder or its Designee (as defined below) in book-entry form on the books and records of Reorganized Holdings.

27.     For more information regarding the Rights Offering, interested parties may refer to the Rights Offering Procedures, the form of which is attached to the Order as <u>Exhibit 6</u>, and the Rights Offering Subscription Form, the form of which is attached to the Order as <u>Exhibit 7</u>. The Rights Offering Procedures have been designed to provide the necessary information to participate in the Rights Offering in compliance with applicable bankruptcy and non-bankruptcy law.   Moreover, the subscription forms are designed to assure the clear communication of the requirements for, and to facilitate, such participation.   Thus, the Rights Offering Procedures afford Eligible Holders a fair and reasonable opportunity to participate in the Rights Offering and should be approved.

### The ABL Roll Option[11]

28.     The Plan provides that Holders of First Lien Revolving Claims can become New ABL Facility Commitment Parties by electing the ABL Roll Option, in lieu of receiving their pro rata share of the New Term Loan Facility and First Lien Cash Recovery.

29.     The ABL Roll Election Form provides:

- **Election Period**:   Holders of First Lien Revolving Claims were sent the ABL Roll Election form as part of their their Solicitation Packages. They may elect to participate in the ABL Roll Option until August 26, 2022, at 5:00. p.m., prevailing Eastern Time (the "<u>ABL Roll Election Deadline</u>").

  - Each Holder of First Lien Revolving Claims that intended to participate in the ABL Roll Option must have affirmatively elected to do so in the manner set forth in the ABL Roll Election Form.

---

[11]   The following is intended to provide a summary of the terms of certain treatment provided for in the Plan.  To the extent that this summary is inconsistent with the Plan or the ABL Roll Election Form, the terms of the Plan or ABL Roll Election Form shall control.  Capitalized terms not otherwise defined in this section have the meanings given to them in the Plan.

- Any election to participate in the ABL Roll Option is not allowed and any purported exercise received by the Agent after the ABL Roll Election Deadline, regardless of when the documents were sent, will not be honored, unless the ABL Roll Election Deadline is extended by the Debtors.

- **Delivery of Subscription Documents**: To facilitate the exercise of ABL Roll Option, beginning on the Solicitation Commencement Date, the ABL Roll Election Form was sent to the Agent and the eligible Holders concurrently with the Solicitation Packages, providing appropriate instructions for the proper completion, due execution, and timely delivery of the executed ABL Roll Election Form.  Each eligible Holder had the option to exercise such option, subject to the terms of the Plan.

30.     For more information regarding the ABL Roll Option, interested parties may refer to the ABL Roll Election Form, the form of which is attached to the Order as <u>Exhibit 8</u>.  The ABL Roll Election Form has been designed to provide the necessary information for applicable Holders to consider electing the ABL Roll Option and to assure the clear communication of the requirements for, and to facilitate, such participation.  Thus, the ABL Roll Election Form affords applicable Holders a fair and reasonable opportunity to consider electing the ABL Roll Option and should be approved.

**Basis for Relief**

**I.     Approval of the Form and Manner of the Notice.**

31.     Bankruptcy Rule 2002(b) requires at least 28 days' notice to all creditors of the time fixed for (a) filing objections to and the hearing on approval of a disclosure statement and (b) filing objections to and the hearing on confirmation of a chapter 11 plan.[12]   Similarly, Bankruptcy Rule 2002(d) requires notice to all equity holders of "the time fixed for filing objections to and the hearing to consider approval of a disclosure statement" and "the time fixed

---

[12]   Bankruptcy Rule 3017(a) and Local Rule 3017-1(a) contain a similar requirement with respect to the hearing on approval of a disclosure statement.  Here, the Debtors do not seek separate approval of the Disclosure Statement under section 1125(b) of the Bankruptcy Code.  Such approval is not required at the present time because the Disclosure Statement and the rest of the Solicitation Packages were transmitted prepetition in accordance with section 1125(g) of the Bankruptcy Code.

