IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CARESTREAM HEALTH, INC., *et al.*,[1] | ) Case No. 22-10778 (JKS) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**DECLARATION
OF SCOTT H. ROSA IN SUPPORT OF
THE DEBTORS' MOTION FOR ENTRY OF AN
ORDER (I) APPROVING THE DEBTORS' ENTRY INTO THE EXIT
ABL FACILITY COMMITMENT DOCUMENTS, (II) AUTHORIZING PAYMENT
OF FEES AND EXPENSES THEREUNDER, AND (III) GRANTING RELATED RELIEF**

I, Scott H. Rosa, hereby declare under penalty of perjury:

1. I am the Chief Financial Officer of Carestream Health, Inc. (together with the other above-captioned debtors and debtors in possession, collectively, the "Debtors").

2. I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Entry Into the Exit ABL Facility Commitment Documents, (II) Authorizing Payment of Fees and Expenses Thereunder, and (III) Granting Related Relief* (the "Motion"),[2] filed contemporaneously herewith.

3. As the Chief Financial Officer of Carestream, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Carestream Health, Inc. (0334); Carestream Health Acquisition, LLC (0333); Carestream Health Canada Holdings, Inc. (7700); Carestream Health Holdings, Inc. (7822); Carestream Health International Holdings, Inc. (5771); Carestream Health International Management Company, Inc. (0532); Carestream Health Puerto Rico, LLC (8359); Carestream Health World Holdings, LLC (1662); and Lumisys Holding Co. (3232). The location of the Debtors' service address is: 150 Verona Street, Rochester, New York 14608.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

knowledge, information obtained from the Debtors' management team and advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based on my experience and knowledge. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

## The Exit ABL Facility and Related Obligations

4. On August 21, 2022, after extensive negotiations, the Debtors and the Exit ABL Backstop Parties entered into the Commitment Letter, which documents the Exit ABL Backstop Parties' commitment to provide the Exit ABL Facility. Importantly, the Exit ABL Facility ensures that the Debtors have the necessary liquidity to consummate the Plan, if approved, and emerge from chapter 11 with a deleveraged balance sheet—a tremendous benefit to the Debtors' estates on their path to expeditiously conclude these chapter 11 cases. Accordingly, I believe that the Exit ABL Facility and finalization of the related documentation in a timely manner is critical to the Debtors' successful emergence from chapter 11.

5. I believe the Commitment Letter is the product of extensive good faith, arm's-length negotiations between the Debtors and the Exit ABL Backstop Parties. The Commitment Letter provides that the Exit ABL Backstop Parties will continue to conduct legal and business diligence, prepare and negotiate the definitive documentation for the Exit ABL Facility, and ultimately fund at least a portion of the Exit ABL Facility, subject to confirmation of the Plan and other conditions precedent detailed in the letter and the other Exit ABL Facility Commitment Documents. In exchange for agreeing to incur such obligations, the Exit ABL Backstop Parties have provided that the Commitment Letter is conditioned on the Court's approval of the Debtors' entry into such letter.

6.      In particular, I understand that the Exit ABL Backstop Parties' commitment to provide the Exit ABL Facility is conditioned on the Debtors seeking approval of the Exit ABL Facility Commitment Documents at the outset of these chapter 11 cases through the Motion. Further, I believe that the Debtors' performance under the Exit ABL Facility Commitment Documents is necessary to secure the Exit ABL Backstop Parties' commitment to provide the Exit ABL Facility. The Commitment Letter provides that:

> It is a condition to the Commitment Parties' commitments and agreements hereunder that (a) you use reasonable best efforts to obtain entry of an order (in form and substance reasonably satisfactory to the Commitment Parties) by the Bankruptcy Court approving the Borrower's entry into to this Commitment Letter and the Fee Letters and authorizing the payment of fees and expenses and the granting of indemnification provided for in this Commitment Letter and the payment of fees provided for in the Fee Letters) at the initial hearing for relief in the Cases; _provided_, _however_, that to the extent such an order is not entered by the Bankruptcy Court at the initial hearing for relief in the Cases, it shall be a condition to the Commitment Parties' commitments and agreements hereunder that such an order is entered within ten (10) calendar days of the date the Cases are commenced.

7.      Accordingly, the Debtors seek approval of their entry into the Exit ABL Facility Commitment Documents and to perform thereunder to facilitate their prompt emergence from chapter 11.

