# **<u>Exhibit A</u>**

*Solicitation Version*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CARESTREAM HEALTH, INC., *et al.*,[1] | ) Case No. ~~22-[_____]~~ 22-10778 (~~____~~ JKS) |
| | ) |
| Debtors. | ) (Jointly Administ~~ered~~ ation ~~Requested~~) |
| | ) |

**AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN**
**OF REORGANIZATION**
**OF CARESTREAM HEALTH, INC., AND ITS DEBTOR AFFILIATES**

---

**THIS CHAPTER 11 PLAN IS BEING ~~SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126. THIS CHAPTER 11 PLAN WILL BE~~ SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION ~~AND THE DEBTORS' FILING FOR CHAPTER 11 BANKRUPTCY~~.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Carestream Health, Inc. (0334); Carestream Health Acquisition, LLC (0333); Carestream Health Canada Holdings, Inc. (7700); Carestream Health Holdings, Inc. (7822); Carestream Health International Holdings, Inc. (5771); Carestream Health International Management Company, Inc. (0532); Carestream Health Puerto Rico, LLC (8359); Carestream Health World Holdings, LLC (1662); and Lumisys Holding Co. (3232). The location of the Debtors' service address is: 150 Verona Street, Rochester, New York 14608.

Laura Davis Jones (DE Bar No. 2436)

Timothy P. Cairns (DE Bar No. 4228)

Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400
Email:          ljones@pszjlaw.com
                tcairns@pszjlaw.com
                ecorma@pszjlaw.com

*Proposed Co-Counsel for the Debtors
and Debtors in Possession*

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice* pending)
Tricia Schwallier Collins (admitted *pro hac vice* pending)
Yusuf U. Salloum (admitted *pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                tricia.schwallier@kirkland.com
                yusuf.salloum@kirkland.com

-and-

Nicole L. Greenblatt, P.C. (admitted *pro hac vice* pending)
Rachael M. Bentley (admitted *pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-49000
Email:          nicole.greenblatt@kirkland.com
                rachael.bentley@kirkland.com

*Proposed Co-Counsel for the Debtors
and Debtors in Possession*

Dated:  ~~August~~September 2~~1~~3, 2022

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW .................................................................................................................. 1
    A.    Defined Terms. ........................................................................................................... 1
    B.    Rules of Interpretation. .............................................................................................. 15
    C.    Computation of Time. ................................................................................................ 156
    D.    Governing Law. .......................................................................................................... 16
    E.    Reference to Monetary Figures. ................................................................................ 16
    F.    Reference to the Debtors or the Reorganized Debtors. ............................................ 16
    G.    Controlling Document. .............................................................................................. 16
    H.    Consultation, Information, Notice, and Consent Rights. ......................................... 16

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS ........................................ 167
    A.    Administrative Claims. .............................................................................................. 167
    B.    DIP Claims. ................................................................................................................ 17
    C.    Professional Fee Claims. ........................................................................................... 18
    D.    Priority Tax Claims. ................................................................................................... 189
    E.    Payment of Statutory Fees. ....................................................................................... 19
    F.    Payment of Certain Fees and Expenses. ................................................................... 19

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ............. 19
    A.    Classification of Claims and Interests. ..................................................................... 19
    B.    Treatment of Claims and Interests. ........................................................................... 20
    C.    Special Provision Governing Unimpaired Claims. ................................................... 23
    D.    Elimination of Vacant Classes. ................................................................................. 234
    E.    Voting Record Date and Voting Deadline. ............................................................... 234
    F.    Intercompany Interests. ............................................................................................. 24
    G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ......... 24
    H.    Controversy Concerning Impairment. ...................................................................... 24
    I.    Subordinated Claims and Interests. .......................................................................... 24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................... 245
    A.    General Settlement of Claims and Interests. ............................................................. 245
    B.    Restructuring Transactions. ....................................................................................... 25
    C.    Sources of Consideration for Plan Distributions. ..................................................... 25
    D.    Corporate Existence. .................................................................................................. 278
    E.    Vesting of Assets in the Reorganized Debtors. ........................................................ 28
    F.    Cancellation of Existing Securities and Agreements. ............................................... 28
    G.    Corporate Action. ...................................................................................................... 289
    H.    New Organizational Documents. .............................................................................. 29
    I.    New Stockholders Agreement. .................................................................................. 2930
    J.    Indemnification Obligations. ..................................................................................... 2930
    K.    Directors and Officers of the Reorganized Debtors. ................................................ 30
    L.    Effectuating Documents; Further Transactions. ....................................................... 30
    M.    Existing Letter of Credit Cash Collateralization. ..................................................... 30
    N.    Section 1146 Exemption. ........................................................................................... 30
    O.    Director and Officer Liability Insurance. .................................................................. 31
    P.    Management Compensation Programs. ..................................................................... 31
    Q.    Preservation of Causes of Action. ............................................................................ 31
    R.    Release of Avoidance Actions. .................................................................................. 32
    S.    Termination of Sponsor Management Arrangements. ............................................... 32

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....... 32
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ............ 32

B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases. ................................ 33
C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. .......................... 33 34
D.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. ..... 34 5
E.      Insurance Policies. .............................................................................................. 34 5
F.      Reservation of Rights. ........................................................................................ 35
G.      Nonoccurrence of Effective Date. ......................................................................... 35
H.      Employee Compensation and Benefits. .................................................................. 35
I.      Contracts and Leases Entered Into After the Petition Date. ....................................... 36

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ................................................... 36
A.      Distributions on Account of Claims Allowed as of the Effective Date. ........................ 36
B.      Disbursing Agent. ............................................................................................. 36 7
C.      Rights and Powers of Disbursing Agent. ................................................................ 36 7
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. ................... 37
E.      Manner of Payment. .......................................................................................... 38
F.      Indefeasible Distributions. .................................................................................. 38
G.      Securities Law Matters. ..................................................................................... 38
H.      Compliance with Tax Requirements. ..................................................................... 39
I.      Allocations. ..................................................................................................... 39
J.      No Postpetition Interest on Claims. ...................................................................... 39 40
K.      Foreign Currency Exchange Rate. ........................................................................ 39 40
L.      Setoffs and Recoupment. .................................................................................... 40
M.      Claims Paid or Payable by Third Parties. ............................................................... 40

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
        DISPUTED CLAIMS ................................................................................................ 41
A.      Disputed Claims Process. ................................................................................... 41
B.      Allowance of Claims. ........................................................................................ 41
C.      Claims Administration Responsibilities. ................................................................ 41
D.      Estimation of Claims and Interests ....................................................................... 42
E.      Adjustment to Claims or Interests without Objection. ............................................... 42
F.      Disallowance of Claims or Interests. ..................................................................... 42
G.      No Distributions Pending Allowance. ................................................................... 42
H.      Distributions After Allowance. ............................................................................ 42 3

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............... 43
A.      Discharge of Claims and Termination of Interests. .................................................. 43
B.      **Release of Liens.** ........................................................................................... 43
C.      **Releases by the Debtors.** ................................................................................. 44 3
D.      **Releases by the Releasing Parties.** ..................................................................... 44
E.      **Exculpation.** ................................................................................................. 45 4
F.      **Injunction.** ................................................................................................... 46 5
G.      Protections Against Discriminatory Treatment. ....................................................... 46 5
H.      Document Retention. ......................................................................................... 46
I.      Reimbursement or Contribution. .......................................................................... 46

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ......................... 47 6
A.      Conditions Precedent to the Effective Date. ........................................................... 47 6
B.      Waiver of Conditions. ....................................................................................... 48 7
C.      Effect of Failure of Conditions. ........................................................................... 48 7
D.      Substantial Consummation. ................................................................................ 48 7

ARTICLE X. EFFECT OF CONFIRMATION OF THE PLAN ................................................... 48
A.      Jurisdiction and Venue. ..................................................................................... 48
B.      Voting Report. ................................................................................................. 49 8
C.      Judicial Notice. ................................................................................................ 49 8

|     | D. | Transmittal and Mailing of Materials; Notice. | 4998 |
|     | E. | Solicitation. | 4998 |
|     | F. | Burden of Proof. | 49 |
|     | G. | Bankruptcy Rule 3016(a) Compliance. | 49 |
|     | H. | Compliance with the Requirements of Section 1129 of the Bankruptcy Code. | 5049 |
|     | I. | Securities Under the Plan. | 5453 |
|     | J. | Releases and Discharges. | 54 |
|     | K. | Release and Retention of Causes of Action. | 5554 |
|     | L. | Approval of Restructuring Support Agreement and Other Restructuring Documents and Agreements. | 5554 |
|     | M. | Confirmation Hearing Exhibits. | 5554 |
|     | N. | Objections to Confirmation of the Plan. | 5554 |
|     | O. | Retention of Jurisdiction. | 5554 |
|     | P. | Plan Supplement. | 55 |

**ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ... 55
|     | A. | Modification and Amendments. | 55 |
|     | B. | Effect of Confirmation on Modifications. | 5655 |
|     | C. | Revocation or Withdrawal of Plan. | 5655 |

**ARTICLE XII. RETENTION OF JURISDICTION** ... 5655

**ARTICLE XIII. MISCELLANEOUS PROVISIONS** ... 5857
|     | A. | Immediate Binding Effect. | 5857 |
|     | B. | Additional Documents. | 5857 |
|     | C. | Statutory Committee and Cessation of Fee and Expense Payment | 58 |
|     | D. | Reservation of Rights. | 58 |
|     | E. | Successors and Assigns. | 5958 |
|     | F. | Notices. | 5958 |
|     | G. | Term of Injunctions or Stays. | 6059 |
|     | H. | Entire Agreement. | 6059 |
|     | I. | Plan Supplement. | 6059 |
|     | J. | Nonseverability of Plan Provisions. | 60 |
|     | K. | Votes Solicited in Good Faith. | 6160 |
|     | L. | Closing of Chapter 11 Cases. | 6160 |
|     | M. | Waiver or Estoppel. | 6160 |

## INTRODUCTION

Carestream Health, Inc. and the other above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") propose this joint prepackaged chapter 11 plan of reorganization (as may be altered, amended, modified, or supplemented from time to time in accordance with its terms and the Restructuring Support Agreement (as defined below), this "<u>Plan</u>") for the resolution of the outstanding Claims against, and Interests in, the Debtors.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the accompanying *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc., and Its Debtor Affiliates*.  Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion on the Debtors' history, business, properties and operations, valuation, projections, risk factors, a summary and analysis of the Plan and the transactions contemplated thereby, and certain related matters.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

# ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A.      Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*ABL Backstop Roll Option*" has the meaning given to such term in Article III.B.3 of the Plan.

2.      "*ABL Backstop Roll Option Funded Pool*" means an amount equal to the aggregate principal amount of Allowed First Lien Revolving Claims held by the New ABL Backstop Commitment Parties on the Effective Date, up to and not to exceed an amount equal to $36,265,790.

3.      "*ABL Funded Rollover Cap*" means an amount equal to (a) the total principal amount of the New ABL Facility (funded and unfunded commitments), multiplied by (b) 0.5579~~352~~006, *less* (c) the ABL Backstop Roll Option Funded Pool; *provided, however*, that such amount may be adjusted with the consent of the Debtors, the Required Consenting First Lien Lenders, and the Required DIP Lenders if the total principal amount of the New ABL Facility (funded and unfunded commitments) is less than $85 million.

4.      "*ABL Roll Multiplier*" means a number equal to 0.7924~~3227~~40.

5.      "*ABL Roll Option*" has the meaning given to such term in Article III.B.3 of the Plan.

6.      "*ABL Roll Option Adjustment Amount*" means an amount equal to the aggregate principal amount of Allowed First Lien Revolving Claims that are rolled up into the New ABL Facility pursuant to (a) the ABL Roll Option and (b) the ABL Backstop Roll Option.

7.      "*Administrative Claim*" means a Claim against any of the Debtors arising on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) the Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code.

8. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

9. "*Agents*" means, collectively, the DIP Agent, the First Lien Agent, the Second Lien Agent, and any other administrative agent, collateral agent, or similar Entity under the DIP Facility Documents, the First Lien Credit Agreement, or the Second Lien Credit Agreement, including any successors thereto.

10. "*Allowed*" means, with respect to a Claim or Interest, any Claim or Interest (or portion thereof) against any Debtor that: (a) is deemed allowed under the Bankruptcy Code; (b) is allowed, compromised, settled, or otherwise resolved pursuant to the terms of the Plan, in any stipulation that is approved by a Final Order of the Bankruptcy Court, or pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; or (c) has been allowed by a Final Order of the Bankruptcy Court. For the avoidance of doubt, any Claim or Interest (or portion thereof), that has been disallowed pursuant to a Final Order shall not be an "Allowed" Claim. Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date.

11. "*Available Liquidity*" means, with respect to the Reorganized Debtors and the Foreign Guarantor Subsidiaries after the Effective Date, the sum of (a) the unrestricted balance sheet cash of the Reorganized Debtors and the Foreign Guarantor Subsidiaries; and (b) the aggregate amount available to be drawn under the New ABL Facility (taking into account any applicable restrictions on borrowing under the New ABL Facility).

12. "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies arising under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law, including fraudulent transfer laws.

13. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

14. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware presiding over the Chapter 11 Cases, or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of the Judicial Code, the United States District Court for the District of Delaware.

15. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

16. "*Business Day*" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or other day on which commercial banks in the State of Delaware or the State of New York are closed for business as a result of federal, state, or local holiday.

17. "*Carestream Health*" means Carestream Health, Inc. prior to the Effective Date.

18. "*Carestream Holdings*" means Carestream Health Holdings, Inc. prior to the Effective Date.

19. "*Cash*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

20. "*Causes of Action*" means any Claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured,

suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

21.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

22.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code.

23.     "*Claims Register*" means the official register of Claims maintained by the Solicitation Agent or the clerk of the Bankruptcy Court.

24.     "*Class*" means a class of Claims or Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

25.     "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

26.     "*Compensation and Benefits Programs*" means all employment and severance agreements and policies, and all employment, wages, compensation, and benefit plans and policies, workers' compensation programs, savings plans, retirement plans, deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit plans, incentive and retention plans, programs, and payments, life and accidental death and dismemberment insurance plans and programs of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and managers, in each case existing with the Debtors as of immediately prior to the Effective Date.

27.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

28.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

29.     "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code to consider Confirmation of the Plan and approval of the Disclosure Statement and Solicitation Materials, as such hearing(s) may be adjourned or continued from time to time.

30.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, and approving the Disclosure Statement and the Solicitation Materials, which order shall be in form and substance acceptable to the Debtors and the Required Consenting Stakeholders.