17

for filing objections to and the hearing to consider confirmation of a plan."  Fed. R. Bankr. P. 2002(d).

32.    The Debtors request that the Court approve the Combined Hearing Notice, in substantially the form attached as Exhibit 1 to the Order, which will be served on the Debtors' creditor matrix as soon as practicable following entry of the Order.

33.    In accordance with Bankruptcy Rules 2002 and 3017(d), the Combined Hearing Notice will (a) provide notice of the commencement of these chapter 11 cases, (b) provide a brief summary of the Plan, including conspicuously disclosing the terms of the Plan's release and injunction provisions, (c) disclose the date and time of the Combined Hearing, and (d) disclose the date and time of the Objection Deadline and the procedures for objecting to the Disclosure Statement and the Plan.

34.    Based on the Debtors' proposed September 28, 2022 Combined Hearing date and service of the Combined Hearing Notice upon all known creditors, equity holders, and interested parties promptly following entry of the Order, all parties will have 28 days' notice of the Objection Deadline and 35 days' notice of the Combined Hearing.  Such notices will direct interested parties to the publicly accessible Case Website, where copies of the Plan, the Disclosure Statement, and other key documents and information regarding important dates and deadlines (including the Objection Deadline and Combined Hearing date) will be available at no charge.

35.    Bankruptcy Rule 2002(l) also permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R.Bankr. P. 2002(l).  The Debtors intend to publish the Publication Notice in *The New York Times* (national and international editions) and the *Rochester Democrat & Chronicle* promptly following the Solicitation Commencement Date.  The Publication Notice is attached to the Order

as Exhibit 2.  The Debtors believe that the Publication Notice provides sufficient notice of the proposed Combined Hearing date and the Objection Deadline to any person or entity that did not receive the Combined Hearing Notice.  Accordingly, the Court should approve the Combined Hearing Notice and the Publication Notice.

## II.    Scheduling the Combined Hearing.

36.    Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto." Local Rule 3017-1(a) provides that a hearing on a disclosure statement "shall be at least thirty-five (35) days following service of the disclosure statement."    Del. Bankr. L.R. 3017-1(a). Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."  11 U.S.C. § 1128(a).

37.    The Court may combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan.  *See* 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing the Court to combine a hearing on approval of a disclosure statement with the confirmation hearing). The Debtors submit that the Combined Hearing would promote judicial economy and the expeditious reorganization of the Debtors.

38.    Courts in this district have routinely permitted combined hearings in other prepackaged chapter 11 cases.  *See*, *e.g.*, *In re Riverbed Tech., Inc.* No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (scheduling a combined hearing for the disclosure statement and plan); *In re Highpoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021) (same); *In re APC Auto. Techs. Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. June 4, 2020)

(same); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. Apr. 15, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same).[13]

39.     The Debtors request that the Court schedule the Combined Hearing on September 28, 2022 (or as soon as possible thereafter) and consider both the adequacy of the Disclosure Statement and whether to confirm the Plan at the Combined Hearing.

40.     The Debtors submit that it is appropriate to schedule the Combined Hearing for September 28, 2022.  *First*, the Debtors have requested that the Court schedule the Combined Hearing on a date that will be 35 days after service of the Combined Hearing Notice and 38 days after service of the Disclosure Statement on the Voting Classes, and the Debtors have provided notice of the Combined Hearing consistent with Bankruptcy Rules 2002(b) and 3017(a), Local Rules 3017-1(a) and 9006-1(c), and section 1128(a) of the Bankruptcy Code.  *Second*, as described herein, the Debtors' prepetition solicitation of votes on the Plan was in accordance with sections 1125(g) and 1126(b) of the Bankruptcy Code.  *Third*, the fully solicited Plan is a consensual prepackaged reorganization plan, and all creditors in the Voting Classes—Class 3 (First Lien Claims) and Class 4 (Second Lien Term Loan Claims)—that have submitted Ballots have voted to accept the Plan under section 1126(c) of the Bankruptcy Code.  *Fourth*, a combined hearing on the Disclosure Statement and the Plan will promote judicial economy, limit administrative expenses that arise from the time spent in these chapter 11 cases, and minimize potential disruption to the Debtors' business.