**I.    The Debtors' Entry Into and Performance Under the Exit ABL Facility Commitment Documents and Payment of the Exit ABL Facility Obligations Are Sound Exercises of the Debtors' Business Judgment.**

8.      I believe that the Debtors' entry into and performance under the Exit ABL Facility Commitment Documents is supported by valid and sound business reasons. I understand that the Exit ABL Facility Commitment Documents are the product of extensive good faith, arm's-length negotiations between the Debtors and the Exit ABL Backstop Parties. I believe that the Debtors' ability to consummate their proposed chapter 11 plan of reorganization, particularly under the timing contemplated by the RSA and DIP Budget, depends on the availability of the exit financing

provided by the Exit ABL Backstop Parties through the Exit ABL Facility. As provided above in the Commitment Letter, absent the Debtors' entry into and performance under the Exit ABL Facility Commitment Documents, including payment of the fees and expenses thereunder, I believe that the Debtors would likely be unable to secure the Exit ABL Backstop Parties' commitment to provide the Exit ABL Facility, and the Debtors would lose this critical source of post-reorganization liquidity. Accordingly, I believe the Debtors' path to expeditiously concluding these chapter 11 cases would be significantly jeopardized, to the detriment of the Debtors and all parties in interest, without the commitment for exit financing.

9. In light of the foregoing, and given the importance of the Exit ABL Facility to the Debtors' successful reorganization, I submit that the Debtors' entry into and performance under the Exit ABL Facility Commitment Documents constitute a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors' estates.

**II.    The Expense Reimbursement and Indemnification Should Constitute Allowed Administrative Expenses Pursuant to Section 503(b) of the Bankruptcy Code.**

10. I believe that the Expense Reimbursement and Indemnification are designed to fairly compensate the Exit ABL Backstop Parties for their efforts to negotiate and finalize documentation of the Exit ABL Facility during the pendency of these chapter 11 cases. I understand that section 503(b) of the Bankruptcy Code provides that the actual, necessary costs and expenses of preserving the estate may be allowed administrative expenses of the chapter 11 cases. I understand that the Exit ABL Backstop Parties have already committed substantial time and resources in connection with closing on the Exit ABL Facility, but will only continue to do so upon the Court's approval of the Motion. While the Debtors sought to negotiate around this requirement, ultimately, the Exit ABL Backstop Parties viewed this as a necessary protection. I understand that there remains a risk, however limited, that the Exit ABL Facility will not be

consummated, and accordingly, that these provisions are a necessary inducement to the Exit ABL Backstop Parties' agreement to enter into the Commitment Letter. Rather than delay ongoing work on the Exit ABL Facility until after confirmation of the Plan and potentially risk defaulting on the milestones contained in the RSA and DIP Facility Documents, I believe it is in the best interests of all stakeholders for the Debtors and Exit ABL Backstop Parties to continue advancing documentation of the Exit ABL Facility. Accordingly, I believe that the Expense Reimbursement and Indemnification, and the prioritization of related claims as administrative expenses, will help protect the Exit ABL Backstop Parties during the pre-closing period, and are a critical piece to maximizing the value of the Debtors' estates to the benefit of all parties.

11. Moreover, because the Plan provides for unimpaired treatment for all allowed unsecured claims, I understand that approval of the Expense Reimbursement and Indemnification does not prejudice any junior creditors, particularly in light of the benefits of securing the Exit ABL Backstop Parties' commitment to provide the Exit ABL Facility at this time.

12. In sum, it is my opinion that the terms of the Exit ABL Facility Commitment Documents were the product of good faith, arm's-length negotiations, and that approval of the Exit ABL Facility Commitment Documents at the outset of these chapter 11 cases will benefit all stakeholders and avoid the significant harm to the estates of losing a committed source of liquidity. For all of the reasons included in this Declaration and outlined in the Motion, I submit it would be appropriate for the Court to grant the Motion, approving the Debtors' entry into the Commitment Letter and authorizing the Debtors to perform thereunder to facilitate their prompt emergence from chapter 11.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: August 23, 2022

By: */s/ Scott H. Rosa*
Name: Scott H. Rosa
Title: Chief Financial Officer of Carestream Health, Inc., on behalf of itself and each of its Debtor affiliates