31.     "*Consenting Creditors*" has the meaning ascribed to such term in the Restructuring Support Agreement.

32.     "*Consenting Parties*" has the meaning ascribed to such term in the Restructuring Support Agreement.

33.     "*Consummation*" means the occurrence of the Effective Date.

34.     "*Crossover Group*" means that certain ad hoc group of Holders of First Lien Claims and Second Lien Term Loan Claims represented by the Crossover Group Advisors.

35.      "*Crossover Group Advisors*" means Akin Gump Strauss Hauer & Feld LLP, GLC Advisors & Co., Troutman Pepper Hamilton Sanders LLP, any other local counsel, and any other professionals and/or consultants for the Crossover Group, if any, as may be mutually agreed to by the Crossover Group and the Debtors.

36.      "*Cure*" means all amounts, including an amount of $0, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

37.      "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") covering any of the Debtors' current or former directors', managers', officers' and/or employees' liability and all agreements, documents, or instruments relating thereto.

38.      "*Debtors*" has the meaning set forth in the preamble.

39.      "*Debtor Release*" means the releases given on behalf of the Debtors and their Estates as set forth in Article VIII.C of the Plan.

40.      "*DIP Agent*" means the administrative agent and collateral agent under the DIP Facility.

41.      "*DIP Claims*" means any Claim against any Debtor derived from, based upon, or arising under the DIP Facility.

42.      "*DIP Exit Cash Recovery*" has the meaning given to such term in Article II.B of the Plan.

43.      "*DIP Equitization New Common Stock*" means a pool of New Common Stock comprised of 100% of the undiluted New Common Stock *less* (a) the aggregate amount of Rights Offering New Common Stock actually issued and distributed pursuant to the Plan; (b) the aggregate amount of DIP Rollover Premium New Common Stock; and (c) the aggregate amount of New Common Stock issued and distributed to Holders of Allowed Second Lien Term Loan Claims on account of such Claims pursuant to Article III.B.4(c)(i) of the Plan, in each case, subject to dilution on account of the Management Incentive Plan.

44.      "*DIP Equitization Recovery*" has the meaning given to such term in Article II.B of the Plan.

45.      "*DIP Facility*" means the superpriority senior secured debtor-in-possession credit facility provided for under the DIP Facility Documents.

46.      "*DIP Facility Documents*" means, collectively, the DIP Term Sheet and any other documents governing the DIP Facility, as such documents may be amended, supplemented, or otherwise modified from time to time in accordance with their terms.

47.      "*DIP Lenders*" means, collectively, each lender under the DIP Facility.

48.      "*DIP Loans*" means the loans under the DIP Facility.

49.      "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order.

50.      "*DIP Rights Offering Cash Recovery*" has the meaning given to such term in Article II.B of the Plan.

51.      "*DIP Rollover*" has the meaning given to such term in Article II.B of the Plan.

52.      "*DIP Rollover Premium*" has the meaning given to such term in Article II.B of the Plan.

53.     "*DIP Rollover Premium New Common Stock*" means any New Common Stock issued in respect of the DIP Rollover Premium.

54.     "*DIP Term Sheet*" means the term sheet attached to the Restructuring Support Agreement as Exhibit C-1 thereto, as such term sheet may be amended, supplemented, or otherwise modified from time to time in accordance with its terms and approved pursuant to the DIP Orders.

55.     "*Disbursing Agent*" means the Reorganized Debtors or, as applicable, the Entity or Entities selected by the Debtors or the Reorganized Debtors to make or facilitate distributions pursuant to the Plan.

56.     "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

57.      "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest (or portion thereof):  (a) that is not Allowed; (b) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

58.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

59.     "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under the Plan, which date shall be the Confirmation Date or such other date as agreed to by the Debtors and the Required Consenting Stakeholders.

60.     "*Effective Date*" means the date on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan and (b) the Plan is declared effective by the Debtors.

61.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

62.     "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

63.     "*Excess Cash Sweep Payment*" means a one-time prepayment in respect of the New Term Loan Facility in an aggregate amount equal to the lesser of (a) the positive difference, if any, between (i) Total Effective Date Available Liquidity and (ii) $100,000,000.00; and (b) the positive difference, if any, between (i) Available Liquidity as of March 31, 2023, and (ii) $100,000,000.00, which prepayment shall be provided for in the New Term Loan Credit Agreement.

64.     "*Exculpated Parties*" means collectively, and in each case in its capacity as such, the Debtors and each Related Party of the Debtors, the directors, managers, and officers of the Debtors who served in such capacity between the Petition Date and the Effective Date, and the Professionals retained by the Debtors in the Chapter 11 Cases; *provided* that Exculpated Parties shall not include non-Debtor Affiliates and such non-Debtor Affiliates' Related Parties.

65.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

66.     "*Existing Interests*" means any Interest in Carestream Holdings existing immediately prior to the occurrence of the Effective Date.

67.    "*Existing Letter of Credit*" means any letter of credit issued and outstanding under the First Lien Revolving Facility.

68.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

69.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

70.    "*Final DIP Order*" means the final order entered by the Bankruptcy Court approving the DIP Facility and authorizing the Debtors to, among other things, enter into and perform under the DIP Facility Documents and use cash collateral (as defined in section 363(a) of the Bankruptcy Code).

71.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing has been timely taken; or as to which, any appeal that has been taken or any petition for certiorari that has been or may be filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought, or the new trial, reargument, or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order will not preclude such order from being a Final Order.

72.    "*First Lien Agent*" means the administrative agent and collateral agent under the First Lien Credit Agreement, its successors, assigns, or any replacement agent appointed pursuant to the terms of the First Lien Credit Agreement.

73.    "*First Lien Cash Recovery*" has the meaning given to such term in Article III.B.3(c) of the Plan.

74.    "*First Lien Claims*" means any Claim against any Debtor derived from, based upon, or arising under the First Lien Credit Agreement.

75.    "*First Lien Credit Agreement*" means that certain Amended and Restated Credit Agreement (First Lien), by and among Carestream Health, Inc., as company, Carestream Health Holdings, Inc., as holdings, the guarantors thereunder, the lenders from time to time party thereto, and the administrative agent thereunder, dated as of June 7, 2013, as amended and restated, supplemented, or otherwise modified from time to time in accordance with its terms prior to the Petition Date.

76.    "*First Lien Lenders*" means, collectively, each lender under the First Lien Credit Agreement.

77.    "*First Lien Revolving Claims*" means any First Lien Claims on account of the First Lien Revolving Facility and any Hedge Claims.

78.    "*First Lien Revolving Facility*" means the revolving credit facility provided for under the First Lien Credit Agreement.

79.    "*Foreign Guarantor Subsidiaries*" means each non-Debtor direct or indirect subsidiary of Carestream Holdings that is organized or formed pursuant to the law of a jurisdiction outside of the United States and is an obligor or guarantor under the First Lien Credit Agreement or the Second Lien Credit Agreement as of the Petition Date, including each such non-Debtor subsidiary set forth on <u>Exhibit A</u> to the Restructuring Support Agreement as a Foreign Guarantor Subsidiary.

80.    "*General Unsecured Claim*" means any Unsecured Claim against any of the Debtors, other than: (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) any Second Lien Deficiency Claim; or (e) an Intercompany Claim.

81.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

82.    "*Hedge Claims*" means any Claim against any Debtor derived from, based upon, or arising under that certain ISDA Master Agreement, dated as of September 29, 2011, between JPMorgan Chase Bank, N.A. and Carestream Health, including any schedules and appendix thereto.

83.    "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor, as applicable.

84.    "*Impaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

85.    "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

86.    "*Intercompany Claim*" means any Claim against any Debtor held by a Debtor or an Affiliate of a Debtor (excluding the Sponsor).

87.    "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.

88.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interest, unit or share in any Debtor and any other rights, options, warrants, rights, restricted stock awards, performance share awards, performance share units, stock appreciation rights, phantom stock rights, redemption rights, repurchase rights, stock-settled restricted stock units, cash-settled restricted stock units, other securities, agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor or any other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor (whether or not arising under or in connection with any employment agreement, separation agreement, or employee incentive plan or program of a Debtor as of the Petition Date and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or similar security).

89.    "*Interim DIP Order*" means the interim order entered by the Bankruptcy Court approving the DIP Facility and authorizing the Debtors to, among other things, enter into and perform under the DIP Facility Documents and use cash collateral (as defined in section 363(a) of the Bankruptcy Code).

90.    "*Issuing Lender*" has the meaning given to such term in the First Lien Credit Agreement.

91.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

92.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

93.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

94.    "*Management Compensation Programs*" means, collectively, each base salary arrangement, annual bonus arrangement, supplemental bonus arrangement, long-term incentive plan or program, and severance arrangement described in the Management Compensation Term Sheet, including the Management Incentive Plan, but excluding any sale bonus agreements in effect prior to the Petition Date.

95.    "*Management Compensation Term Sheet*" means that certain term sheet attached to the Restructuring Term Sheet as Annex 3 thereto.

96.    "*Management Incentive Plan*" means the management incentive plan described in the Management Compensation Term Sheet (and defined therein as the "MIP"), which management incentive plan shall be consistent in all respects with the Management Compensation Term Sheet, the Restructuring Term Sheet, and the Restructuring Support Agreement.

97.    "*MIP New Common Stock*" means any New Common Stock issued pursuant to the Management Incentive Plan.

98.    "*New ABL Agent*" means the administrative agent and collateral agent under the New ABL Documents.

99.    "*New ABL Backstop Commitments*" means the respective backstop commitments of the New ABL Backstop Commitment Parties under the New ABL Backstop Commitment Letter with respect to the New ABL Commitments.

100.    "*New ABL Backstop Commitment Letter*" means that certain backstop commitment letter attached to the Restructuring Support Agreement as Exhibit E thereto, as amended, supplemented, or otherwise modified from time to time in accordance with its terms.

101.    "*New ABL Backstop Commitment Parties*" means, collectively, each Entity that has committed to backstop the New ABL Facility pursuant to, and in accordance with, the New ABL Backstop Commitment Letter.

102.    "*New ABL Commitments*" means each new money commitment under the New ABL Facility.

103.    "*New ABL Credit Agreement*" means the definitive credit agreement governing the New ABL Facility, which credit agreement shall be on terms and conditions consistent with the terms and conditions set forth in the New ABL Facility Term Sheet and otherwise acceptable to the Debtors, the New ABL Backstop Commitment Parties, the Required Consenting First Lien Lenders and the Required DIP Lenders.

104.    "*New ABL Documents*" means collectively, the New ABL Credit Agreement and all other agreements, documents, and instruments to be delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements and other security documents, in each case, on terms and conditions acceptable to the Debtors, the New ABL Backstop Commitment Parties, the Required Consenting First Lien Lenders, and the Required DIP Lenders.

105.    "*New ABL Facility*" means an $85 million first lien revolving credit facility to be provided to Reorganized Carestream on terms and conditions consistent with the terms and conditions set forth in the New ABL Facility Term Sheet and otherwise acceptable to the Debtors, the New ABL Backstop Commitment Parties, the Required Consenting First Lien Lenders, and the Required DIP Lenders; *provided, however*, that the total principal amount of the New ABL Facility may be decreased to $75 million with the consent of the Debtors, the Required Consenting First Lien Lenders, and the Required DIP Lenders.

106.    "*New ABL Facility Roll Draw*" means any amount drawn under the New ABL Facility on the Effective Date on account of any Allowed First Lien Revolving Claim that is rolled up into the New ABL Facility pursuant to the ABL Roll Option or the ABL Backstop Roll Option.

107.    "*New ABL Facility Term Sheet*" means that certain term sheet attached to the Restructuring Support Agreement as Exhibit E-1 thereto, as such term sheet may be amended, supplemented, or otherwise modified from time to time in accordance with its terms.

108.    "*New Board*" means the board of directors or the board of managers, as applicable, of Reorganized Holdings.  The identities of directors on the New Board as of the Effective Date shall be set forth in the

Plan Supplement, to the extent known at the time of filing of the Plan Supplement, but in any event prior to the Effective Date.

109.    "*New Common Stock*" means the common equity interests of Reorganized Holdings.

110.    "*New Debt Documents*" means, collectively, the New ABL Documents and the New Term Loan Documents.

111.    "*New Employment Agreements*" has the meaning given to such term in Article V.H.1 of the Plan.

112.    "*New Term Loan Agent*" means the administrative agent and collateral agent under the New Term Loan Documents.

113.    "*New Term Loan Credit Agreement*" means the definitive credit agreement governing the New Term Loan Facility, which credit agreement shall be on terms and conditions consistent with the terms and conditions set forth in the New Term Loan Facility Term Sheet and otherwise acceptable to the Debtors, the Required Consenting First Lien Lenders, and the Required DIP Lenders.

114.    "*New Term Loan Documents*" means, collectively, the New Term Loan Credit Agreement and all other agreements, documents, and instruments to be delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements and other security documents, in each case, on terms and conditions consistent with the terms set forth in the New Term Loan Facility Term Sheet and otherwise acceptable to the Debtors, the Required Consenting First Lien Lenders, and the Required DIP Lenders.

115.    "*New Term Loan Facility*" means a first lien term loan credit facility in an aggregate principal amount equal to the New Term Loan Facility Amount, which credit facility shall be provided to Reorganized Carestream on terms and conditions consistent with the terms and conditions set forth in the New Term Loan Facility Term Sheet and otherwise acceptable to the Debtors, the Required Consenting First Lien Lenders, and the Required DIP Lenders.

116.    "*New Term Loan Facility Amount*" means an amount equal to (a) the aggregate amount of Allowed First Lien Claims, *less* (b)(i) the ABL Roll Option Adjustment Amount and (ii) the aggregate amount of Cash that is distributed to Holders of Allowed First Lien Claims on account of such Claims pursuant to the First Lien Cash Recovery under Article III.B.3 of the Plan.

117.    "*New Term Loan Facility Term Sheet*" means the term sheet attached to the Restructuring Term Sheet as Annex 1 thereto, as such term sheet may be amended, supplemented, or otherwise modified from time to time in accordance with its terms.

118.    "*New Organizational Documents*" means the formation documents and governance documents for each of the Reorganized Debtors (including the New Stockholders Agreement), which documents shall be consistent with the Restructuring Support Agreement and otherwise acceptable to the Debtors and the Required DIP Lenders.

119.    "*New Stockholders Agreement*" means the definitive shareholders agreement or other applicable agreement (including all annexes, exhibits, and schedules thereto) governing the New Common Stock, which agreement shall be acceptable to the Debtors and the Required DIP Lenders.