---

[13]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

**III.    Objection Deadline and Related Procedures.**

41.    Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider . . . any objections or modifications" to the Disclosure Statement.  Fed. R. Bankr. P. 3017(a).  Local Rule 3017-1(a) provides that "[u]pon the filing of a disclosure statement, the proponent of the plan shall obtain hearing and objection dates from the Court," which "hearing date shall be at least thirty-five (35) days following service of the disclosure statement and the objection deadline shall be at least twenty-eight (28) days from service of the disclosure statement." Del. Bankr. L.R. 3017-1(a).  Similarly, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed for filing objections and the hearing to consider approval of a disclosure statement" or "confirmation of a . . . chapter 11 plan."  Fed. R. Bankr. P. 2002(b).  Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1).

42.    Promptly following entry of the Order, the Debtors will cause the Combined Hearing Notice to be served on their entire creditor matrix, consisting of more than 9,600 creditors, equity holders, and interested parties.  The Combined Hearing Notice provides the date and time of the Combined Hearing and Objection Deadline, and will also provide instructions on how an interested party may object to confirmation of the Plan or the adequacy of the Disclosure Statement by the Objection Deadline.  The Combined Hearing Notice provides that objections to the approval of the Disclosure Statement or confirmation of the Plan, if any, shall:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity;

(d) state with particularity the legal and factual basis for such objection; and (e) be filed on the Court's docket no later than the Objection Deadline.

43.     The Debtors respectfully submit that the proposed Objection Deadline and related procedures are reasonable and appropriate because they comply with the applicable sections of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The proposed Objection Deadline of September 21, 2022 will be 28 days following the service of the Combined Hearing Notice and 31 days following service of the Disclosure Statement on the Voting Parties.  The Plan has been accepted by all creditors in both Voting Classes that submitted Ballots, and Holders of Claims and Interests not entitled to vote on the Plan will not be denied due process.  Based on the foregoing and the Debtors' extensive noticing efforts, the Court should approve the proposed Objection Deadline—September 21, 2022, at 5:00 p.m., prevailing Eastern Time—and the related procedures.

**IV.     Approval of the Prepetition Solicitation Procedures.**

44.     The Debtors distributed the Solicitation Packages and solicited votes to accept or reject the Plan prior to the Petition Date, in accordance with sections 1125 and 1126 of the Bankruptcy Code.  *See* 11 U.S.C. § 1125(g) (permitting debtors to commence solicitation prior to filing chapter 11 petitions); *id.* § 1126(b) (providing that holders of claims or interests that accepted or rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the plan so long as the solicitation was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of such disclosure, or if there is no such applicable nonbankruptcy law, provided adequate information).

45.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to Holders of Claims or Interests for the purpose of soliciting their votes to accept or reject a plan of reorganization.  *See* Fed. R. Bankr. P. 3017(d) (providing that required materials include the plan,

22

the related disclosure statement, and notice of the plan voting deadline).  The Solicitation Packages distributed to the Holders of Claims in the Voting Classes included all required materials, including the ABL Roll Election Form for Holders of Allowed First Lien Revolving Claims in Class 3. Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures, and enter any orders that the court deems appropriate."  Fed. R. Bankr. P. 3017(e).  As set forth herein, the Solicitation Procedures comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The Debtors seek approval of the Solicitation Procedures, the Ballots, and the procedures used for tabulating votes to accept or reject the Plan.

46.     The Voting Deadline was set for August 22, 2022, at 12:00 p.m., prevailing Eastern Time.  As of the Voting Deadline, the Plan was accepted by all Holders of First Lien Claims (Class 3) and Second Lien Term Loan Claims (Class 4) that submitted Ballots.