120.    "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

121.    "*Other Secured Claim*" means any Secured Claim other than a DIP Claim, a First Lien Claim, or a Second Lien Term Loan Claim.

122.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

123.    "*Petition Date*" means the first date on which any of the Debtors commence a Chapter 11 Case.

124.    "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims or other eligible Entities in accordance with the Plan.

125.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed with the Bankruptcy Court, and any additional documents Filed as amendments to the Plan Supplement, including the following, as applicable: (a) certain of the New Organizational Documents; (b) the New Stockholders Agreement; (c) the New Term Loan Credit Agreement; (d) the New ABL Credit Agreement; (e) to the extent known, the identities of the members of the New Board; (f) the Rejected Executory Contracts and Unexpired Leases Schedule (if any); (g) the Schedule of Proposed Cure Amounts; (h) the Schedule of Retained Causes of Action; and (i) the Restructuring Steps Memorandum.  To the extent any document to be set forth in the Plan Supplement is an exhibit to the Disclosure Statement, the Plan Supplement may cross-refer to such exhibit.  The documents constituting the Plan Supplement shall be consistent with the terms of the Restructuring Support Agreement and the Restructuring Term Sheet, including any consent rights contained therein, as applicable.  The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement in accordance with this Plan and the Restructuring Support Agreement on or before the Effective Date.  The Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth herein in full; *provided* that in the event of a conflict between the Plan and the Plan Supplement, the Plan Supplement shall control in accordance with Article I.G.

126.    "*Prepetition Credit Agreements*" means the First Lien Credit Agreement and the Second Lien Credit Agreement.

127.    "*Prepetition Secured Parties*" means, collectively, (a) each Holder of a First Lien Claim; and (b) each Holder of Second Lien Term Loan Claim.

128.    127. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

129.    128. "*Pro Rata*" means (a) the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class; (b) in the case of a DIP Claim, the proportion that an Allowed DIP Claim bears to the aggregate amount of all Allowed DIP Claims; and (c) with respect to clause (x) of the ABL Roll Option, the proportion that an Allowed First Lien Revolving Claim that participates in the ABL Roll Option bears to the aggregate amount of all Allowed First Lien Revolving Claims that participate in the ABL Roll Option.

130.    129. "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or as of the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

131.    130. "*Professional Escrow Account*" means an account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

132.    131. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.C of the Plan.

133.    132. "*Professional Fee Claim*" means any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and

expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

134.    ~~133.~~ "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

135.    ~~134.~~ "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to a Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

136.    ~~135.~~ "*Rejected Executory Contracts and Unexpired Leases Schedule*" means, to the extent applicable, a schedule (including any amendments, supplements, or modifications thereto) of Executory Contracts and Unexpired Leases (if any) to be rejected by the Debtors pursuant to the Plan, which schedule (if any) shall be included in the Plan Supplement.

137.    ~~136.~~ "*Related Parties*" means, with respect to an Entity, collectively, (a) such Entity's current and former Affiliates and (b) such Entity's and such Entity's current and former Affiliates' directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, managers, fiduciaries, trustees, employees, agents (including any disbursing agent), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, each solely in their capacities as such, (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), and the respective heirs, executors, estates, servants and nominees of the foregoing.

138.    ~~137.~~ "*Released Parties*" means each of, and in each case in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting Parties; (d) the Agents; (e) the DIP Lenders; (f) the ~~Releasing~~Prepetition Secured Parties; (g) current and former Affiliates of each Entity in clause (a) through the following clause (h); and (h) each Related Party of each Entity in clause (a) through this clause (h); *provided*, *however*, that, notwithstanding the foregoing, any holder of a Claim or Interest that is not a Releasing Party shall not be a "Released Party."

139.    ~~138.~~ "*Releasing Parties*" means each of, and in each case in its capacity as such: (a) the ~~Debtors~~Consenting Parties; (b) the ~~Reorganized Debtors; (c) the Consenting Parties; (d) the Agents; (e)~~Agents; (c) the DIP Lenders; (~~f~~d) all holders of Claims; (~~g~~e) all Holders of Interests; (~~h~~f) to the maximum extent permitted by Law, each current and former Affiliate of each Entity in clause (a) through the following clause (~~i~~g); ~~and (i) to the maximum extent permitted by Law~~, solely to the extent the pertinent Entity can bind any such Affiliate to the terms of this Plan under applicable law; and (g) each Related Party of each Entity in clause (a) through this clause (~~i~~g), solely to the extent the pertinent Entity can bind any such Related Party to the terms of this Plan under applicable law; *provided*, *however*, that, notwithstanding the foregoing, an Entity shall not be a "Releasing Party" if such Entity (x) does not vote to, and is not deemed to, accept the Plan, and (y) timely Files on the docket of the Chapter 11 Cases an objection to the Third-Party Release that is not resolved before Confirmation or otherwise validly opts out of the Third-Party Release; and *provided*, *further*, that any such Entity shall be identified by name as a non-Releasing Party in the Confirmation Order.

140.    ~~139.~~ "*Reorganized Debtors*" means, collectively, the Debtors, as reorganized pursuant to and under the Plan, ~~on~~ and after the Effective Date, or any successor or assign thereto, by merger, consolidation, or otherwise, including any new entity established in connection with the implementation of the Restructuring Transactions.

141.    ~~140.~~ "*Reorganized Holdings*" means Carestream Holdings, or any successor or assign, by merger, consolidation, or otherwise, on or after the Effective Date.

142. 141. "*Reorganized Carestream*" means Carestream Health, or any successor or assign, by merger, consolidation, or otherwise, on or after the Effective Date.

143. 142. "*Required Consenting First Lien Lenders*" has the meaning given to such term in the Restructuring Support Agreement.

144. 143. "*Required Consenting Second Lien Lenders*" has the meaning given to such term in the Restructuring Support Agreement.

145. 144. "*Required Consenting Stakeholders*" has the meaning given to such term in the Restructuring Support Agreement.

146. 145. "*Required DIP Lenders*" has the meaning given to such term in the Restructuring Support Agreement.

147. 146. "*Restructuring Documents*" means the documents listed in section 3.01 of the Restructuring Support Agreement, in each case consistent with the Plan and the Restructuring Support Agreement (including any consent rights contained therein).

148. 147. "*Restructuring Expenses*" means, collectively, all of the Crossover Group's reasonable and documented fees, costs and expenses incurred through the Effective Date in connection with the Restructuring Transactions, including, without limitation, all reasonable and documented fees, costs and expenses of the Crossover Group Advisors, in each case, without any requirement for the filing of retention applications in the Chapter 11 Cases, to be paid on the Effective Date.

149. 148. "*Restructuring Steps Memorandum*" means the summary of transaction steps to complete the restructuring contemplated by the Plan, which shall be (a) included in the Plan Supplement; and (b) consistent with the Plan and the Restructuring Support Agreement (including any consent rights contained therein).

150. 149. "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, entered into and dated as of August 21, 2022, by and among the Debtors and the Consenting Parties, including all exhibits, schedules, and other attachments thereto, as such agreement may be further amended, modified, or supplemented from time to time, solely in accordance with its terms, which is attached as <u>Exhibit B</u> to the Disclosure Statement.

151. 150. "*Restructuring Term Sheet*" means that certain term sheet attached as <u>Exhibit B</u> to the Restructuring Support Agreement.

152. 151. "*Restructuring Transactions*" means any transaction and any actions as may be necessary or appropriate to effect a corporate restructuring of the Debtors' and the Reorganized Debtors' respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in the Plan and Restructuring Support Agreement, including the issuance of all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan, one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions, as described in Article IV.B of the Plan.

153. 152. "*Rights Offering*" means the offering of rights to Holders of Allowed Second Lien Term Loan Claims to purchase for cash their Pro Rata share of 80% of the New Common Stock at the Rights Offering Subscription Price, subject to dilution on account of the Management Incentive Plan, on the terms and subject to the conditions set forth in the Plan and the Rights Offering Procedures.

154. 153. "*Rights Offering Cash*" means the aggregate cash proceeds of the Rights Offering received by the Debtors.

155. 154. "*Rights Offering New Common Stock*" means the New Common Stock issued in connection with the Rights Offering.

156. 155. "*Rights Offering Participants*" means each Holder of an Allowed Second Lien Term Loan Claim that is an Accredited Investor (as defined in the Rights Offering Procedures).

157. 156. "*Rights Offering Procedures*" means the procedures for conducting the Rights Offering, which procedures shall be in form and substance acceptable to the Debtors and the Required Consenting Second Lien Lenders.

158. 157. "*Rights Offering Subscription Price*" means a price equal to $9.375 per share (or comparable unit) of New Common Stock.

159. 158. "*Rights Offering Subscription Rights*" means the subscription rights issued in connection with the Rights Offering, which collectively shall provide for the subscription for up to $75 million of New Common Stock, in the aggregate; and for the avoidance of doubt, no Holder of Second Lien Term Loan Claims shall be permitted to oversubscribe for any Rights Offering New Common Stock.

160. 159. "*Schedule of Proposed Cure Amounts*" means any schedule (including any amendments, supplements, or modifications thereto) of the Debtors' proposed Cure amounts (if any) with respect to each of the Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan.

161. 160. "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

162. 161. "*Scheduling Order*" means the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Approving Related Dates, Deadlines, Notices, and Procedures, (III) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (IV) Approving the Rights Offering Procedures and Related Dates, Deadlines, and Notices, and (V) Conditionally Waiving the Requirements that (A) the U.S. Trustee Convene a Meeting of Creditors and (B) the Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports* [Docket No. 66].

163. 162. "*Second Lien Agent*" means the administrative agent and collateral agent under the Second Lien Credit Agreement, its successors, assigns, or any replacement agent appointed pursuant to the terms of the Second Lien Credit Agreement.

164. 163. "*Second Lien Term Loan Claims*" means any Claim against any Debtor derived from, based upon, or arising under the Second Lien Credit Agreement and any fees, costs, and expenses that are reimbursable by any Debtor pursuant to the Second Lien Credit Agreement, including any Second Lien Deficiency Claims.

165. 164. "*Second Lien Credit Agreement*" means that certain Second Lien Credit Agreement, by and among Carestream Health, Inc., as company, Carestream Health Holdings, Inc., as holdings, the guarantors thereunder, the lenders from time to time party thereto, and the administrative agent thereunder, dated as of June 7, 2013, as amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date.

166. 165. "*Second Lien Deficiency Claims*" means any Second Lien Term Loan Claim that is not a Secured Claim.

167. 166. "*Section 510(b) Claims*" means any Claim subject to subordination pursuant to section 510(b) of the Bankruptcy Code.

168. 167. "*Secured Claim*" means a Claim that is:  (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to

the extent of the value of the creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

169.    168. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

170.    169. "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

171.    170. "*Solicitation Agent*" means Kurtzman Carson Consultants LLC, the notice, claims, and solicitation agent proposed to be retained by the Debtors in the Chapter 11 Cases.

172.    171. "*Solicitation Materials*" means, collectively, the solicitation materials with respect to the Plan.

173.    172. "*Specified DIP Claims*" means, collectively, any DIP Claims on account of any accrued, unpaid interest, fees, or expenses payable by the Debtors under the DIP Facility Documents.

174.    173. "*Sponsor*" has the meaning given to such term in the Restructuring Support Agreement.

175.    174. "*Sponsor Fee Claims*" means, collectively, any Claims against a Debtor held by the Sponsor on account of any management fee, operational fee, or comparable fee or charge.

176.    175. "*Sponsor General Unsecured Claims*" means, collectively, any General Unsecured Claims against a Debtor held by the Sponsor, including any Sponsor Fee Claims.

177.    176. "*Sponsor Management Arrangements*" means, collectively, any management agreement or arrangement between any of the Debtors and the Sponsor.

178.    177. "*Tranche A DIP Claim*" means any Claim against any Debtor derived from, based upon, or arising under the DIP Facility with respect to the Tranche A DIP Loans.

179.    178. "*Tranche A DIP Lenders*" means the DIP Lenders providing the Tranche A DIP Loans under the DIP Facility.

180.    179. "*Tranche A DIP Loans*" means the DIP Loans in the amount of up to $5 million to be provided by the Tranche A DIP Lenders under the DIP Facility.

181.    180. "*Tranche B DIP Claim*" means any Claim against any Debtor derived from, based upon, or arising under the DIP Facility with respect to the Tranche B DIP Loans.

182.    181. "*Tranche B DIP Lenders*" means the DIP Lenders providing the Tranche B DIP Loans under the DIP Facility.

183.    182. "*Tranche B DIP Loans*" means the DIP Loans in the amount of up to $75 million to be provided by the Tranche B DIP Lenders under the DIP Facility.

184.    183. "*Third-Party Release*" means the releases set forth in Article VIII.D of the Plan.

185.    184. "*Total Effective Date Available Liquidity*" means, with respect to the Reorganized Debtors and the Foreign Guarantor Subsidiaries, the sum of (a) the unrestricted balance sheet cash of the Reorganized Debtors as of the Effective Date, (b) the unrestricted balance sheet cash of the Foreign Guarantor Subsidiaries as of the Effective Date, and (c) the aggregate amount of all undrawn revolving commitments under the New ABL Facility as of the Effective Date (after giving effect to any exercise of the ABL Roll Option and taking into account any

applicable restrictions on borrowing under the New ABL Facility), in each case, after taking into account (x) any Cash distributions and other Cash payments to be made under the Plan on or about the Effective Date (including any First Lien Cash Recovery, any fees payable pursuant to the New Debt Documents, and the funding of the Professional Escrow Account), and (y) any amounts that may come due after the Effective Date on account of Allowed Professional Fee Claims, net of the aggregate amount funded into the Professional Escrow Account pursuant to Article II.C of the Plan.

186.    ~~185.~~ "*U.S. Trustee*" means the United States Trustee for the District of Delaware.

187.    ~~186.~~ "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a Holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check within 180 calendar days of receipt; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution within 180 calendar days of receipt; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution prior to the deadline included in such request for information; or (d) timely taken any other action necessary to facilitate such distribution.

188.    ~~187.~~ "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

189.    ~~188.~~ "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

190.    ~~189.~~ "*Unsecured Claim*" means any Claim that is not a Secured Claim.

191.    ~~190.~~ "*Voting Deadline*" means August 22, 2022, at 12:00 p.m. (prevailing Eastern Time).

192.    ~~191.~~ "*Voting Record Date*" means August 15, 2022.

193.    ~~192.~~ "*Voting Report*" means the report certifying the methodology for the tabulation of votes and result of voting on the Plan.