47.     Similar procedures have been approved in other chapter 11 cases in this district. *See, e.g.*, *In re Riverbed Tech., Inc.* No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (approving prepackaged solicitation procedures); *In re Highpoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021) (same); *In re APC Auto. Techs. Intermediate Holdings, LLC* No. 20-11466 (CSS) (Bankr. D. Del. June. 4, 2020) (same); *In re Longview Power, LLC,* No. 20-10951 (BLS) (Bankr. D. Del. Apr. 5, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same).[14]

---

[14] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

## A.    Voting Record Date.

48.    Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable claims or interests against a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation." Fed. R. Bankr. P. 3018(b).    Here, the Solicitation Cover Letter, the Combined Hearing Notice, the Disclosure Statement, and the Ballots clearly identified August 15, 2022 as the Voting Record Date, *i.e.*, the date for determining which Holders of Claims in the Voting Classes were entitled to vote to accept or reject the Plan.

## B.    Plan Distribution and Voting Deadline.

49.    Bankruptcy Rule 3018(b) provides that prepetition acceptances and rejections of a plan are valid only if the plan was transmitted to substantially all the holders of claims and interests entitled to vote on the plan and the time for voting was not unreasonably short. *See* Fed. R. Bankr. P. 3018(b).    As mentioned above, all Holders of Claims in the Voting Classes were transmitted the Plan by email on August 21, 2022, and had until 12 p.m. prevailing Eastern Time on August 22, 2022,  to consider and return votes with respect to the Plan.

50.    The Debtors respectfully submit that Holders of Claims in the Voting Classes, who are all sophisticated market participants and substantially all of which were involved in prepetition negotiations with the Debtors, had adequate time to consider the Plan and Disclosure Statement, make a voting decision, and vote on the Plan by the Voting Deadline.  This is evidenced by, among other things, the voting results, which reflect unanimous support for the Plan among all Holders of Claims in the Voting Classes that submitted Ballots.  Additionally, the 1-day voting period is consistent with voting periods approved in other prepackaged chapter 11 cases in this district. *See*, *e.g.*, *In re Hospitality Invs. Trust, Inc.*, No. 21-10831 (CTG) (Bankr. D. Del. May 21, 2021) (approving prepetition solicitation procedures that included a 1-day voting period); *In re Templar*

24

*Energy LLC*, No. 20-11441 (BLS) (Bankr. D. Del. June 2, 2020) (approving prepetition solicitation procedures that included a 1-day voting period); *In re PES Holdings, LLC*, No. 18-10122 (KG) (Bankr. D. Del. Jan. 29, 2018) (approving prepetition solicitation procedures that included a 2-day voting period); *In re Hercules Offshore, Inc.*, No. 16-11385 (KJC) (Bankr. D. Del. June 15, 2016) (approving prepetition solicitation procedures that included a 3-day voting period); *In re Cubic Energy, Inc.*, No. 15-12500 (CSS) (Bankr. D. Del. Jan. 12, 2016) (approving prepetition solicitation procedures that included a 1-day voting period).

### C.    The Ballots.

51.    Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot that substantially conforms to Official Form 314 only to those parties in interest that are actually entitled to vote on the Plan.  Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form."  Fed. R. Bankr. P. 3018(c).

52.    As set forth herein, all Holders of Claims entitled to vote on the Plan were transmitted Ballots by email on the Solicitation Commencement Date.  The Ballots used in the Solicitation Packages are based on Official Form 314 and have been modified, as applicable, to address the particular circumstances of these chapter 11 cases to include certain information that the Debtors believe to be relevant and appropriate for Holders of Claims entitled to vote to accept or reject the Plan.  The forms of Ballots used in the Solicitation Packages are attached to the Order as Exhibits 5 and 6, and should be approved.

### D.    Voting Tabulation.

53.    The Debtors, with assistance from the Solicitation Agent, are using standard tabulation procedures in tabulating votes for the Plan.  These procedures are consistent with

25

section 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b), and accord with applicable

nonbankruptcy law.  These tabulation procedures are also consistent with those previously used in

prepackaged cases this district.  *See*, *e.g.*, *In re Riverbed Tech., Inc.* No. 21-11503 (CTG) (Bankr.