B.    *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; *provided* that nothing in this clause (2) shall affect any party's consent rights over any of the Restructuring Documents or any amendments thereto as provided for in the Restructuring Support Agreement; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in

the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (15) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (16) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtors, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

H.       *Consultation, Information, Notice, and Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of the parties to the Restructuring Support Agreement set forth in the Restructuring Support Agreement (including the exhibits thereto) with respect to the form and substance of this Plan, all exhibits to the Plan, and the Plan Supplement, and all other Restructuring Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the Restructuring Support Agreement shall not impair such rights and obligations.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.       *Administrative Claims.*

Except with respect to the Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of the Judicial Code, and except to the extent that a Holder of an Allowed Administrative Claim and the Debtors against which such Allowed Administrative Claim is asserted agree to less favorable treatment for such Holder, with the consent of the Required DIP Lenders, or such Holder has been paid by any Debtor on account of such Allowed Administrative Claim prior to the Effective Date, each Holder of an Allowed Administrative Claim will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, on the date of such allowance or as soon as reasonably practicable thereafter, but in any event no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

B.       *DIP Claims.*

All DIP Claims shall be deemed Allowed as of the Effective Date in an amount equal to (1) the principal amount outstanding under the DIP Facility on such date, (2) all interest accrued and unpaid thereon to the date of payment, and (3) all accrued and unpaid fees, expenses, and non-contingent indemnification obligations payable under the DIP Facility Documents and the DIP Orders.

Except to the extent that a Holder of an Allowed DIP Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, each such Holder shall receive the following on the Effective Date: (1) with respect to the portion of such Holder's Allowed DIP Claim that constitutes a Specified DIP Claim, such Holder shall receive cash in the amount of such Specified DIP Claim (the "DIP Exit Cash Recovery"); and (2) with respect to the remaining portion of such Holder's Allowed DIP

Claim, (a) if such Allowed DIP Claim is a Tranche A DIP Claim, such Holder shall receive Cash in the amount of such Allowed Tranche A DIP Claim; and (b) if such Allowed DIP Claim is a Tranche B DIP Claim, such Holder shall receive (i) its Pro Rata share of the Rights Offering Cash, if any (the "DIP Rights Offering Cash Recovery"); and (ii) its Pro Rata share of the DIP Equitization New Common Stock, subject to dilution on account of the Management Incentive Plan (the "DIP Equitization Recovery"). In connection with the DIP Equitization Recovery, each Tranche B DIP Lender shall convert (or be deemed to have converted) the applicable amount of such Holder's Allowed Tranche B DIP Claim (after deducting the DIP Exit Cash Recovery and the DIP Rights Offering Cash Recovery) into New Common Stock at the Rights Offering Subscription Price (such conversion, the "DIP Rollover"), in each case, subject to the occurrence of the Effective Date and satisfaction or waiver of the conditions to such DIP Rollover set forth in the DIP Facility Documents.

Additionally, in consideration for the Tranche B DIP Lenders' agreement to the DIP Rollover, each Tranche B DIP Lender shall receive, on the Effective Date, its Pro Rata share of 10% of the New Common Stock, subject to dilution on account of the Management Incentive Plan (the "DIP Rollover Premium").

On the Effective Date, the DIP Facility and all DIP Facility Documents shall be deemed cancelled, all Liens on property of the Debtors and the Reorganized Debtors arising out of or related to the DIP Facility shall automatically terminate, and all collateral subject to such Liens shall be automatically released, in each case without further action by the DIP Agent or the DIP Lenders and all guarantees of the Debtors and Reorganized Debtors arising out of or related to the DIP Claims shall be automatically discharged and released, in each case without further action by the DIP Agent or the DIP Lenders. The DIP Agent and the DIP Lenders shall take all actions to effectuate and confirm such termination, release, and discharge as reasonably requested by the Debtors or the Reorganized Debtors, as applicable, and the Debtors shall be permitted to file any applicable releases or terminations.

C.    *Professional Fee Claims.*

1.    Final Fee Applications and Payment of Professional Fee Claims.

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Escrow Account, and which Allowed amount shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization or reduction of any kind, including pursuant to section 502(d) of the Bankruptcy Code.

2.    Professional Escrow Account.

No later than the Effective Date, the Debtors shall establish and fund the Professional Escrow Account with Cash equal to the Professional Fee Amount. The Professional Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Escrow Account. When such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Escrow Account shall promptly be transferred to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date, and shall deliver such

estimate to the Debtors no later than five days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

    4.   Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court.

D.    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.    *Payment of Statutory Fees.*

All fees payable pursuant to ~~section 1930(a) of the Judicial Code, including fees payable to the U.S. Trustee and any interest thereon pursuant to~~ 28 U.S.C. § 1930, together with the statutory rate of interest set forth in 31 U.S.C. § 3717, to the extent applicable ("Quarterly Fees") ~~as determined by~~ prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Reorganized Debtors shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court, ~~shall be paid in full in Cash when due by each of the applicable~~ separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors and Reorganized Debtors ~~for each quarter (including any fraction thereof) until the applicable~~ shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until that particular Debtor's Chapter 11 Case ~~of such Reorganized Debtor~~ is converted to a case under chapter 7 of the Bankruptcy Code, dismissed, or closed, whichever occurs first. ~~Nothing in the Plan shall discharge or release any Quarterly Fees.~~ The U.S. Trustee shall not be required to file ~~a Proof of Claim or request for payment for Quarterly Fees. The Reorganized Debtors shall timely file all required monthly operating reports and post-confirmation quarterly reports in a form prescribed by the U.S. Trustee until~~ any Administrative Claim in the Chapter 11 Cases ~~are converted, dismissed, or closed, whichever occurs first~~ and shall not be treated as providing any release under the Plan.

F.    *Payment of Certain Fees and Expenses.*

The Debtors and Reorganized Debtors, as applicable, shall pay in Cash all reasonable and documented fees, costs, and expenses of the Crossover Group Advisors, the DIP Agent and its counsel, the DIP Lenders' advisors, and the Agents' counsel, in each case, in accordance with the terms and conditions of any applicable agreement with the Debtors, including the DIP Facility Documents, the Prepetition Credit Agreements, and the Restructuring Support Agreement, and, if any such fee or expense is unpaid as of the Effective Date, such fee or expense shall be paid on the Effective Date without application to or further approval of the Bankruptcy Court and without any reduction to the respective recoveries of the Holders of Allowed DIP Claims, Allowed First Lien Claims, or Allowed Second Lien Term Loan Claims provided for under the Plan. Without duplication of the foregoing, on the Effective Date, the Debtors shall also pay in Cash the reasonable and documented accrued fees, expenses, and costs of the First Lien Agent, the Second Lien Agent, and the Issuing Lender, including the reasonable and documented accrued fees,

expenses, and costs of its counsel, in each case, incurred through the Effective Date in connection with the Restructuring Transactions.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests.*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan constitutes a separate Plan proposed by each Debtor, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors (except for Class 8 Existing Interests, which shall only apply to Carestream Holdings). All of the potential Classes for the Debtors are set forth herein. Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets, and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | First Lien Claims | Impaired | Entitled to Vote |
| Class 4 | Second Lien Term Loan Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 6 | Intercompany Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 7 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 8 | Existing Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date (or, if payment is not then due, in accordance with such Claim's or Interest's terms in the ordinary course of business) or as soon as reasonably practicable thereafter.

1.  <u>Class 1 – Other Secured Claims</u>

    (a)  *Classification*:  Class 1 consists of all Other Secured Claims.

    (b)  *Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the applicable Debtor:

         (i)    payment in full in Cash of its Allowed Other Secured Claim;

         (ii)   the collateral securing its Allowed Other Secured Claim;

         (iii)  Reinstatement of its Allowed Other Secured Claim; or

         (iv)   such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (c)  *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.  <u>Class 2 – Other Priority Claims</u>

    (a)  *Classification*:  Class 2 consists of all Other Priority Claims.

    (b)  *Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code, which renders such Allowed Other Priority Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (c)  *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.  <u>Class 3 – First Lien Claims</u>

    (a)  *Classification*:  Class 3 consists of all First Lien Claims.

    (b)  *Allowed Amount*:  As of the Effective Date, the First Lien Claims shall be Allowed and deemed to be Allowed Claims in the amount of $585,201,786.00 of principal plus applicable interest, fees, costs, expenses, and premiums owed under the First Lien Credit Agreement through the Effective Date.

(c) *Treatment*:  Each Holder of an Allowed First Lien Claim shall receive, in full and final satisfaction of such Allowed First Lien Claim, (i) Cash in an amount equal to 3.00% of the principal amount of such Holder's Allowed First Lien Claim (the "First Lien Cash Recovery"); and (ii) with respect to any remaining Allowed First Lien Claim held by such Holder after giving effect to clause (i), its Pro Rata share of the New Term Loan Facility; *provided*, *however*, that (A) Holders of Allowed First Lien Revolving Claims may, with respect to their Allowed First Lien Revolving Claims, instead elect to, and commit to, each and all components of the following:  (x) roll up to an aggregate amount equal to the ABL Funded Rollover Cap of their Allowed First Lien Revolving Claims into the New ABL Facility on a Pro Rata basis and in an amount not to exceed a Holder's respective Allowed First Lien Revolving Claims, (y) with respect to any remaining Allowed First Lien Revolving Claims held by such electing Holders after giving effect to clause (x), receive the treatment specified in Article III.B.3(c)(i) and (ii) for such remaining Allowed First Lien Revolving Claims, and (z) provide New ABL Commitments in an amount equal to such Holder's respective Allowed First Lien Revolving Claims rolled pursuant to clause (x), multiplied by the ABL Roll Multiplier (collectively, the treatment in clauses (x), (y), and (z), the "ABL Roll Option"); and (B) the New ABL Backstop Commitment Parties that are Holders of Allowed First Lien Revolving Claims have agreed not to exercise the ABL Roll Option, and shall not exercise, their respective ABL Roll Options and, instead, shall roll their Allowed First Lien Revolving Claims into the New ABL Facility in an aggregate amount equal to the ABL Backstop Roll Option Funded Pool in the proportions set forth in, and subject to the terms and conditions of, the New ABL Backstop Commitment Letter (the treatment in clause (B), the "ABL Backstop Roll Option").

(d) *Voting*:  Class 3 is Impaired under the Plan.  Holders of Allowed First Lien Claims are entitled to vote to accept or reject the Plan.

4.  Class 4 – Second Lien Term Loan Claims

(a) *Classification*:  Class 4 consists of all Second Lien Term Loan Claims.

(b) *Allowed Amount*:  As of the Effective Date, the Second Lien Term Loan Claims shall be Allowed and deemed to be Allowed Claims in the amount of $448,235,000.00 of principal plus accrued and unpaid interest owed under the Second Lien Credit Agreement through the Petition Date.

(c) *Treatment*:  Each Holder of an Allowed Second Lien Term Loan Claim shall receive, in full and final satisfaction of such Allowed Second Lien Term Loan Claim, its Pro Rata share of (i) 10% of the New Common Stock, subject to dilution on account of the Management Incentive Plan; and (ii) the Rights Offering Subscription Rights; *provided*, *however*, that each Tranche B DIP Lender that is also a Holder of Allowed Second Lien Term Loan Claims has agreed not to exercise, and shall not exercise, its Rights Offering Subscription Rights, and at least a corresponding portion of such Tranche B DIP Lender's Allowed DIP Claims shall be converted into New Common Stock through the DIP Rollover.

(d) *Voting*:  Class 4 is Impaired under the Plan.  Holders of Allowed Second Lien Term Loan Claims are entitled to vote to accept or reject the Plan.

5.  Class 5 – General Unsecured Claims

(a) *Classification*:  Class 5 consists of all General Unsecured Claims.

(b)     *Treatment*:  Each Allowed General Unsecured Claim (other than any Sponsor General Unsecured Claim) shall, at the option of the applicable Debtor, be either (i) Reinstated or (ii) paid in full in Cash on the later of (x) the Effective Date and (y) the date on which such payment would otherwise be due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Unsecured Claim.  On the Effective Date, each Sponsor General Unsecured Claim shall be canceled, released, and extinguished, and will be of no further force or effect, without any distribution to the Holder of such Claim on account thereof, as agreed by the Sponsor pursuant to the Restructuring Support Agreement.

(c)     *Voting*:  Class 5 is Unimpaired under the Plan.  Holders of Allowed General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

6.   <u>Class 6 – Intercompany Claims</u>

(a)     *Classification*:  Class 6 consists of all Intercompany Claims.

(b)     *Treatment*:  Each Allowed Intercompany Claim shall be Reinstated unless otherwise agreed by the applicable Debtor and the Required DIP Lenders.

(c)     *Voting*:  Class 6 is Unimpaired under the Plan.  Holders of Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

7.   <u>Class 7 – Intercompany Interests</u>

(a)     *Classification*:  Class 7 consists of all Intercompany Interests.

(b)     *Treatment:*  On the Effective Date, Intercompany Interests shall be Reinstated unless otherwise agreed by the applicable Debtor and the Required DIP Lenders.

(c)     *Voting*:  Class 7 is Unimpaired under the Plan.  Holders of Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8.   <u>Class 8 – Existing Interests</u>

(a)     *Classification*:  Class 8 consists of all Existing Interests.

(b)     *Treatment*:  All Existing Interests shall be canceled, released, and extinguished and will be of no further force or effect, without any distribution to Holders of Existing Interests.

(c)     *Voting*:  Class 8 is Impaired under the Plan.  Holders of Existing Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Existing Interests are not entitled to vote to accept or reject the Plan.

9.   <u>Class 9 – Section 510(b) Claims</u>

(a)     *Classification*:  Class 9 consists of all Section 510(b) Claims.

   (b)  *Allowance*:  Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any, such Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.

   (c)  *Treatment*:  On the Effective Date, all Allowed Section 510(b) Claims, if any, shall be canceled, released, and extinguished, and will be of no further force or effect, without any distribution to Holders of Section 510(b) Claims.

   (d)  *Voting*:  Class 9 is Impaired under the Plan.  Holders (if any) of Allowed Section 510(b) Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders (if any) are not entitled to vote to accept or reject the Plan.