D. Del. Nov. 18, 2021) (approving vote tabulation procedures substantially similar to those utilized

here);  *In re Highpoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021) (same);

*In re APC Auto. Techs. Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. June 4,

2020) (same); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. Apr. 15, 2020)

(same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019)

(same).[15]

      **E.**      **The Debtors' Prepetition Solicitation Was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Nonbankruptcy Law.**

54.      Section 1125(g) of the Bankruptcy Code provides that "an acceptance or rejection

of the plan may be solicited from a holder of a claim or interest if such solicitation complies with

applicable nonbankruptcy law and if such holder was solicited before the commencement of the

case in a manner complying with applicable nonbankruptcy law." 11 U.S.C. § 1125(g).  Further,

section 1126(b) of the Bankruptcy Code provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

---

[15] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

26

55.    Prepetition solicitations must therefore either comply with generally applicable federal and state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited Holders must receive "adequate information" under section 1125 of the Bankruptcy Code. *See id.*  The Debtors respectfully submit that their prepetition solicitation is exempt from the registration requirements of the Securities Act of 1933 (the "Securities Act"), under one or more of the exceptions from registration provided thereunder, including section 4(a)(2) thereof, state "Blue Sky" laws, or any similar rules, regulations, or statutes.

56.    In general, the Securities Act requires an issuer to file a registration statement with the U.S. Securities and Exchange Commission prior to commencing a public offering. 15 U.S.C. § 77e(c).  The Debtors, however, were not required to file a registration statement under one or more of the exceptions to the registration requirements of the Securities Act, state "Blue Sky" laws, and similar statutes, rules, and regulations.  In particular, shares of the New Common Stock will be issued in reliance upon either (a) section 1145 of the Bankruptcy Code, which creates an exemption from, among other things, the registration requirements under the Securities Act and any other applicable U.S. state or local law for securities issued under a plan of reorganization, or (b) section 4(a)(2) of the Securities Act and/or Regulation D (a safe harbor regulation promulgated under that section), which create an exemption from the Securities Act's registration requirements and otherwise applicable state laws for transactions not involving a "public offering."  15 U.S.C. § 77r(b)(4)(E) (preempting state law in offerings conducted pursuant to regulations under section 4(a)(2) of the Securities Act).  The Debtors understand that all parties entitled to vote on the Plan were accredited investors, as that term is defined in Rule 501 of Regulation D, and there was no general solicitation in connection with the sale of securities under the Plan.   Further, each

27

participant in the Rights Offering certified that it was an Accredited Investor.  Accordingly, the Debtors were not required to file a registration statement regarding the offer of the New Common Stock of the Reorganized Debtors, and the requirements of section 1126(b)(1) of the Bankruptcy Code are satisfied by the Debtors' prepetition solicitation process.

57.     Moreover, debtors in this district have utilized section 4(a)(2) of the Securities Act to exempt their prepetition solicitation from the registration and disclosure requirements otherwise applicable under nonbankruptcy law.  *See, e.g.*, *In re Riverbed Tech., Inc.* No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (approving solicitation procedures that included section 4(a)(2) exemption); *In re APC Auto. Techs. Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. June 4, 2020) (same); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. Apr. 15, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (same).[16]

**V.      The Court Should Approve the Rights Offering Procedures and the Rights Offering Subscription Form.**

58.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  In the Third Circuit, courts have authorized the use or sale of property of the estate outside the ordinary course of business when such use or sale is grounded upon a "sound business purpose" and is proposed in good faith.  *See In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153

---

[16]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

(D. Del. 1999); *In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at * 7 (D. Del. May 20, 2002); *In re Exaeris, Inc.*, 380 B.R. 741 (Bankr. D. Del. 2008).