C.  *Special Provision Governing Unimpaired Claims.*

   Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, until an Allowed prepetition Unimpaired Claim has been (1) paid in full in accordance with applicable law, or on terms agreed to between the Holder of such Claim and the Reorganized Debtors, or in accordance with the terms and conditions of the particular transaction giving rise to such Claim; or (2) otherwise satisfied or disposed of as determined by a court of competent jurisdiction (the occurrence of (1) or (2), an "Unimpaired Claim Resolution"):  (a) the provisions of Article VIII.A – VIII.F of the Plan shall not apply or take effect with respect to such Claim, (b) such Claim shall not be deemed settled, satisfied, resolved, released, discharged, barred, or enjoined, (c) the property of each of the Debtors' Estates that vests in the applicable Reorganized Debtor(s) pursuant to the Plan shall not be free and clear of such Claim, and (d) any Liens of securing such Claim shall not be deemed released (subclauses (a) through (d), collectively, the "Unimpaired Claim Carve Out").  Upon the occurrence of an Unimpaired Claim Resolution with respect to an Allowed prepetition Unimpaired Claim, the Unimpaired Claim Carve Out shall cease to apply to such Claim.  Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including, all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

   Holders of Unimpaired Claims shall not be subject to any claims resolution process in Bankruptcy Court in connection with their Claims, and shall retain all their rights under applicable non-bankruptcy law to pursue their Claims against the Debtors or Reorganized Debtors or other Entity in any forum with jurisdiction over the parties, except as otherwise provided pursuant to Article XII of this Plan. The Debtors and Reorganized Debtors shall retain all defenses, counterclaims, rights to setoff, and rights to recoupment as to Unimpaired Claims.  If the Debtors or the Reorganized Debtors dispute any Unimpaired Claim, such dispute shall be determined, resolved or adjudicated in the manner as if the Chapter 11 Cases had not been commenced, except with respect to Rejection Damages Claims, which shall be determined, resolved or adjudicated as set forth in Article V.B of the Plan.

D.  *Elimination of Vacant Classes.*

   Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.  *Voting Record Date and Voting Deadline.*

   **The Voting Record Date is August 15, 2022**.  The Voting Record Date is the date on which it will be determined which Holders of Claims in the voting Classes are entitled to vote to accept or reject the Plan and whether Claims have been properly assigned or transferred under Bankruptcy Rule 3001(e) such that an assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Claim.

   **The Voting Deadline is August 22, 2022, at 12:00 p.m. (prevailing Eastern Time)**.  In order to be counted as votes to accept or reject the Plan, all ballots must be:  (a) electronically submitted utilizing the online balloting portal maintained by the Solicitation Agent on or before the Voting Deadline, as applicable; or (b) properly executed,

completed, and delivered (either by using the envelope provided, by first class mail, overnight courier, personal delivery, or via electronic mail in the limited scenario where a nominee submits a master ballot including votes for its underlying beneficial holders) so that the ballots are *actually received* by the Solicitation Agent on or before the Voting Deadline.

F.    *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions (if any) on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the holders of New Common Stock, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.  For the avoidance of doubt, unless otherwise set forth in the Restructuring Steps Memorandum, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

G.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article XI hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.    *Subordinated Claims and Interests.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims and Interests.*

~~Except as otherwise~~To the extent provided ~~herein, pursuant to section 1123 of~~for by the Bankruptcy Code and ~~Bankruptcy Rule 9019, and~~ in consideration for the classification, distributions, releases, and other benefits provided under the Plan, ~~upon~~on the Effective Date, the provisions of the Plan shall constitute a ~~good faith~~good-faith compromise and settlement of all Claims ~~and~~, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan~~, including (1) any challenge to the amount, validity, perfection, enforceability, priority or extent of the DIP Claims, First Lien Claims, and Second Lien Term Loan Claims and (2) any claim to avoid, subordinate, or disallow any DIP Claims, First Lien Claims, and Second Lien Term Loan Claims, whether under any provision of chapter 5 of~~. To the extent provided for by the Bankruptcy Code,

on any equitable theory (including equitable subordination, equitable disallowance, or unjust enrichment) or otherwise. The~~the~~ Plan shall be deemed a motion to approve the ~~good faith~~good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies ~~pursuant to Bankruptcy Rule 9019~~, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement ~~under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019~~, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, and their Estates~~, and Holders of Claims against and Interests in the Debtors~~. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.    *Restructuring Transactions.*

On or before the Effective Date, the applicable Debtors or the Reorganized Debtors shall enter into and shall take any actions as may be necessary or appropriate to effect the Restructuring Transactions, as set forth in the Restructuring Steps Memorandum or as otherwise reasonably acceptable to the Required DIP Lenders, which may include:  (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan, the Restructuring Support Agreement, and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree, including the documents constituting the Plan Supplement; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Restructuring Support Agreement, and having other terms for which the applicable Entities may agree; (3) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable law; (4) the consummation of the Rights Offering pursuant to the Rights Offering Procedures, including the distribution of the Rights Offering Subscription Rights to the Rights Offering Participants and the issuance of Rights Offering New Common Stock in connection therewith; (5) the execution and delivery of the New Organizational Documents (including the New Stockholders Agreement); and the issuance, distribution, reservation, or dilution, as applicable, of the New Common Stock, as set forth herein; (6) the execution and delivery of the New ABL Credit Agreement and the New Term Loan Credit Agreement; and (7) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan.  The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

C.    *Sources of Consideration for Plan Distributions.*

The Debtors and the Reorganized Debtors, as applicable, shall fund distributions under the Plan with: (1) Cash on hand, including Cash from operations and the Rights Offering Cash, as applicable; (2) the New Common Stock; (3) the New Term Loan Facility; and (4) the New ABL Facility.

1.    Rights Offering.

The Debtors shall, subject to the treatment described in Article III.B.4(c) of the Plan, raise up to an aggregate of $75 million of equity capital through the Rights Offering, pursuant to which eligible Holders of Allowed Second Lien Term Loan Claims may elect to purchase for Cash their Pro Rata share of 80% of the New Common Stock at the Rights Offering Subscription Price, subject to the DIP Rollover and dilution on account of the Management Incentive Plan.  On and as of the Effective Date, the Reorganized Debtors shall consummate the Rights Offering in accordance with the Rights Offering Procedures and the Plan.  To the extent applicable, Confirmation of the Plan shall be deemed (a) approval of the Rights Offering; and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to consummate the Rights Offering, in each case, without any further notice to or order of the Bankruptcy Court.  Upon exercise of the Rights Offering Subscription Rights by the Rights Offering Participants pursuant to the Rights Offerings Procedures, Reorganized Holdings shall be authorized to issue any issuable Rights Offering New Common Stock pursuant to such exercise.

For the avoidance of doubt, the issuance and distribution of any Rights Offering New Common Stock purchased by the Rights Offering Participants in the Rights Offering shall be solely on account of the new money provided by such Rights Offering Participants in the Rights Offering and not on account of any Allowed Second Lien Term Loan Claims held by such Rights Offering Participants. The Rights Offering Cash, if any, shall be applied to payment of DIP Claims in accordance with Article II.B.

2.  Issuance of New Common Stock.

On the Effective Date, Reorganized Holdings shall issue the New Common Stock, including the Rights Offering New Common Stock, the New Common Stock issued pursuant to the DIP Rollover, and the DIP Rollover Premium New Common Stock, pursuant to the Plan. The issuance of the New Common Stock, including equity awards reserved for the Management Incentive Plan, by the Reorganized Debtors shall be authorized without the need for any further corporate action or without any further action by the Debtors or Reorganized Debtors or by Holders of any Claims or Interests, as applicable.

All of the shares (or comparable units) of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of New Common Stock, including the Rights Offering New Common Stock, the New Common Stock issued pursuant to the DIP Rollover, and the DIP Rollover Premium New Common Stock, shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Reorganized Debtor(s). Any Entity's acceptance of New Common Stock shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms. As a condition to receiving the New Common Stock, Holders of Allowed Second Lien Term Loan Claims (including Rights Offering Participants) and any DIP Lender entitled to a distribution of New Common Stock pursuant to the DIP Rollover and the DIP Rollover Premium will be required to execute and deliver the New Stockholders Agreement; *provided*, *however*, that, notwithstanding any failure to execute the New Stockholders Agreement, any Entity that is entitled to and accepts a distribution of New Common Stock under the Plan, by accepting such distribution, will be deemed to have accepted and consented to the terms of the New Stockholders Agreement (solely in such Entity's capacity as a stockholder of Reorganized Holdings), without the need for execution by any party thereto. The New Stockholders Agreement will be effective as of the Effective Date and, as of such date, will be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Common Stock will be bound thereby in all respects. The New Common Stock will not be registered under the Securities Act or listed on any exchange as of the Effective Date and will not meet the eligibility requirements of the Depository Trust Company.

3.  New Term Loan Facility.

On the Effective Date, the Reorganized Debtors shall enter into the New Term Loan Facility pursuant to the New Term Loan Documents. To the extent applicable, Confirmation of the Plan shall be deemed (a) approval of the New Term Loan Facility and the New Term Loan Documents; and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to consummate the New Term Loan Facility, including executing and delivering the New Term Loan Documents, in each case, without any further notice to or order of the Bankruptcy Court.

The New Term Loan Credit Agreement shall (a) provide for the Excess Cash Sweep Payment; and (b) provide that the Excess Cash Sweep Payment, if any, shall be due and payable by the Reorganized Debtors on April 10, 2023, in each case, in accordance with the terms and conditions of the New Term Loan Credit Agreement.

As of the Effective Date, all of the Liens and security interests to be granted by the Debtors in accordance with the New Term Loan Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the applicable collateral specified in the New Term Loan Documents; and (c) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. To the extent

provided in the New Term Loan Documents, the New Term Loan Agent is authorized to file with the appropriate authorities mortgages, financing statements and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests. The priorities of such Liens and security interests shall be as set forth in the New Term Loan Documents. The New Term Loan Agent shall be authorized to make all filings and recordings necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. The guarantees granted under the New Term Loan Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.

4. New ABL Facility.

On the Effective Date, the Reorganized Debtors shall enter into the New ABL Facility pursuant to the New ABL Documents. To the extent applicable, Confirmation of the Plan shall be deemed (a) approval of the New ABL Facility and the New ABL Documents; and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to consummate the New ABL Facility, including executing and delivering the New ABL Documents, in each case, without any further notice to or order of the Bankruptcy Court.

All Existing Letters of Credit outstanding immediately prior to the Effective Date shall, on the Effective Date, either be returned to the applicable Issuing Lender or cash collateralized as set forth herein. Any New ABL Facility Roll Draw, if repaid on or after the Effective Date, may be re-borrowed under the New ABL Facility in accordance with the terms thereof.

As of the Effective Date, all of the Liens and security interests to be granted by the Debtors in accordance with the New ABL Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the applicable collateral specified in the New ABL Documents; and (c) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. To the extent provided in the New ABL Documents, the New ABL Agent is authorized to file with the appropriate authorities mortgages, financing statements and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests. The priorities of such Liens and security interests shall be as set forth in the New ABL Documents. The New ABL Agent shall be authorized to make all filings and recordings necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. The guarantees granted under the New ABL Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.

D.    *Corporate Existence.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited

liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, in each case, consistent with the Restructuring Support Agreement and the consent rights therein (which are incorporated herein pursuant to Article I.H), and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).  After the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  On or after the Effective Date, one or more of the Reorganized Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.      *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Confirmation Order, the Plan, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  For the avoidance of doubt, no Reorganized Debtor (including any Reorganized Debtor ultimately being wound-down and liquidated in connection with the Restructuring Transactions) shall be treated as being liable on any Claim that is discharged pursuant to the Plan.

F.      *Cancellation of Existing Securities and Agreements.*

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims or Interests shall be canceled, and the obligations of the Debtors or the Reorganized Debtors and any non-Debtor Affiliates (including the Foreign Guarantor Subsidiaries) thereunder or in any way related thereto shall be discharged and deemed satisfied in full, and the Agents shall be released from all duties thereunder; *provided*, *however*, that notwithstanding any provision of the Plan to the contrary, including, without limitation, Article VIII of the Plan, Confirmation, or the occurrence of the Effective Date, any credit document or agreement, including, without limitation, the First Lien Credit Agreement and the Second Lien Credit Agreement, that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of (a) allowing Holders of Allowed Claims to receive distributions under the Plan; (b) allowing and preserving the rights of the Agents to make distributions pursuant to the Plan; (c) permitting the Agents to enforce any obligation (if any) owed to such Agents under the Plan; (d) preserving the Agents' respective rights to compensation, participations and indemnification as against any money or property distributable to the Holders of Claims, including permitting an Agents' right to maintain, enforce, and exercise their charging liens, if any, against such distribution; (e) preserving all rights, including rights of enforcement, of the Agents and the Issuing Lender against any person other than the Debtors and their Affiliates, including with respect to indemnification, participations or contribution from the Holders of First Lien Claims and Second Lien Term Loan Claims, pursuant and subject to the terms of the First Lien Credit Agreement and the Second Lien Credit Agreement, as in effect on the Effective Date, (f) permitting the Agents and the Issuing Lender to enforce any obligation (if any) owed to the Agents and the Issuing Lender, respectively, under the Plan; (g) permitting the Agents and the Issuing Lender to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court; and (h) permitting the Agents to perform any functions that are necessary to effectuate the foregoing; *provided*, *further*, *however*, that (1) the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable, except as expressly provided for in the Plan; and (2) except as otherwise provided in the Plan, the terms and provisions of the Plan shall not modify any existing contract or agreement that would in any way be inconsistent with distributions under the Plan.  The Agents and the Issuing Lender shall be discharged and shall have no further obligation or liability except as provided in the Plan and Confirmation Order, and after the performance by the Agents and the Issuing Lender and their representatives and

professionals of any obligations and duties required under or related to the Plan or Confirmation Order, the Agents and the Issuing Lender shall be relieved of and released from any obligations and duties arising thereunder.

G.    *Corporate Action.*

Subject to the Restructuring Support Agreement, on or before the Effective Date, as applicable, all actions contemplated under the Plan (including the Restructuring Steps Memorandum and the other documents contained in the Plan Supplement) shall be deemed authorized and approved by the Bankruptcy Court in all respects without any further corporate or equity holder action, including, as applicable: (1) the adoption or assumption, as applicable, of the Compensation and Benefits Programs; (2) the selection of the directors and officers for the Reorganized Debtors, including the appointment of the New Board; (3) the authorization, issuance and distribution of the New Term Loan Facility, the New ABL Facility, the New Common Stock and the execution, delivery, and filing of any documents pertaining thereto, as applicable; (4) the implementation of the Restructuring Transactions; (5) the entry into the New Term Loan Documents and New ABL Documents; (6) the consummation of the Rights Offering; (7) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (8) the adoption of the New Organizational Documents (including the New Stockholders Agreement); (9) the assumption, assumption and assignment, or rejection (to the extent applicable), as applicable, of Executory Contracts and Unexpired Leases; and (10) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Debtor, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, members, directors, or officers of the Debtors or the Reorganized Debtors, as applicable.  On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Common Stock, the New Organizational Documents (including the New Stockholders Agreement), the New ABL Documents, the New Term Loan Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.G shall be effective notwithstanding any requirements under nonbankruptcy law.