59.     Once a debtor articulates a valid business justification under section 363 of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company. *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 567 (Bankr. D. Del. 2008).  Further, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Integrated Res.*, 147 B.R. at 656; *Johns-Manville*, 60 B.R. at 615-16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").  Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

60.     The Rights Offering is a critical component of the Plan, which has the support of the parties to the Restructuring Support Agreement and provides necessary financing to consummate the Plan.  Indeed, the Plan represents the Debtors' best hope for expeditiously exiting from chapter 11 and emerging as a healthy and thriving enterprise on a go-forward basis. The Debtors believe that the Rights Offering Procedures and the Rights Offering Subscription Form are necessary to the successful effectuation of the Rights Offering and provide Eligible Holders a fair and reasonable opportunity to participate in the Rights Offering.  Thus, the Debtors

believe in their sound business judgment that approval of the Rights Offering Procedures and the Rights Offering Subscription Form is in the Debtors' and their creditors' best interests.

61.    Moreover, under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  In essence, the Court may enter an order that safeguards the value of the debtor's estate if doing so is consistent with the Bankruptcy Code.  *See, e.g., Chinichian v. Campolongo (In re Chinichian)* 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (acknowledging that "the [b]ankruptcy [c]ourt is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").  Because approval of the Rights Offering Subscription Form is necessary to effectuate the Plan—which represents the Debtors' best means of protecting the value of their estates and maximizing recoveries—the Debtors believe that the Court's application of section 105(a) of the Bankruptcy Code here is appropriate.[17]

62.    Courts in this district have approved similar relief.  *See, e.g.*, *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019)*; In re Chaparral Energy, Inc.*, No. 20-

---

[17]    Section 1125(b) provides that "[a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title . . . unless, at the time of or before such solicitation, there is transmitted . . . a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b).  Here, the Rights Offering process will run parallel to, but independently of, the solicitation process.  The Rights Offering Procedures and the Rights Offering Subscription Form will be provided to each Eligible Holder substantially contemporaneously with the commencement of solicitation and will contain statements urging Eligible Holders to review the Disclosure Statement and the Plan prior to making a decision with respect to the exercise of their Rights.  Thus, the Rights Offering Procedures and Rights Offering Subscription Form are consistent wtih section 1125(b) of the Bankruptcy Code.

11947) (MFW) (Bankr. D. Del. Aug. 18, 2020); *In re Hexion Holdings LLC*, No 19-10684 (KG) (Bankr. D. Del. May 22, 2019) (same); *In re Claire's Stores, Inc.*, No 18-10584 (MFW) (Bankr. D. Del. July 20, 2018) (same); *In re GulfMark Offshore, Inc.*, No. 17- 11125 (KG) (Bankr. D. Del. June 15, 2017) (same).[18]

## VI.    The Disclosure Statement Contains "Adequate Information."

63.    At the Combined Hearing, the Debtors will request that the Court find that the Disclosure Statement contains "adequate information," as defined in section 1125(a) of the Bankruptcy Code. *See* 11 U.S.C. § 1126(b)(2) (providing that, if no nonbankruptcy law governs the solicitation of holders of claims or interests prior to the debtors commencing chapter 11 cases, such solicitation must have been based on the debtors providing such holders "adequate information" as defined in section 1125(a) of the Bankruptcy Code).

64.    What constitutes "adequate information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable parties to vote in an informed way. *See* 11 U.S.C. § 1125(a)(1); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a creditor to make an informed judgment about the Plan") (internal quotations omitted); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (noting that "adequate information" varies on a case-by-case basis).

65.    The Disclosure Statement contains adequate information to enable a hypothetical investor in one of the Voting Classes to make an informed judgment about the Plan, including,

---

[18]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

among other things:  (a) both the Plan and the Debtors' related reorganization efforts; (b) certain events and relevant negotiations preceding the commencement of these chapter 11 cases; (c) the key terms of the Restructuring Transactions; (d) risk factors affecting consummation of the Plan and the Restructuring Transactions; (e) a liquidation analysis setting forth an estimated recovery that Holders of Claims and Interests would receive in a hypothetical chapter 7 case; (f) financial information that is relevant in determining whether to accept or reject the Plan; (g) securities law consequences of the Plan; and (h) federal tax law consequences of the Plan.