H.    *New Organizational Documents.*

On or immediately prior to the Effective Date, the New Organizational Documents (including the New Stockholders Agreement) shall be automatically adopted by the applicable Reorganized Debtors. To the extent required under the Plan or applicable non-bankruptcy law, each of the Reorganized Debtors will file its New Organizational Documents with the applicable authorities in its respective jurisdiction of organization if and to the extent required in accordance with the applicable laws of such jurisdiction.  The New Organizational Documents will, among other things, (a) authorize the issuance of the New Common Stock and (b) prohibit the issuance of non-voting equity Securities, solely to the extent required under section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, each Reorganized Debtor may amend and restate its certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of the New Organizational Documents.

I.    *New Stockholders Agreement.*

From and after the Effective Date, all holders of New Common Stock shall be subject to the terms and conditions of the New Stockholders Agreement.

J.    *Indemnification Obligations.*

All indemnification provisions currently in place consistent with applicable law (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) as of the Petition Date for the

current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall, to the fullest extent permitted by applicable law (including being subject to the limitations of the Delaware General Corporation Law, including the limitations contained therein on a corporation's ability to indemnify officers and directors), be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date.

K.      *Directors and Officers of the Reorganized Debtors.*

As of the Effective Date, the term of the current members of the board of directors of ~~the Debtors~~Carestream Holdings and Carestream Health shall expire, such current directors shall be deemed to have resigned, and all of the directors for the initial term of the New Board shall be appointed. The New Board will initially consist of the directors to be identified in the Plan Supplement or otherwise disclosed prior to the Effective Date. To the extent known, the identity of the members of the New Board will be disclosed in the Plan Supplement or prior to the Confirmation Hearing, consistent with section 1129(a)(5) of the Bankruptcy Code. In subsequent terms, the directors shall be selected in accordance with the New Organizational Documents. Each director and officer of the Reorganized Debtors shall serve from and after the Effective Date pursuant to the terms of the applicable New Organizational Documents and other constituent documents.

L.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors, and their respective officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the New ABL Facility and New  Term Loan Facility entered into, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

M.      *Existing Letter of Credit Cash Collateralization.*

On the Effective Date, all undrawn Existing Letters of Credit and all obligations related thereto shall either be returned to the applicable Issuing Lender or cash collateralized on terms reasonably satisfactory to the Issuing Lender, and the obligation to either return the undrawn Existing Letters of Credit or cash collateralize the undrawn Existing Letters of Credit shall be on terms reasonably satisfactory to the Issuing Lender.

N.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors, including the New Common Stock, (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for the Reorganized Debtors' obligations under and in connection with the New ABL Facility and the New Term Loan Facility; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over

any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

O.      *Director and Officer Liability Insurance.*

Notwithstanding anything in the Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise adversely affect the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

P.      *Management Compensation Programs.*

On or after the Effective Date, the Reorganized Debtors shall adopt and implement the Management Compensation Programs, including the Management Incentive Plan, in accordance with the terms of the Management Compensation Term Sheet, the Restructuring Term Sheet, and the Restructuring Support Agreement.

Q.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII hereof.** The Reorganized Debtors may settle any such Cause of Action without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute between the Reorganized Debtors and the Entity against whom the Reorganized Debtors are asserting the Cause of Action regarding the inclusion of any Cause of Action on the Schedule of Retained Causes of Action that remains unresolved for thirty days, such objection shall be resolved by the Bankruptcy Court. Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion,

estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation (to the extent applicable) of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in the Plan, including Article VIII hereof.  The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

R.      *Release of Avoidance Actions.*

On the Effective Date, the Debtors, on behalf of themselves and their Estates, shall release any and all Avoidance Actions, and the Debtors, the Reorganized Debtors, and any of their successors or assigns, and any Entity acting on behalf of the Debtors or the Reorganized Debtors shall be deemed to have waived the right to pursue any and all Avoidance Actions, except for Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors.

S.      *Termination of Sponsor Management Arrangements.*

The Sponsor Management Arrangements shall not constitute or be deemed to constitute Executory Contracts. On the Effective Date, all Sponsor Management Arrangements shall be automatically terminated without the need for any further action by, payment to, or notice to any Person or Entity.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided in Article V.H.1 and elsewhere herein, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected (to the extent applicable) will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that are:  (1) identified on the Rejected Executory Contracts and Unexpired Leases Schedule (if any); (2) previously expired or terminated pursuant to their own terms; (3) have been previously assumed or rejected (to the extent applicable) by the Debtors pursuant to a Final Order; (4) are the subject of a motion to reject that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, and related Cure amounts with respect thereto, or rejections (to the extent applicable) of the Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Proposed Cure Amounts or the Rejected Executory Contracts and Unexpired Leases Schedule (if any), pursuant to sections 365(a) and 1123 of the Bankruptcy Code.    Except as otherwise specifically set forth herein, assumptions or rejections (to the extent applicable) of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to

approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contracts and Unexpired Leases Schedule (if any) or Schedule of Proposed Cure Amounts at any time up to forty-five days after the Effective Date. The Debtors or the Reorganized Debtors, as applicable, shall file with the Bankruptcy Court and serve on the applicable counterparty notice regarding any change to the Rejected Executory Contracts and Unexpired Leases Schedule (if any) or the Schedule of Proposed Cure Amounts, as applicable, and the counterparty shall have fourteen days from service of such notice to file an objection with the Bankruptcy Court.

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease, such requirement shall be satisfied if the Debtors make an election to assume or reject such Executory Contract or Unexpired Lease prior to the deadline set forth by the Bankruptcy Code or the Bankruptcy Rules, as applicable, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

If certain, but not all, of a contract counterparty's Executory Contracts or Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts or Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, to the extent applicable, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, including pursuant to the Plan or the Confirmation Order, must be Filed with the Bankruptcy Court within thirty days after the later of (1) the date of ~~entry~~service of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or**

**Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.**

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall, in accordance with the Schedule of Proposed Cure Amounts, pay all Cure costs (if any) relating to Executory Contracts and Unexpired Leases that are being assumed under the Plan in the ordinary course of business. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure costs that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed on or before fourteen days after the Filing of the Schedule of Proposed Cure Amounts or fourteen days after notice of a change to the Schedule of Proposed Cure Amounts. Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Reorganized Debtor, without the need for any objection by the Debtors or Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure costs shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the applicable Cure costs; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure costs despite the failure of the relevant counterparty to file such request for payment of such Cure costs. The Reorganized Debtors also may settle any Cure costs without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before the Confirmation Hearing. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Confirmation Hearing or as otherwise scheduled for hearing by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure costs, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of any Cure costs shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtors and Reorganized Debtors, as applicable, reserve the right at any time to move to reject any Executory Contract or Unexpired Lease based upon the existence of any such unresolved dispute. If the Bankruptcy Court determines that the Allowed Cure cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Schedule of Proposed Cure Amounts, the Debtors shall have the right to add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date subject to the applicable counterparty's right to object to such rejection.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

To the extent applicable, rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any

continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases (if any).

E.       *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

F.       *Reservation of Rights.*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection (to the extent applicable), the Debtors or the Reorganized Debtors, as applicable, shall have forty-five days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

G.       *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

H.       *Employee Compensation and Benefits.*

1.       Compensation and Benefits Programs.

Except as otherwise set forth herein, on or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall (a) assume all employment agreements or letters, indemnification agreements, severance agreements, or other agreements entered into with current and former officers and other employees; and (b) enter into new agreements with the officers and other employees referenced in the Management Compensation Term Sheet on terms and conditions consistent with those set forth in the Management Compensation Term Sheet (such agreements, the "New Employment Agreements"). Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

Subject to the provisions of the Plan ~~and the Debtors' entry into the New Employment Agreements~~, all Compensation and Benefits Programs shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for:

(a)      all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Programs that provide for rights to acquire Existing Interests in any of the Debtors, which shall not constitute or be deemed to constitute Executory Contracts and shall be <u>deemed</u> terminated on ~~or prior to~~ the Effective Date;

(b)      any sale bonus agreements, which shall not constitute or be deemed to constitute Executory Contracts and shall be <u>deemed</u> terminated on ~~or prior to~~ the Effective Date:

(c)      Compensation and Benefits Programs that have been rejected pursuant to an order of a Bankruptcy Court; and

(d) Compensation and Benefits Programs that, as of the entry of the Confirmation Order, have been specifically waived by the beneficiaries of any employee benefit plan or contract.

A counterparty to a Compensation and Benefits Program assumed pursuant to the Plan shall have the same rights under such Compensation and Benefits Program as such counterparty had thereunder immediately prior to such assumption (unless otherwise agreed by such counterparty and the applicable Reorganized Debtor(s)); *provided, however*, that any assumption of Compensation and Benefits Programs pursuant to the Plan or any of the Restructuring Transactions shall not trigger or be deemed to trigger any change of control, immediate vesting, termination, or similar provisions therein.

2.    <u>Workers' Compensation Programs</u>.

As of the Effective Date, except as set forth in the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under:  (a) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (b) the Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance.  All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that nothing in the Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs, and plans; *provided further* that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable non-bankruptcy law.

I.    *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or Reorganized Debtor in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the Holder of the applicable Allowed Claim on the first Distribution Date, the Reorganized Debtors shall make initial distributions under the Plan on account of Claims Allowed on or before the Effective Date, subject to the Reorganized Debtors' right to object to Claims; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of the Plan, and (3) Allowed General Unsecured Claims shall be paid in accordance with Article III.B.5 of the Plan.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

B.    *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

All Plan Distributions to any Disbursing Agent on behalf of the Holders of Claims listed on the Claims Register shall be deemed completed by the Debtors when received by such Disbursing Agent. The Plan Distributions shall be made to any such Holders at the direction of the applicable Disbursing Agent.

C.    *Rights and Powers of Disbursing Agent.*

1.    Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.    Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim is transferred twenty or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Delivery of Distributions in General.

Except as otherwise provided herein, distributions payable to Holders of Allowed Claims shall be made by the Disbursing Agent to such Holder at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

3.    Minimum Distributions.

~~No Cash payment of less than $50 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.~~ No fractional shares of New Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows:  (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Common Stock to be distributed to Holders of Allowed Claims hereunder shall be adjusted as necessary to account for the foregoing rounding.

4.    Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current

address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary) and, to the extent such unclaimed distribution comprises New Common Stock, such New Common Stock shall be canceled. Upon such revesting, the Claim of the Holder or its successors with respect to such property shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary. The Disbursing Agent shall adjust the number of shares of New Common Stock outstanding as of the date of such cancelation to ensure that the distributions of New Common Stock contemplated under the Plan are given full force and effect.

5.    Surrender of Canceled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been canceled in accordance with Article IV.F hereof shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument shall be canceled solely with respect to the Debtors and the Foreign Guarantor Subsidiaries, and such cancelation shall not alter the obligations or rights of any non-Debtor third parties (other than the Foreign Guarantor Subsidiaries) in respect of one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

E.    *Manner of Payment.*

1.    Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated by the Plan or the Plan Supplement, all distributions of the New Common Stock to the Holders of the applicable Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the Debtors or Reorganized Debtors, as applicable.

2.    All distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor or Reorganized Debtor.

3.    At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.    *Indefeasible Distributions.*

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback or turnover provisions.

G.    *Securities Law Matters.*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Stock, including the New Common Stock issued on account of the DIP Equitization Recovery and the DIP Rollover Premium New Common Stock, but excluding the Rights Offering New Common Stock and the MIP New Common Stock, in each case, after the Petition Date, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act or any similar federal, state, or local law in reliance on section 1145 of the Bankruptcy Code or, only to the extent such exemption under Section 1145 of the Bankruptcy Code is not available, any other available exemption from registration under the Securities Act. Pursuant to section 1145 of the Bankruptcy Code, such New Common Stock (other than the Rights Offering New Common Stock and the MIP New Common Stock) will be freely tradable in the U.S. without registration under the Securities Act by the recipients thereof, subject to the

provisions of (1) section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments, (2) any other applicable regulatory approvals, and (3) any restrictions in the Reorganized Debtors' New Organizational Documents (including the New Stockholders Agreement). The offering, issuance and distribution (if applicable) of any Securities before the Petition Date and any Securities issuable pursuant to the Rights Offering and the Management Incentive Plan will be issued pursuant to section 4(a)(2) of the Securities Act. Recipients of the New Common Stock are advised to consult with their own legal advisors as to the availability of any exemption from registration under the Securities Act and any applicable Blue Sky Laws.

Any Securities distributed pursuant to section 4(a)(2) under the Securities Act will be considered "restricted securities" as defined by Rule 144 of the Securities Act and may not be resold under the Securities Act or applicable state securities laws absent an effective registration statement, or pursuant to an applicable exemption from registration, under the Securities Act and applicable state securities laws and subject to any restrictions in the New Organizational Documents and the New Stockholders Agreement.

Notwithstanding anything to the contrary in the Plan, no Entity shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Stock, including the Rights Offering New Common Stock, the New Common Stock issued on account of the DIP Rollover, the DIP Rollover Premium New Common Stock, and any MIP New Common Stock, are exempt from the registration requirements of section 5 of the Securities Act.

Recipients of the New Common Stock, including the Rights Offering New Common Stock, the New Common Stock issued on account of the DIP Rollover, the DIP Rollover Premium New Common Stock, and any MIP New Common Stock, are advised to consult with their own legal advisors as to the availability of any exemption from registration under the Securities Act and any applicable Blue Sky Laws.

H.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Debtors, Reorganized Debtors, Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate (subject to reasonable consultation with the Required Consenting Stakeholders). The Debtors and Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

I.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

J.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period

from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

K.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

L.      *Setoffs and Recoupment.*

Except as expressly provided in this Plan, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all Claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable Holder.  In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XIII.F hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

M.      *Claims Paid or Payable by Third Parties.*

1.      Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within fourteen days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a

waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Disputed Claims Process.*

There is no requirement to file a Proof of Claim (or move the Bankruptcy Court for allowance) to have a Claim Allowed for the purposes of the Plan, except as provided in Article V.B of the Plan.  On and after the Effective Date, except as otherwise provided in this Plan, all Allowed Claims shall be satisfied in the ordinary course of business of the Reorganized Debtors.  The Debtors (with the consent of the Required DIP Lenders) and the Reorganized Debtors, as applicable, shall have the exclusive authority to (1) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed and (2) file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan.  If the Debtors or Reorganized Debtors dispute any Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced; *provided* that the Debtors (in consultation with the Required DIP Lenders) or the Reorganized Debtors may elect to object to any Claim (other than Claims expressly Allowed by this Plan) and to have the validity or amount of any Claim adjudicated by the Bankruptcy Court; *provided, further*, that Holders of Claims may elect to resolve the validity or amount of any Claim in the Bankruptcy Court.  If a Holder makes such an election, the Bankruptcy Court shall apply the law that would have governed the dispute if the Chapter 11 Cases had not been filed.  All Proofs of Claim Filed in the Chapter 11 Cases shall be considered objected to and Disputed without further action by the Debtors.  **Except as otherwise provided herein, all Proofs of Claim Filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

B.      *Allowance of Claims.*

After the Effective Date, except as otherwise expressly set forth herein, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.  The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.