66.     In addition, as noted above, the Disclosure Statement and the Plan were subject to extensive review and comment by the parties to the Restructuring Support Agreement, including the Consenting First Lien Lenders, which is composed of creditors holding approximately 70% of Claims in Class 3 and the Consenting Second Lien Lenders, which is composed of creditors holding approximately 99% of Claims in Class 4.   Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code, and should be approved.

**VII.    Waiver of Certain Solicitation Package Mailings.**

67.     The Debtors request that the Court waive the requirement that they mail a copy of the Solicitation Package to Holders of Claims and Interests presumed to accept or deemed to reject the Plan.  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of a court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders except as the court orders otherwise).  Bankruptcy Rule 3017(d) applies, in relevant part, "[u]pon approval of a disclosure statement." *Id*.  Accordingly, Bankruptcy Rule 3017 may be deemed to not apply here considering the prepetition solicitation process employed.  *See also* 11 U.S.C. §§ 1126(f), (g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary).

68.     Distributing the Solicitation Packages (including full copies of the Plan and Disclosure Statement) to Holders of Claims and Interests not entitled to vote on the Plan is costly and administratively burdensome.  The Debtors submit that their resources should not be dissipated by having to satisfy this mailing requirement, especially given that the Debtors have made the Plan and Disclosure Statement available at no cost on the Case Website, and the Combined Hearing Notice and Publication Notice prominently display how parties in interest may access the Case Website and these materials free-of-charge.

69.     Similar waivers have been granted in other chapter 11 cases in this district. *See*, *e.g.*, *In re Riverbed Tech., Inc.* No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (providing that the debtors need not mail a copy of the plan or the disclosure statement to claimants presumed to accept or deemed to reject the plan unless requested by such claimants);  *In re Highpoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021) (same);  *In re APC Auto. Techs. Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. June 4, 2020) (same); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. Apr. 15, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same).[19]

**VIII.   Conditional Waiver of the Creditors' Meeting and the Filing of Schedules, SOFAs, and 2015.3 Reports.**

70.     The Debtors respectfully submit that the circumstances of these chapter 11 cases merit a conditional waiver of the requirements that (a) the U.S. Trustee convene a Creditors' Meeting and (b) the Debtors file Schedules, SOFAs, and 2015.3 Reports, in each case, if the Plan is confirmed within seventy-five days of the Petition Date.  This relief is appropriate because, among other things, the Debtors commenced and completed solicitation of votes on the Plan

---

[19]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

33

prepetition, and the Plan has been unanimously accepted by creditors in each Voting Class that submitted Ballots.

71.    Although section 341(a) of the Bankruptcy Code typically requires the U.S. Trustee to convene and preside over a meeting of the Debtors' creditors, this requirement can be waived under the circumstances present here.  Specifically, section 341(e) provides:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

72.    Given that the Debtors commenced and completed solicitation of votes on the Plan prepetition, and in light of the Plan's unanimous acceptance by creditors in each Voting Class that submitted Ballots, there is cause for the Court to conditionally waive the requirement that the U.S. Trustee convene the Creditors' Meeting.  Accordingly, the Debtors request that the Court order that the Creditors' Meeting need not be convened if the Debtors obtain confirmation of the Plan within seventy-five days of the Petition Date, subject to the Debtors' right to seek extensions in consultation with the U.S. Trustee.