C.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority:  (1) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; *provided* that the U.S. Trustee shall also have the authority to object to Claims or Interests after the Effective Date.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.Q of the Plan.

Notwithstanding the foregoing, the Debtors and Reorganized Debtors shall be entitled to dispute and/or otherwise object to any General Unsecured Claim in accordance with applicable nonbankruptcy law.  If the Debtors, or Reorganized Debtors dispute any General Unsecured Claim, such dispute may be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced.  In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Claim, any and all claims or

defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such General Unsecured Claim are preserved as if the Chapter 11 Cases had not been commenced, provided that, for the avoidance of doubt, the Allowed amount of such Claims shall be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code to the extent applicable.

D.      *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

E.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.  The Debtors shall provide any Holder of such a Claim or Interest with fourteen days' notice prior to the Claim or Interest being adjusted or expunged from the Claims Register as the result of a Claim or Interest being paid, satisfied, amended or superseded.

F.      *Disallowance of Claims or Interests.*

Except as otherwise expressly set forth herein, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (1) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

G.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

H.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan.  On or as soon as reasonably practicable after the next Distribution Date after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Disbursing Agent shall provide

to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Discharge of Claims and Termination of Interests.*

~~Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Restructuring Documents, the Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than the Reinstated Claims) and Interests (other than the Intercompany Interests that are Reinstated) subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan.~~

_Upon entry of the Confirmation Order, and except as otherwise provided in the Plan, the Debtors shall be discharged pursuant to section 1141(d) of the Bankruptcy Code to the fullest extent permitted thereunder._

B.    **Release of Liens.**

**Except as otherwise provided in the New Debt Documents, the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created or entered into pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor or Foreign Guarantor Subsidiary (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder**

(or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, the New Term Loan Agent, or the New ABL Agent that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

*C.*     *Releases by the Debtors.*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity derivatively, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to or in any manner arising from in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the New ABL Facility, the New Term Loan Facility, the New Common Stock, the Rights Offering, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the New ABL Facility, the New Term Loan Facility, the New Common Stock, the Rights Offering, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1 claims or liabilities arising from any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence each solely to the extent as determined by a Final Order of a court of competent jurisdiction; (2) any obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, any Restructuring Document, or any post-Effective Date transaction contemplated by the Restructuring Transactions (including under the New ABL Facility and the New Term Loan Facility), or any document, instrument, or agreement (including those set forth in the Plan Supplement and the New ABL Facility and the New Term Loan Facility) executed to implement the Plan or the Restructuring Transactions; (23) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (34) any matters retained by the Debtors and the Reorganized Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

D.    *Releases by the Releasing Parties.*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each ~~Debtor, Reorganized Debtor, and~~ Released Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, ~~the Reorganized Debtors,~~ or the Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in-~~or~~ out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the New ABL Facility, the New Term Loan Facility, the New Common Stock, the Rights Offering, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the New ABL Facility, the New Term Loan Facility, the New Common Stock, the Rights Offering, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release: (1) claims or liabilities arising from any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence each solely to the extent as determined by a Final Order of a court of competent jurisdiction; (2) any obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, the Restructuring Documents, or any post-Effective Date transaction contemplated by the Restructuring Transactions (including under the New ABL Facility and New Term Loan Facility), or any document, instrument, or agreement (including those set forth in the Plan Supplement and the New ABL Facility and New Term Loan Facility) executed to implement the Plan or the Restructuring Transactions; or (~~2~~3) the rights of any Holder of Allowed Claims to receive distributions under the Plan.

~~Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.~~

E.    *Exculpation.*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability for, and each Exculpated Party shall be ~~released and~~ exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the DIP Facility, the New ABL Facility, the New Term Loan Facility, the New Common Stock, the Rights Offering, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the New ABL Facility, the New Term Loan Facility, the New Common Stock, the Rights Offering, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud. ~~The~~

~~Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.~~ Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions (including under the New ABL Facility and New Term Loan Facility), or any document, instrument, or agreement (including those set forth in the Plan Supplement and the New ABL Facility and New Term Loan Facility) executed to implement the Plan.

F.    *Injunction.*

Effective as of the Effective Date, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Actions that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Actions; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Actions; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Actions; (4) asserting any right of setoff, __or__ subrogation, ~~or recoupment~~ of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Actions unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date~~, and notwithstanding an indication of a claim or interest or otherwise~~ __or has filed a Proof of Claim or proof of Interest indicating__ that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Actions released, settled or subject to exculpation pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions (including under the New ABL Facility and New Term Loan Facility), or any document, instrument, or agreement (including those set forth in the Plan Supplement and the New ABL Facility and New Term Loan Facility) executed to implement the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  ~~Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F.~~

G.    *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

*H.    Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

*I.    Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

# ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

*A.    Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.  the Restructuring Support Agreement shall not have been terminated and shall be in full force and effect;

2.  the Bankruptcy Court shall have entered the DIP Orders, and the Final DIP Order shall be in full force and effect;

3.  the Bankruptcy Court shall have entered the Confirmation Order, in form and substance consistent with the Restructuring Support Agreement, which shall be a Final Order;

4.  each Restructuring Document shall have been executed (or deemed executed) or Filed, as applicable, in form and substance consistent with the Restructuring Support Agreement and the Plan, and shall not have been modified in a manner inconsistent therewith, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness of the Restructuring Documents shall have been satisfied or duly waived in writing in accordance with the terms of the applicable Restructuring Document;

5.  all actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected and executed (or deemed executed);

6.  the DIP Rollover shall have been consummated in accordance with its terms;

7.  the Rights Offering shall have been consummated in accordance with its terms;

8.  the New Common Stock shall have been issued (including the Rights Offering New Common Stock and the New Common Stock to be issued on account of the DIP Rollover and the DIP Rollover Premium New Common Stock);

9.  the New Term Loan Documents shall have been duly executed and delivered by all of the Entities that are parties thereto (*provided* that Holders of Allowed First Lien Claims shall be deemed to be parties to the New Term Loan Credit Agreement without the requirement to deliver signature pages thereto), and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness of the New Term Loan Facility shall have been satisfied or duly waived in writing in

accordance with the terms of the Restructuring Support Agreement and the closing of the New Term Loan Facility shall have occurred;

10. the New ABL Documents shall have been duly executed and delivered by all of the Entities that are parties thereto (provided that Holders of Allowed First Lien Revolving Claims electing the ABL Roll Option shall be deemed to be parties to the New ABL Credit Agreement without the requirement to deliver signature pages thereto) and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness of the New ABL Facility shall have been satisfied or duly waived in writing in accordance with the terms of the New ABL Backstop Commitment Letter and the closing of the New ABL Facility shall have occurred;

11. all undrawn Existing Letters of Credit shall either be returned to the applicable Issuing Lender or cash collateralized on terms reasonably satisfactory to the Issuing Lender, and the obligation to either return the undrawn Existing Letters of Credit or cash collateralize the undrawn Existing Letters of Credit on terms reasonably satisfactory to the Issuing Lender, cannot be waived absent the consent of the applicable Issuing Lender;

12. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the Restructuring Transactions;

13. all fees and expenses of retained professionals that require the Bankruptcy Court's approval shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in the Professional Escrow Account pending the Bankruptcy Court's approval of such fees and expenses; and

14. all fees, expenses, and other amounts payable to the Consenting Creditors pursuant to the Restructuring Support Agreement, including, without limitation, the Restructuring Expenses, shall have been paid in full.

B.     *Waiver of Conditions.*

Any one or more of the conditions to Consummation set forth in this Article IX may be waived by the Debtors with the prior written consent (e-mail from counsel being sufficient) of the Required Consenting Stakeholders without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.     *Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan, the Disclosure Statement, or the Restructuring Support Agreement shall:  (1) constitute a waiver or release of any Claims by the Debtors, or any Holders of Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims against or Interests in the Debtors, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

D.     *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

# ARTICLE X.
## EFFECT OF CONFIRMATION OF THE PLAN

Upon entry of the Confirmation Order, the Bankruptcy Court shall be deemed to have made and issued on the Confirmation Date the following findings of fact and conclusions of law as though made after due deliberation and

upon the record at the Confirmation Hearing. Upon entry of the Confirmation Order, any and all findings of fact in the Plan shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law in the Plan shall constitute conclusions of law even if they are stated as findings of fact.

A.    *Jurisdiction and Venue.*

On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code. Venue in the District of Delaware was proper as of the Petition Date and continues to be proper. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    *Voting Report.*

Prior to the Confirmation Hearing, the Solicitation Agent filed the Voting Report. All procedures used to distribute Solicitation Materials to the applicable Holders of Claims and to tabulate the ballots were fair and conducted in accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, Laws, and regulations. Pursuant to sections 1124 and 1126 of the Bankruptcy Code, at least one Impaired Class entitled to vote on the Plan has voted to accept the Plan.

C.    *Judicial Notice.*

The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of the Bankruptcy Court and/or its duly appointed agent, including all pleadings and other documents Filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases (including the Confirmation Hearing). Resolutions of any objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference. All entries on the docket of the Chapter 11 Cases shall constitute the record before the Bankruptcy Court for purposes of the Confirmation Hearing.

D.    *Transmittal and Mailing of Materials; Notice.*

Due, adequate, and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Hearing, and the release and exculpation provisions set forth in Article VIII of the Plan, along with all deadlines for voting on or objecting to the Plan, in compliance with Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b) and the Scheduling Order, has been given to (1) all known Holders of Claims and Interests, (2) parties that requested notice in accordance with Bankruptcy Rule 2002, (3) all parties to Unexpired Leases and Executory Contracts, and (4) all taxing authorities listed in the Claims Register. Such transmittal and service were appropriate, adequate, and sufficient. Adequate and sufficient notice of the Confirmation Hearing and other dates, deadlines, and hearings described in the Scheduling Order was given in compliance with the Bankruptcy Rules and such order, and no other or further notice is or shall be required.

E.    *Solicitation.*

Votes for acceptance and rejection of the Plan were solicited in good faith and complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Scheduling Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, Laws, and regulations. The Debtors and the Released Parties solicited acceptance of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and they participated in good faith, and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, or purchase of New Common Stock and any debt securities that were offered or sold under the Plan and, pursuant to section 1125(e) of the Bankruptcy Code, and no Released Party is or shall be liable on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance of a chapter 11 plan or the offer, issuance, sale, or purchase of such debt securities.

*F.*      *Burden of Proof.*

The Debtors, as proponents of the Plan, have satisfied their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.  The Debtors have satisfied the elements of section 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

*G.*      *Bankruptcy Rule 3016(a) Compliance.*

The Plan is dated and identifies the proponents thereof, thereby satisfying Bankruptcy Rule 3016(a).

*H.*      *Compliance with the Requirements of Section 1129 of the Bankruptcy Code.*

The Plan complies with all requirements of section 1129 of the Bankruptcy Code as follows:

1.      Section 1129(a)(1)–Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.

The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1121, 1122, 1123, and 1125 of the Bankruptcy Code.

(a)      Standing.

Each of the Debtors has standing to file a plan and the Debtors, therefore, have satisfied section 1121 of the Bankruptcy Code.

(b)      Proper Classification.

Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan designates Classes of Claims and Interests, other than DIP Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are not required to be classified.  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such Class.

(c)      Specification of Unimpaired Classes.

Pursuant to section 1123(a)(2) of the Bankruptcy Code, Article III of the Plan specifies all Classes of Claims and Interests that are not Impaired.

(d)      Specification of Treatment of Impaired Classes.

Pursuant to section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies the treatment of all Classes of Claims and Interests that are Impaired.

(e)      No Discrimination.

Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to less favorable treatment with respect to such Claim or Interest, as applicable.

(f)      Plan Implementation.

Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate and proper means for the Plan's implementation.  Immediately upon the Effective Date, sufficient Cash and other consideration provided under the Plan will be available to make all payments required to be made on the Effective Date pursuant to the terms of the

Plan. Moreover, Article IV and various other provisions of the Plan specifically provide adequate means for the Plan's implementation.

> (g)    Voting Power of Equity Securities; Selection of Officer, Director, or Trustee under the Plan.

The New Organizational Documents comply with sections 1123(a)(6) and 1123(a)(7) of the Bankruptcy Code.

> (h)    Impairment/Unimpairment of Classes of Claims and Equity Interests.

Pursuant to section 1123(b)(1) of the Bankruptcy Code: (i) Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims), and Class 7 (Intercompany Interests) are Unimpaired under the Plan; and (ii) Class 3 (First Lien Claims), Class 4 (Second Lien Term Loan Claims), Class 8 (Existing Interests), and Class 9 (Section 510(b) Claims) are Impaired under the Plan.

> (i)    Assumption and Rejection of Executory Contracts and Unexpired Leases.

In accordance with section 1123(b)(2) of the Bankruptcy Code, pursuant to Article V of the Plan, on the Effective Date, each Executory Contract and Unexpired Lease shall be deemed assumed except as provided in Article V.A. The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.

The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject (to the extent applicable) each of their Executory Contracts and Unexpired Leases under the terms of the Plan. Each pre- or post-Confirmation assumption, assumption and assignment, or rejection (to the extent applicable) of an Executory Contract or Unexpired Lease pursuant to Article V of the Plan will be legal, valid, and binding upon the applicable Debtor and all other parties to such Executory Contract or Unexpired Lease, as applicable, all to the same extent as if such assumption, assumption and assignment, or rejection (to the extent applicable) had been effectuated pursuant to an appropriate order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code. Each of the Executory Contracts and Unexpired Leases to be assumed, assumed and assigned, or rejected (to the extent applicable) is deemed to be an Executory Contract or an Unexpired Lease, as applicable.

> (j)    Settlement of Claims and Causes of Action.

All of the settlements and compromises pursuant to and in connection with the Plan or incorporated by reference into the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

Pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code and in consideration for the distributions and other benefits provided under the Plan, any and all compromise and settlement provisions of the Plan constitute good-faith compromises, are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.