73.    The Debtors also request that the requirement to file Schedules, SOFAs, and 2015.3 Reports be waived in the event that the Plan is confirmed within seventy-five days of the Petition Date.  Pursuant to Local Rule 1007-1(b), the Debtors are already entitled to a 28-day extension of the requirement to file their Schedules and SOFAs because the Debtors have more than two hundred creditors.  The Court has authority to grant a further extension "for cause" pursuant to Bankruptcy Rule 1007(c) and Local Rule 1007-1(b).  *See* Fed. R. Bankr. P. 1007(c); Del. Bankr. L.R. 1007-1(b).  Bankruptcy Rule 9006(b)(1) provides the Court with authority to extend the period of time to file the Schedules, SOFAs, and 2015.3 Reports "for cause."  Fed. R. Bankr. P. 9006(b)(1).  Additionally, Bankruptcy Rule 2015.3(d) provides the Court with the ability, after

34

notice and a hearing, to modify the reporting requirements for cause, including that a debtor is "not able, after a good faith effort, to comply with those reporting requirements, or that the information . . . is publicly available." Fed. R. Bankr. P. 2015.3(d).

74.     Here, cause exists to further extend the deadline because requiring the Debtors to file Schedules, SOFAs, and 2015.3 Reports would distract the Debtors' management and advisors from the work of ensuring a smooth and swift transition into and out of these chapter 11 cases through confirmation and consummation of the Plan.  Given the prepackaged nature of these chapter 11 cases, and the fact that all creditors in each Voting Class that submitted Ballots have voted to accept the Plan, the Schedules, SOFAs, and 2015.3 Reports would also be of limited utility to most parties in interest.  Any benefit of requiring the Debtors to prepare the Schedules, SOFAs, and 2015.3 Reports would be minimal at best and would be significantly outweighed by the substantial expenditure of time and resources the Debtors will be required to devote to the preparation and filing of these documents.  For these reasons, the Court should only require that the Debtors file Schedules, SOFAs, and 2015.3 Reports if the Plan is not confirmed within seventy-five days of the Petition Date, subject to the Debtors' right to seek extensions in consultation with the U.S. Trustee.

75.     Courts in this district have frequently conditionally waived the requirements for the U.S. Trustee to convene a Creditors' Meeting and for a debtor to file Schedules, SOFAs, and 2015.3 Reports in other prepackaged chapter 11 cases.  *See*, *e.g.*, *In re Riverbed Tech., Inc.* No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (conditionally waiving the requirement to convene a Creditors' Meeting and file Schedules and SOFAs if the plan was confirmed within seventy-five days of the petition date);  *In re Highpoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021) (same);  *In re APC Auto. Techs. Intermediate Holdings, LLC*, No. 20-11466

(CSS) (Bankr. D. Del. June 4, 2020) (same); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. Apr. 15, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same).[20]  For the reasons discussed above, similar relief is appropriate in these chapter 11 cases.

76.     The Debtors ask that the requested relief be granted without prejudice to the Debtors' ability to seek further extensions or modifications of the requirement for the U.S. Trustee to convene a Creditors' Meeting and for the Debtors to file Schedules, SOFAs, and 2015.3 Reports.  The Debtors also request that the Court authorize the Debtors to further extend the deadline to convene a Creditors' Meeting and file Schedules, SOFAs, and 2015.3 Reports without filing a supplemental motion, and without further order from the Court, provided that the Debtors obtain the advance consent of the U.S. Trustee.

## Notice

77.     The Debtors will provide notice of this motion to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Agent; (d) counsel to the First Lien Agent and the Second Lien Agent; (e) counsel to the Crossover Group; (f) the office of the attorney general for each of the states in which the Debtors operate; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion

---

[20]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be.

## <u>No Prior Request</u>

78.     No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the

form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such

other relief as is just and proper.

Dated: August 23, 2022
Wilmington, Delaware

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email:          ljones@pszjlaw.com
                tcairns@pszjlaw.com
                ecorma@pszjlaw.com

-and-

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Tricia Schwallier Collins (*pro hac vice* pending)
Yusuf U. Salloum (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                tricia.schwallier@kirkland.com
                yusuf.salloum@kirkland.com

-and-

Nicole L. Greenblatt, P.C. (*pro hac vice* pending)
Rachael M. Bentley (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          nicole.greenblatt@kirkland.com
Email:          rachael.bentley@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*