Specifically, the settlements and compromises pursuant to and in connection with the Plan are substantively fair based on the following factors, as applicable: (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation and risk and difficulty of collecting on the judgment; (c) the proportion of creditors and parties in interest that support the settlement; (d) the competency of counsel reviewing the settlement; (e) the nature and breadth of releases to be obtained by officers and directors; and (f) the extent to which the settlement is the product of arm's-length bargaining.

> (k)    Cure of Defaults.

Article V.C of the Plan provides for the satisfaction of default claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code. The Cure costs noticed to counterparties to Executory Contracts and Unexpired Leases represent the amount, if any, the Debtors propose to pay in full and complete satisfaction of such default claims. Any disputed Cure amounts will be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law. As such, the Plan provides that the Debtors will Cure, or provide adequate assurance that the Debtors will promptly Cure, defaults with Executory Contracts and Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

        (l)      Other Appropriate Provisions.

The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (i) distributions to Holders of Claims and Interests, (ii) objections to Claims, (iii) procedures for resolving Disputed, contingent, and unliquidated Claims, (iv) Cure amounts, procedures governing Cure disputes, and (v) indemnification obligations.

      2.        Section 1129(a)(2)–Compliance of Plan Proponents with Applicable Provisions of the Bankruptcy Code.

The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019. In particular, the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code. Furthermore, the solicitation of acceptances or rejections of the Plan was (i) in compliance with all applicable laws, rules, and regulations governing the adequacy of disclosure in connection with such solicitation and (ii) solicited after disclosure to Holders of Claims or Interests of adequate information as defined in section 1125(a) of the Bankruptcy Code. Accordingly, the Debtors and their respective directors, officers, employees, agents, affiliates, and Professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

      3.        Section 1129(a)(3)–Proposal of Plan in Good Faith.

The Debtors have proposed the Plan in good faith and not by any means forbidden by Law based on the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize.

      4.        Section 1129(a)(4)–Bankruptcy Court Approval of Certain Payments as Reasonable.

Pursuant to section 1129(a)(4) of the Bankruptcy Code, the payments to be made for services or for costs in connection with the Chapter 11 Cases or the Plan are approved. The fees and expenses incurred by Professionals retained by the Debtors shall be payable according to the orders approving such Professionals' retentions, other applicable Bankruptcy Court orders, or as otherwise provided in the Plan.

      5.        Section 1129(a)(5)–Disclosure of Identity of Proposed Management, Compensation of Insiders, and Consistency of Management Proposals with the Interests of Creditors and Public Policy.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, information concerning the individuals proposed to serve on the New Board and as management of Reorganized Holdings, and each such individual's compensation upon Consummation of the Plan, has been fully disclosed in the Plan Supplement to the extent available, and the appointment to, or continuance in, such office of such person is consistent with the interests of Holders of Claims and Interests and with public policy.

6.      <u>Section 1129(a)(6)–Approval of Rate Changes.</u>

Section 1129(a)(6) of the Bankruptcy Code is not applicable because the Plan does not provide for rate changes by any of the Debtors.

7.      <u>Section 1129(a)(7)–Best Interests of Creditors and Interest Holders.</u>

The liquidation analysis included in the Disclosure Statement, and the other evidence related thereto that was proffered or adduced at or prior to, or in affidavits or declarations in connection with, the Confirmation Hearing, is reasonable.  The methodology used and assumptions made in such liquidation analysis, as supplemented by the evidence proffered or adduced at or prior to, or in affidavits or declarations Filed in connection with, the Confirmation Hearing, are reasonable.  With respect to each Impaired Class, each Holder of an Allowed Claim or Allowed Interest in such Class has accepted the Plan or will receive under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

8.      <u>Section 1129(a)(8)–Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class.</u>

Certain Classes of Claims and Interests are Unimpaired and are deemed conclusively to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  In addition, at least one Impaired Class that was entitled to vote has voted to accept the Plan.  Because the Plan provides that the certain Classes of Claims and Interests will be Impaired and because no distributions shall be made to Holders in such Classes, such Holders are deemed conclusively to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

9.      <u>Section 1129(a)(9)–Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.</u>

The treatment of DIP Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims under Article II of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

10.     <u>Section 1129(a)(10)–Acceptance by at Least One Impaired Class.</u>

At least one Impaired Class has voted to accept the Plan.  Accordingly, section 1129(a)(10) of the Bankruptcy Code is satisfied.

11.     <u>Section 1129(a)(11)–Feasibility of the Plan</u>.

The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  Based upon the evidence proffered or adduced at, or prior to, or in affidavits or declarations Filed in connection with, the Confirmation Hearing, the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, except as such liquidation is proposed in the Plan.  Furthermore, the Debtors will have adequate assets to satisfy their respective obligations under the Plan.

12.     <u>Section 1129(a)(12)–Payment of Bankruptcy Fees.</u>

Article II.E of the Plan provides for the payment of all fees payable under section 1930(a) of the Judicial Code in accordance with section 1129(a)(12) of the Bankruptcy Code.

13.     <u>Section 1129(a)(13)–Retiree Benefits.</u>

The Plan provides for the treatment of all retiree benefits in accordance with section 1129(a)(13) of the Bankruptcy Code.

14.     Section 1129(a)(14)–Domestic Support Obligations.

The Debtors are not required by a judicial or administrative order, or by statute, to pay any domestic support obligations, and therefore, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

15.     Section 1129(a)(15)–The Debtors Are Not Individuals.

The Debtors are not individuals, and therefore, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

16.     Section 1129(a)(16)–No Applicable Nonbankruptcy Law Regarding Transfers.

Each of the Debtors that is a corporation is a moneyed, business, or commercial corporation or trust, and therefore, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

17.     Section 1129(b)–Confirmation of Plan Over Rejection of Impaired Classes.

The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Classes presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code or that have actually rejected the Plan (if any) because all similarly situated Claims and Interests will receive substantially similar treatment. The Plan also does not discriminate unfairly with respect to classification or treatment of the Holders of Impaired Claims. The treatment of the Holders of Impaired Claims is "fair and equitable" pursuant to 1129(b). There are no classes junior to the deemed (or actual) rejecting classes of claims or interests that will receive any distribution under the Plan. The Plan, therefore, subject to Article III.G of the Plan, satisfies the requirements of section 1129(b) of the Bankruptcy Code.

18.     Section 1129(c)–Confirmation of Only One Plan With Respect to the Debtors.

The Plan is the only plan that has been Filed in these Chapter 11 Cases with respect to the Debtors. Accordingly, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

19.     Section 1129(d)–Principal Purpose Not Avoidance of Taxes.

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

20.     Section 1129(e)–Small Business Case.

Section 1129(e) is inapplicable because these Chapter 11 Cases do not qualify as small business cases.

I.      *Securities Under the Plan.*

Pursuant to the Plan, and without further corporate or other action, the New Common Stock and any debt issued or assumed by the Reorganized Debtors will be issued, entered into, or assumed, as applicable, on the Effective Date subject to the terms of the Plan.

J.      *Releases and Discharges.*

The releases and discharges of Claims and Causes of Action described in the Plan, including releases by the Debtors and by Holders of Claims and Interests, constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are made in exchange for consideration and are in the best interest of Holders of Claims and Interests, are fair, equitable, reasonable, and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan. Each of the discharge, release, indemnification, and exculpation provisions set forth in the Plan: (1) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and

1334(d); (2) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (3) is an integral element of the transactions incorporated into the Plan; (4) confers material benefit on, and is in the best interests of, the Debtors, their Estates, and their creditors; (5) is important to the overall objectives of the Plan to finally resolve all Claims and Interests among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; (6) is consistent with sections 105, 1123, 1129, and all other applicable provisions of the Bankruptcy Code; (7) is given and made after due notice and opportunity for hearing; and (8), without limiting the foregoing, with respect to the releases and injunctions in Article VIII of the Plan, are (a) essential elements of the Restructuring Transactions and Plan, terms and conditions without which the Consenting Parties would not have entered into the Restructuring Support Agreement and (b) narrowly tailored.  Further, the injunction set forth in Article VIII.F is an essential component of the Plan, the product of long-term negotiations, and achieved by the exchange of good and valuable consideration in the Chapter 11 Cases.

K.      *Release and Retention of Causes of Action.*

It is in the best interests of Holders of Claims and Interests that the provisions in Article VIII of the Plan be approved.

L.      *Approval of Restructuring Support Agreement and Other Restructuring Documents and Agreements.*

All documents and agreements necessary to implement the Plan and the Restructuring Transactions, including the Restructuring Support Agreement, are essential elements of the Plan, are necessary to consummate the Plan and the Restructuring Transactions, and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's length, are fair and reasonable, and are hereby reaffirmed and approved, and, subject to the occurrence of the Effective Date and execution and delivery in accordance with their respective terms, shall be in full force and effect and valid, binding, and enforceable in accordance with their respective terms, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, or other action under applicable law, regulation, or rule.

M.      *Confirmation Hearing Exhibits.*

All of the exhibits presented at the Confirmation Hearing have been properly received into evidence and are a part of the record before the Bankruptcy Court.

N.      *Objections to Confirmation of the Plan.*

Any and all objections to Confirmation have been withdrawn, settled, overruled, or otherwise resolved.

O.      *Retention of Jurisdiction.*

The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

P.      *Plan Supplement.*

The Debtors Filed the Plan Supplement.  All of the documents contained in the Plan Supplement comply with the terms of the Plan, and the filing and notice of such documents was adequate, proper and in accordance with the Bankruptcy Code and the Bankruptcy Rules.

# ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in this Plan and subject to the consent rights set forth in the Restructuring Support Agreement (which are incorporated herein pursuant to Article I.H), the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

To the extent permitted by the Restructuring Support Agreement and subject to the consent rights therein (which are incorporated herein pursuant to Article I.H), the Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain, and including the Allowance or disallowance, of all or any portion of any Claim or Interest or Class of Claims or Interests), assumption or rejection (to the extent applicable) of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

# ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.  allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.  decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.  resolve any matters related to:   (a) the assumption, assumption and assignment, or rejection (to the extent applicable) of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected (to the extent applicable) or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.  ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5.  adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.  adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.  enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan or the Disclosure Statement;

8.  enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.M hereof;

13. enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement, including the Restructuring Support Agreement;

15. enter an order concluding or closing the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date; and

22. enforce all orders previously entered by the Bankruptcy Court; and.

23. hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XII to the contrary, the New Organizational Documents and the New Stockholders Agreement and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

# ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims against or Interests in the Debtors (irrespective of whether such Holders have, or are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

B.    *Additional Documents.*

Subject to and in accordance with the Restructuring Support Agreement, on or before the Effective Date, (1) the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement and (2) the Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims against the Debtors receiving distributions pursuant to the Plan, and all other parties in interest, shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Statutory Committee and Cessation of Fee and Expense Payment*

On the Confirmation Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members or advisors to any statutory committee after the Confirmation Date.

D.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity; *provided* that nothing in this Article XIII.E modifies section 524(e) of the Bankruptcy Code.

F.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtors | Counsel to the Debtors |
| --- | --- |
| Carestream Health, Inc.<br>150 Verona Street<br>Rochester, New York 14608<br>Attention:  Julie Lewis | Kirkland & Ellis LLP<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attention:  Patrick J. Nash, Jr., P.C.<br>Tricia Schwallier Collins<br>Yusuf U. Salloum<br>(patrick.nash@kirkland.com)<br>(tricia.schwallier@kirkland.com)<br>(yusuf.salloum@kirkland.com)<br>and<br><br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention: Nicole L. Greenblatt, P.C.<br>Rachael M. Bentley<br>(nicole.greenblatt@kirkland.com)<br>(rachael.bentley@kirkland.com)<br><br>and<br><br>Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19801<br>Attention:  Laura Davis Jones<br>Timothy P. Cairns<br>Edward Corma |

|  | (ljones@pszjlaw.com)<br>(tcairns@pszjlaw.com)<br>(ecorma@pszjlaw.com) |
|---|---|
| **Counsel to the Crossover Group** ||
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, New York 10036<br>Attention:  Philip Dublin; Naomi Moss; Iain Wood<br>E-mail address:  pdublin@akingump.com; nmoss@akingump.com; iwood@akingump.com ||
| **United States Trustee** ||
| Office of the United States Trustee<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801 ||

After the Effective Date, the Reorganized Debtors have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date and provided such notice was sent, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.  Notwithstanding anything herein to the contrary, the Reorganized Debtors shall provide notice of any documents to all Entities whose rights are affected by any such document Filed by the Reorganized Debtors.

G.      *Term of Injunctions or Stays.*

**Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

H.      *Entire Agreement.*

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, the Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      *Plan Supplement.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://kccllc.net/Carestream or the Bankruptcy Court's website at www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

J.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or

interpreted; *provided, however*, any such alteration or interpretation shall be acceptable to the Debtors and the Required Consenting Stakeholders.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; and (3) nonseverable and mutually dependent.

K.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors and the Consenting Parties will be deemed to have solicited votes on the Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Consenting Parties, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

L.      *Closing of Chapter 11 Cases.*

On and after the Effective Date, the Debtors, or the Reorganized Debtors shall be permitted to classify all of the Chapter 11 Cases of the Debtors except for the Chapter 11 Case of Carestream Holdings, or any other Debtor identified in the Restructuring Steps Memorandum as having its Chapter 11 Case remain open following the Effective Date, as closed, and all contested matters relating to any of the Debtors, including objections to Claims and any adversary proceedings, shall be administered and heard in the Chapter 11 Case of Debtor Carestream Holdings, or any other Debtor identified in the Restructuring Steps Memorandum as having its Chapter 11 Case remain open following the Effective Date, irrespective of whether such Claim(s) were Filed or such adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed.

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, rule 3022-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

M.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

Dated:  ~~August~~September 2~~1~~3, 2022

CARESTREAM HEALTH, INC.
on behalf of itself and all other Debtors

*/s/  Scott H. Rosa*
Name:  Scott H. Rosa
Title:  Vice President and Chief Financial Officer

| Summary report: Litera Compare for Word 11.0.0.61 Document comparison done on 9/23/2022 8:14:47 PM | |
|---|---|
| **Style name:** Color (Kirkland Default) | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Carestream - Prepackaged Chapter 11 Plan [Solicitation Version]_(88804091_19).docx | |
| **Modified filename:** Carestream - Amended Prepackaged Chapter 11 Plan KE Draft 09.23.2022_Confirmation Version.docx | |
| **Changes:** | |
| Add | 199 |
| Delete | 201 |
| Move From | 3 |
| Move To | 3 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 406 |