# **Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CARESTREAM HEALTH, INC., *et al.*,[1] | ) | Case No. 22-10778 (JKS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 14, 15, 20, 66, 129,** |
| | ) | **159, 160** |

**FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND ORDER
(I) APPROVING THE DISCLOSURE STATEMENT FOR,
AND CONFIRMING, THE JOINT PREPACKAGED CHAPTER
11 PLAN OF REORGANIZATION OF CARESTREAM HEALTH, INC.
AND ITS DEBTOR AFFILIATES, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having, in each case in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local

Rules of Bankruptcy Practice and Procedure of the United States District Court for the District of

Delaware (the "Local Rules"):

    a.    distributed, on or about August 21, 2022 (the "Solicitation Commencement Date"),
(i) the *Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream
Health, Inc. and Its Debtor Affiliates* [Docket No. 14] (as amended, supplemented,
or otherwise modified from time to time, the "Plan"),[2] (ii) the *Disclosure Statement
for the Joint Prepackaged Chapter 11 Plan of Reorganization of
Carestream Health, Inc. and Its Debtor Affiliates* [Docket No. 15]
(as amended, supplemented, or otherwise modified from time to time,
the "Disclosure Statement"), (iii) the Debtors' solicitation cover letter, attached as

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Carestream Health, Inc. (0334); Carestream Health Acquisition, LLC (0333); Carestream Health
Canada Holdings, Inc. (7700); Carestream Health Holdings, Inc. (7822); Carestream Health International
Holdings, Inc. (5771); Carestream Health International Management Company, Inc. (0532); Carestream Health
Puerto Rico, LLC (8359); Carestream Health World Holdings, LLC (1662); and Lumisys Holding Co.
(3232).  The location of the Debtors' service address is:  150 Verona Street, Rochester, New York 14608.

[2]    Capitalized terms used but not defined in this order (this "Confirmation Order") have the meanings ascribed to
them in the Plan.  The rules of interpretation set forth in Article I.B of the Plan shall apply.

Exhibit 3 to the Scheduling Order[3] (the "Solicitation Cover Letter"), (iv) the Rights Offering Procedures and Rights Offering Subscription Form, as applicable, attached as Exhibit 6 and Exhibit 7, respectively, to the Scheduling Order (collectively, the "Rights Offering Materials"), (v) the ABL Roll Election Form, as applicable, attached as Exhibit 8 to the Scheduling Order, and (vi) the ballots for voting on the Plan (the "Ballots") (each applicable Ballot, together with the Plan, the Disclosure Statement, the Solicitation Cover Letter, the Rights Offering Materials, and the ABL Roll Election Form, a "Solicitation Package"), which forms of Ballots were attached as Exhibit 4 and Exhibit 5 to the Scheduling Order, to Holders of Claims entitled to vote on the Plan; namely, Holders of Claims in Class 3 (the "First Lien Claims") and Class 4 (the "Second Lien Term Loan Claims");

b.      solicited, beginning on the Solicitation Commencement Date and through August 22, 2022, at 12:00 p.m. (prevailing Eastern Time) (the "Voting Deadline"), votes on the Plan from Holders of Claims in Class 3 and Class 4 (collectively, the "Voting Classes");

c.      obtained approval of the Plan by each Voting Class as of the Voting Deadline, as evidenced by *Declaration of Adam Gorman Regarding the Solicitation and Tabulation of Votes on the Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc., and Its Debtor Affiliates* [Docket No. 42] (the "Voting Declaration");

d.      commenced, on August 23, 2022 (the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

e.      filed, on the Petition Date, (i) the Plan; (ii) the Disclosure Statement; (iii) the *Declaration of Scott H. Rosa, Chief Financial Officer of Carestream Health, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 16]; (iv) the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Approving Related Dates, Deadlines, Notices, and Procedures, (III) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (IV) Approving the Rights Offering Procedures and Related Dates, Deadlines, and Notices, and (V) Conditionally Waiving the Requirements that (A) the U.S. Trustee Convene a Meeting of Creditors and (B) the Debtors File Schedules of Assets and Liabilities, Statements of*

---

[3]     *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Approving Related Dates, Deadlines, Notices, and Procedures, (III) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (IV) Approving the Rights Offering Procedures and Related Dates, Deadlines, and Notices, and (V) Conditionally Waiving the Requirements that (A) the U.S. Trustee Convene a Meeting of Creditors and (B) the Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports* [Docket No. 66] (the "Scheduling Order")

*Financial Affairs, and Rule 2015.3 Financial Reports* [Docket No. 20] (the "Scheduling Motion"); and (v) the Voting Declaration;

f.     filed, on or around the Petition Date, several certificates of service [Docket Nos. 39 and 42] reflecting, *inter alia*, service of the Solicitation Package (collectively, and including all other affidavits of service and publication in these Chapter 11 Cases, the "Affidavits");

g.     distributed, on or about August 24, 2022, the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Combined Hearing on the Disclosure Statement, Confirmation of the Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Related Objection and Briefing Deadlines*, substantially in the form attached as Exhibit 1 to the Scheduling Order [Docket Nos. 112, 118, 134, and 158] (the "Combined Hearing Notice") to all parties in interest;

h.     published, on August 29, 2022, in *The New York Times* (national edition), on August 30, 2022, in the *Rochester Democrat and Chronicle*, and on September 1, 2022, in *The New York Times* (international edition), the publication notice of the Combined Hearing, substantially in the form attached as Exhibit 2 to the Scheduling Order (the "Publication Notice"), as evidenced by the proofs of publication thereof [Docket Nos. 115, 116, and 117];

i.     filed, on September 14, 2022, the initial Plan Supplement [Docket No. 129];

j.     filed, on September 23, 2022, an amended Plan [Docket No. 159];

k.     filed, on September 24, 2022, the amended Plan Supplement [Docket No. 161];

l.     filed, on September [26], 2022, (i) the *Debtors' Memorandum of Law in Support of Approval of the Disclosure Statement for, and Confirmation of, the Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc. And Its Debtor Affiliates* [Docket No. [●]] (the "Confirmation Brief"), (ii) the *Declaration of Scott H. Rosa, Chief Financial Officer of Carestream Health, Inc., in Support of Approval of the Disclosure Statement for, and Confirmation of, the Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc. And Its Debtor Affiliates and Its Debtor Affiliates* [Docket No. [●]] (the "Rosa Declaration"), (iii) the *Declaration of Marc Brown, Managing Director of AlixPartners, LLP, in Support of Approval the Debtors' Disclosure Statement for, and Confirmation of, the Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc. and Its Debtor Affiliates* [Docket No. [●]] (the "Brown Declaration"), and (iv) the *Declaration of Andrew Turnbull, Managing Director of Houlihan Lokey Capital, Inc., in Support of the Disclosure Statement for, and Confirmation of, the Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc. And Its Debtor Affiliates* [Docket No. [●]] (the "Turnbull Declaration"); and

m.      operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Bankruptcy Court, having:

a.      reviewed the procedures for voting on the Plan (the "Solicitation Procedures") and for opting out of the Third-Party Release (the "Opt-Out Procedures");

b.      entered, on August 24, 2022, the Scheduling Order, which, among other things, set (i) September 21, 2022, at 5:00 p.m. (prevailing Eastern Time) as the deadline for objections to approval of the Disclosure Statement and Confirmation of the Plan; and (ii) September 28, 2022, at 2:00 p.m. (prevailing Eastern Time) as the date and time for the Combined Hearing;

c.      reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Rosa Declaration, the Brown Declaration, the Turnbull Declaration, the Affidavits, the Combined Hearing Notice, the Solicitation Cover Letter, the Ballots, the Rights Offering Materials, the ABL Roll Election Form, the Publication Notice, and all other filed pleadings, exhibits, statements, affidavits, declarations, and comments regarding approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights;

d.      reviewed the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan;

e.      held the Combined Hearing on September 28, 2022, at 2:00 p.m. (prevailing Eastern Time);

f.      heard and considered the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation of the Plan, including any objections thereto;

g.      overruled any and all objections to Confirmation of the Plan and to approval of the Disclosure Statement, and any and all statements and reservations of rights related thereto not consensually resolved or withdrawn;

h.      considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan, including any objections thereto; and

i.      taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

**NOW, THEREFORE**, it appearing to the Bankruptcy Court that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the

Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all Entities affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and the arguments and evidence presented at the Combined Hearing establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and order:

**IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

I.    **Findings and Conclusions.**

1.    The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

II.    **Jurisdiction and Venue, Eligibility for Relief, Burden of Proof, and Notice.**

2.    The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Bankruptcy Court has jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively. Venue is proper in this district pursuant to sections 1408 and 1409 of the Judicial Code. Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings

within the meaning of section 157(b)(2) of the Judicial Code.  Each of the Debtors was and is an entity eligible for relief under section 109 of the Bankruptcy Code.

3.    Article X of the Plan is incorporated herein by reference in its entirety, and such findings and rulings therein are deemed made as a part of this Confirmation Order.  As set forth in Article X of the Plan, the Plan satisfies all the requirements of section 1129 of the Bankruptcy Code.

III.    **Commencement and Joint Administration of these Chapter 11 Cases.**

4.    On the Petition Date, the Debtors commenced these Chapter 11 Cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On August 24, 2022, the Bankruptcy Court entered an order [Docket No. 71] pursuant to which the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

IV.    **Objections.**

5.    The Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases. Any resolution of objections to approval of the Disclosure Statement or Confirmation of the Plan explained on the record at the Combined Hearing is hereby incorporated by reference. All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts, if any, which shall be resolved in accordance with Article V of the Plan), if any, related to the Disclosure Statement or Confirmation of the Plan, are overruled on the merits.

V.    <u>**Approval of the Disclosure Statement**</u>.

6.      The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including, to the extent applicable, the Securities Act and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code), and is approved in all respects.  The Debtors' use of the Disclosure Statement in solicitation of acceptances of the Plan is approved.  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

VI.    <u>**Solicitation and Voting; Notice**</u>.

7.      The Solicitation Procedures, including all documents related thereto (including, for the avoidance of doubt, the Solicitation Cover Letter, the Combined Hearing Notice, the Publication Notice, the Ballots, the Rights Offering Materials, and the ABL Roll Election Form), and the procedures for the tabulation of Ballots, satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable laws, rules, and regulations, and are approved in all respects.  The Debtors provided due, adequate, and sufficient notice of the Voting Deadline, the Objection Deadline, the deadlines to opt-out of, or otherwise object to, the Third-Party Release, and the Combined Hearing in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations.  No other or further notice is or shall be required.

8.      As described in the Voting Declaration and the Affidavits, the Debtors transmitted the Solicitation Package to all Holders of Claims entitled to vote on the Plan (as of the Voting Record Date) and the Combined Hearing Notice to all parties in interest on or after the Petition Date. Specifically, as described in the Voting Declaration and the Affidavits, (a) prior to the Petition Date, the Debtors transmitted the Solicitation Package to Holders of Claims

in the Voting Classes and (b) subsequent to the Petition Date, the Debtors transmitted the Combined Hearing Notice to all parties in interest.  Transmission and service of the foregoing, and any and all other documents associated with the Debtors' solicitation, complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, or regulation, and were timely, adequate, and sufficient, and no other or further notice is or shall be required.

9.     The period during which the Debtors solicited acceptances or rejections of the Plan was a reasonable and sufficient period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.  The execution, delivery, and performance of the Restructuring Support Agreement and the solicitation of votes to accept or reject the Plan was conducted in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, or regulation.  The Debtors, the Reorganized Debtors, the Released Parties, the Exculpated Parties, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys are hereby granted the protections provided under section 1125(e) of the Bankruptcy Code.

10.     Holders of Claims in Class 3 and Class 4 were eligible to vote on the Plan in accordance with the Solicitation Procedures.  The Ballots used to solicit votes to accept or reject the Plan from Holders in the Voting Classes were appropriate and adequately addressed the particular needs of these Chapter 11 Cases.  As evidenced by the Voting Declaration, Class 3 and Class 4 each voted to accept the Plan at each Debtor entity in accordance with section 1126 of the Bankruptcy Code.

11.     With respect to each applicable Debtor, Class 1, Class 2, Class 5, Class 6, and Class 7, are Unimpaired and conclusively presumed to accept the Plan; and Class 8 and Class 9 are Impaired and deemed to reject the Plan (the foregoing Classes, collectively, the "Non-Voting Classes"). The Debtors were not required to solicit votes from Holders of Claims or Interests, as applicable, in the Non-Voting Classes.

12.     The solicitation of votes on the Plan complied with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all applicable non-bankruptcy rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

## VII.    Opt-Out Procedures.

13.     The Opt-Out Procedures set forth in the Ballots and service of the Combined Hearing Notice, and the Publication Notice, as applicable, are good, sufficient, and adequate to bind the applicable parties to the Third-Party Release and are approved in all respects.

14.     The procedures used for tabulation of elections to opt out of the Third-Party Release are approved in all respects.

## VIII.    Plan Supplement.

15.     The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good, proper, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable laws, rules, and regulations, and no other or further notice is or shall be required with respect to the Plan Supplement and all of the documents included therein.

16.     All documents included in the Plan Supplement, including any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto), are integral to, part of, and incorporated by reference into the Plan and this Confirmation Order.

17.     Subject to the terms of the Plan, the Restructuring Support Agreement (including any consent and consultation rights set forth or incorporated therein), to the extent applicable, the terms of the New ABL Backstop Commitment Letter, and this Confirmation Order, the Debtors' right to alter, amend, update, or modify the Plan Supplement on or before the Effective Date is reserved.  All parties were provided due, adequate, and sufficient notice of the Plan Supplement.

## IX.    Modifications to Plan.

18.     Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan after solicitation of the Plan, as reflected in this Confirmation Order (including any modifications announced on the record of the Combined Hearing), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims or their authorized representatives, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim under the Plan.  After giving effect to these modifications, if any, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to cast new votes on the Plan or change previously cast acceptances or rejections of the Plan.  Accordingly, the Plan is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.  All Holders of Claims who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended, and all Holders of Claims and Interests

who are conclusively deemed to have rejected the Plan are deemed to have rejected the Plan as modified, revised, supplemented, or otherwise amended.

**X.**     <u>**Confirmation of the Plan**</u>.

19.     The Plan, a copy of which is attached hereto as <u>**Exhibit A**</u>, as may be amended by this Confirmation Order, is confirmed pursuant to section 1129 of the Bankruptcy Code. The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

20.     The terms of the Plan, including the Plan Supplement (including all documents included therein, exhibits thereto, and any supplements, amendments, or modifications thereof in accordance with this Confirmation Order and the Plan), are incorporated by reference into and are an integral part of this Confirmation Order. The terms of the Plan, the Plan Supplement, and any other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan, and all amendments and modifications thereof made or to be made in accordance with the Plan and this Confirmation Order, are hereby approved in all respects and shall be immediately effective, enforceable, and binding as of the Effective Date. The Debtors and the Reorganized Debtors (as applicable) are authorized to take all actions required under the Plan and the Plan Supplement documents to effectuate the Plan and the Restructuring Transactions.

21.     The Reorganized Debtors are authorized to adopt and implement the Management Compensation Programs in accordance with Articles IV.B, and IV.P of the Plan.

**XI.**     <u>**Assumption and Assignment of Contracts and Leases**</u>.

22.     The Debtors have exercised sound business judgment in determining whether to reject or assume each of their Executory Contracts and Unexpired Leases pursuant to sections 365

and 1123(b)(2) of the Bankruptcy Code, Article V of the Plan, and as set forth in the Plan Supplement.

23.     The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

24.     Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to Article V.C of the Plan shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

25.     Notwithstanding anything in the Plan or Confirmation Order, (a) all rights of University of Maryland Medical System ("UMMS") under the January 17, 2019 Master Agreement for Service and Software by and between the Debtor and UMMS (the "UMMS Agreement"), including all warranty and indemnification rights, are preserved and shall survive assumption of the UMMS Agreement and bind the applicable Reorganized Debtor in accordance with the terms of the UMMS Agreement and (b) nothing in the Plan or Confirmation Order precludes UMMS from pursuing or recovering from the applicable Reorganized Debtor, insurance of the Debtor or the Reorganized Debtor, or any other party that may be liable under the UMMS Agreement.

26.     No provision of the Confirmation Order, the Plan or the Plan Supplement shall authorize the assumption of any executory contract between Carestream Health, Inc. and

SAP America, Inc. or its affiliate, SuccessFactors, Inc. (collectively, "SAP") absent payment of the applicable cure amount.  Any dispute regarding the applicable cure amount shall be resolved by agreement between SAP and the Debtors or, if no agreement can be reached, by further order of the Court upon application by SAP or the Debtors with adequate notice to the other party.  All rights and remedies of the Debtors and SAP arising under any executory contract(s) are preserved.  Upon payment of the applicable cure amount as agreed to by the parties or determined by the Court, such executory contracts will be deemed assumed as of the Effective Date.

**XII.    Implementation.**

27.    The Debtors have exercised sound business judgment in determining to assume the Restructuring Support Agreement, pursuant to sections 365 and 1123 of the Bankruptcy Code. The Restructuring Support Agreement shall be legal, valid and binding to the same extent as if such assumption had been authorized and effectuated pursuant to a separate order of this Court that was entered pursuant to section 365 of the Bankruptcy Code.  The Restructuring Support Agreement shall be deemed assumed by the Debtors upon entry of this Confirmation Order pursuant to sections 363 and 365 of the Bankruptcy Code.  The failure to describe specifically or include any particular provision of the Restructuring Support Agreement in the Plan or this Confirmation Order shall not diminish or impair the effectiveness of such provision.  The Restructuring Support Agreement shall be binding and enforceable against the parties thereto in accordance with its terms.  The Debtors are authorized to take all actions required to perform and comply with their obligations under the Restructuring Support Agreement.

28.    The provisions governing the means for implementation of the Plan set forth in Article IV of the Plan shall be, and hereby are, approved in their entirety.  All documents and agreements necessary to implement the Plan and the Restructuring Transactions, and all other relevant and necessary documents with respect to the Restructuring Transactions, including: (a) the

New Organizational Documents (including the New Stockholders Agreement); (b) the New Debt Documents; (c) the identities of the members of the New Board; (d) the Rejected Executory Contracts and Unexpired Leases Schedule; the Schedule of Proposed Cure Amounts; the Schedule of Retained Causes of Action; (e) the Restructuring Steps Memorandum, (f) the return to the applicable Issuing Lender of all undrawn Existing Letters of Credit or the cash collateralization of such Existing Letters of Credit; (g) any other documents contained in the Plan Supplement; and (h) all other relevant and necessary documents, have been or will be negotiated in good faith and at arm's-length, are in the best interests of the Debtors and the Debtors' Estates and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements.

**XIII.    Notice of Confirmation and the Effective Date.**

29.    As soon as practicable following occurrence of the Effective Date, the Debtors shall serve on all parties in interest a notice of entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Notice"). Service of the Confirmation Notice in the time and manner set forth in this paragraph shall be deemed good and sufficient notice of entry of this Confirmation Order and occurrence of the Effective Date and no other or further notice is or will be necessary.

30.    The Confirmation Notice shall constitute sufficient notice of the entry of this Confirmation Order to any filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law.

**XIV.    Good Faith**

31.    The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated

Parties have been, are, and will continue to be acting in good faith within the meaning of section 1125(e) of the Bankruptcy Code if they proceed to: (a) consummate the Plan, the Restructuring Transactions, and the agreements, settlements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, settlements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order. The Released Parties have made a substantial contribution to the Debtors' reorganization.

**XV.    Effectiveness of All Actions.**

32.    All actions contemplated by or necessary to effectuate the Plan, including all actions in connection with the Plan Supplement, as the same may be modified from time to time prior to the Effective Date (including, without limitation, any restructuring transaction steps set forth in one or more documents contained in the Plan Supplement), are hereby authorized to be taken on, prior to, or after the Effective Date, as applicable, without further application to or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors, and with the effect that such actions had been taken by the unanimous action, consent, approval, and vote of each of such officers, directors, managers, members, or equity holders.

33.    On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Common Stock, the New Organizational Documents, the New Debt Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing. The authorizations and approvals

contemplated by Article IV of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

34.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations, of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, agreements, and any amendments or modifications thereto.

## XVI.    **New ABL Facility.**

35.     On the Effective Date, the Reorganized Debtors shall execute and deliver the New ABL Documents, and such documents shall, subject to the satisfaction of the conditions thereof, become effective in accordance with their terms.  On and after the Effective Date, the New ABL Documents shall constitute legal, valid, and binding obligations of the Reorganized Debtors, and shall be enforceable in accordance with their respective terms.  As of the Effective Date, all of the claims, Liens and security interests to be granted in accordance with the New ABL Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, and enforceable claims against the obligors under the New ABL Documents and Liens on, and security interests in, the collateral specified in the New ABL Documents with the priorities set forth in the Intercreditor Agreement (as defined in the New ABL Credit Agreement); (c) shall, with respect to such Liens and security interests, be deemed automatically attached and perfected, subject only to such Liens and security interests as may be permitted under the New ABL Documents and with the priorities set forth in the Intercreditor Agreement; and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent transfers, fraudulent

conveyances, or voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The guarantees, pledges, Liens and other security interests granted to secure the obligations arising under the New ABL Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder, shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or fraudulent transfers under the Bankruptcy Code or any applicable nonbankruptcy law. The Reorganized Debtors and the Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

**XVII.  New Term Loan Facility.**

36.    On the Effective Date, the Reorganized Debtors shall execute and deliver the New Term Loan Documents, and such documents shall, subject to the satisfaction of the conditions thereof, become effective in accordance with their terms. On and after the Effective Date, the New Term Loan Documents shall constitute legal, valid, and binding obligations of the Reorganized Debtors, and shall be enforceable in accordance with their respective terms. As of the Effective Date, all of the claims, Liens and security interests to be granted in accordance with the New Term

Loan Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, and enforceable claims against the obligors under the New Term Loan Documents and Liens on, and security interests in, the collateral specified in the New Term Loan Documents with the priorities set forth in the Intercreditor Agreement; (c) shall, with respect to such Liens and security interests, be deemed automatically attached and perfected, subject only to such Liens and security interests as may be permitted under the New Term Loan Documents and with the priorities set forth in the Intercreditor Agreement; and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent transfers, fraudulent conveyances, or voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The guarantees, pledges, Liens and other security interests granted to secure the obligations arising under the New Term Loan Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder, shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or fraudulent transfers under the Bankruptcy Code or any applicable nonbankruptcy law. The Reorganized Debtors and the Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and shall thereafter

cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

**XVIII. The Rights Offering.**

37.    On the Effective Date, the Reorganized Debtors shall consummate the Rights Offering in accordance with the Rights Offering Procedures and the Plan. The Reorganized Debtors are authorized to take any and all actions necessary or appropriate to consummate the Rights Offering, in each case, without any further notice to or order of the Bankruptcy Court.

**XIX.    Issuance of New Common Stock.**

38.    On the Effective Date, Reorganized Holdings shall issue the New Common Stock, including the Rights Offering New Common Stock, the New Common Stock issued pursuant to the DIP Rollover, and the DIP Rollover Premium New Common Stock, pursuant to the Plan. The issuance of the New Common Stock, including equity awards reserved for the Management Incentive Plan, by the Reorganized Debtors shall be authorized without the need for any further corporate action or without any further action by the Debtors or Reorganized Debtors or by Holders of any Claims or Interests, as applicable.

39.    All of the shares (or comparable units) of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of New Common Stock, including the Rights Offering New Common Stock, the New Common Stock issued pursuant to the DIP Rollover, and the DIP Rollover Premium New Common Stock, shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other

than the applicable Reorganized Debtor(s).  Any Entity's acceptance of New Common Stock shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms.  As a condition to receiving the New Common Stock, Holders of Allowed Second Lien Term Loan Claims (including Rights Offering Participants) and any DIP Lender entitled to a distribution of New Common Stock pursuant to the DIP Rollover and the DIP Rollover Premium shall be required to execute and deliver the New Stockholders Agreement; *provided*, *however*, that, notwithstanding any failure to execute the New Stockholders Agreement, any Entity that is entitled to and accepts a distribution of New Common Stock under the Plan, by accepting such distribution, will be deemed to have accepted and consented to the terms of the New Stockholders Agreement (solely in such Entity's capacity as a stockholder of Reorganized Holdings), without the need for execution by any party thereto.  The New Stockholders Agreement will be effective as of the Effective Date and, as of such date, will be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Common Stock will be bound thereby in all respects.  The New Common Stock will not be registered under the Securities Act or listed on any exchange as of the Effective Date and will not meet the eligibility requirements of the Depository Trust Company.  Pursuant to Article VI.G. of the Plan, the offering, issuance, and distribution of the New Common Stock, including the New Common Stock issued on account of the DIP Equitization Recovery and the DIP Rollover Premium New Common Stock, but excluding the Rights Offering New Common Stock and the MIP New Common Stock, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act or any similar federal, state, or local law in reliance on section 1145 of the Bankruptcy Code or, only to the extent such exemption under section 1145 of the Bankruptcy Code is not available, any other available

exemption from registration under the Securities Act. The Rights Offering New Common Stock and any Securities issuable pursuant to the Rights Offering and the Management Incentive Plan will be issued pursuant to section 4(a)(2) of the Securities Act.

## XX.    Discharge, Release, Injunction, Exculpation, and Related Provisions.

40.    The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. Article VIII.C of the Plan describes certain releases granted by the Debtors (the "Debtor Release"), Article VIII.D of the Plan provides for the release of the Released Parties by the Releasing Parties (the "Third-Party Release"), Article VIII.E of the Plan provides for exculpation for the Exculpated Parties (the "Exculpation"), and Article VIII.F of the Plan provides for an injunction (the "Injunction").  The Bankruptcy Court has jurisdiction under sections 1334(a) and 1334(b) of the Judicial Code and authority under section 105 of the Bankruptcy Code to approve each of the Debtor Release, the Third-Party Release, the Exculpation, and the Injunction.  As has been established based upon the evidence presented at the Combined Hearing, the Debtor Release, the Third-Party Release, the Exculpation, and the Injunction (a) were given in exchange for good, valuable, and adequate consideration after due notice and opportunity for hearing, (b) are appropriately tailored under the facts and circumstances of these Cases, (c) were integral to the agreements and settlements among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (d) confer substantial benefits on the Estates, (e) are fair, equitable, and reasonable, and (f) are in the best interests of the Debtors, the Estates, and parties in interest.  Further, the failure to implement the Debtor Release, Third-Party Release, Exculpation, and Injunction would impair the Debtors' ability to confirm and implement the Plan.

41.    The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release set forth in Article VIII.C of the Plan.  The Debtor Release is a

necessary and integral element of the Plan, and is fair, reasonable, and in the best interests of the Debtors, the Estates, Holders of Claims and Interests, and all of the Debtors' stakeholders. The Debtor Release, as set forth in Article VIII.C of the Plan, is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

42.    The Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the other Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors. The Combined Hearing Notice sent to all parties in interest unambiguously stated that the Plan contains the Third-Party Release and specified how to object and opt out of such release. The Third-Party Release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests. Accordingly, the Third-Party Release, as set forth in Article VIII.D of the Plan, is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

43.    The exculpation provided by Article VIII.E of the Plan for the benefit of the Exculpated Parties is appropriately tailored to the circumstances of these Chapter 11 Cases.

44.    The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

45.    The injunction provision set forth in Article VIII.F of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Release, the Third-Party Release, and the exculpation, and is narrowly tailored to achieve this purpose.

46.    The provisions regarding the preservation of Causes of Action in the Plan (including Article IV.P), including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

47.    The Release of Liens described in Article VIII.B of the Plan is necessary to implement the Plan.  The provisions of the Release of Liens are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

48.    For the avoidance of doubt, pursuant to Bankruptcy Rule 3020(c)(1), the foregoing provisions in the Plan are hereby approved and will be effective immediately on the Effective Date without further order or action by the Bankruptcy Court, any of the parties to such release, or any

other Entity:  (a) the Debtor Release, (b) the Third-Party Release, (c) the Exculpation, and (d) the
Injunction.

49.     The discharge, release, injunction, exculpation, and related provisions set forth in
Article VIII of the Plan are hereby approved and authorized in their entirety.

**XXI.  Cancellation of Existing Agreements, Notes, and Equity Interests and Release of
Liens.**

50.     The cancellation of existing agreements, notes, and equity interests described in
Article IV.F of the Plan (subject to the limitations set forth therein) and the release and discharge
of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the
Estates described in Article VIII.B of the Plan, are necessary to implement the Plan and are hereby
approved.  Such provisions are appropriate, fair, equitable, and reasonable, and are in the best
interests of the Debtors, the Estates, and Holders of Claims and Interests.

51.     Holders of mortgages, deeds of trust, Liens, pledges, or other security interests
released pursuant to Article VIII.B of the Plan shall execute such documents and take any and all
other steps as may be reasonably requested by the Debtors or the Reorganized Debtors, as
applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any
Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to
the applicable Reorganized Debtor and its successors and assigns.

**XXII.  Restructuring Transactions.**

52.     On or before the Effective Date, the applicable Debtors or the Reorganized Debtors
shall enter into and shall take any actions as may be necessary or appropriate to effect the
Restructuring Transactions, as set forth in the Restructuring Steps Memorandum and may take all
actions as may be necessary or appropriate to effect any transaction described in, approved by,
contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the

terms and conditions of the Plan and the Restructuring Support Agreement, and otherwise reasonably acceptable to the Required DIP Lenders, which may include, as applicable:  (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Support Agreement, and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree, including the documents constituting the Plan Supplement; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Restructuring Support Agreement, and having other terms for which the applicable Entities may agree; (c) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable law; (d) the consummation of the Rights Offering pursuant to the Rights Offering Procedures, including the distribution of the Rights Offering Subscription Rights to the Rights Offering Participants and the issuance of Rights Offering New Common Stock in connection therewith; (e) the execution, filing, and delivery, as applicable, of the New Organizational Documents (including the New Stockholders Agreement); and the authorization, issuance, distribution, reservation, or dilution, as applicable, of the New Common Stock, as set forth herein and in the Plan; (f) the execution and delivery of the New Debt Documents; and (g) the return to the applicable Issuing Lender of all undrawn Existing Letters of Credit or the cash collateralization of such Existing Letters of Credit which cash collateralization shall be on terms reasonably satisfactory to the applicable Issuing Lender and

(h) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan.

## XXIII. <u>Vesting of Assets in the Reorganized Debtors.</u>

53.     Except as otherwise provided in the Confirmation Order, the Plan, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, no Reorganized Debtor (including any Reorganized Debtor ultimately being wound-down and liquidated in connection with the Restructuring Transactions) shall be treated as being liable on any Claim that is discharged pursuant to the Plan.

## XXIV.  <u>Professional Fee Escrow Account.</u>

54.     No later than the Effective Date, the Debtors shall establish and fund the Professional Escrow Account with Cash equal to the Professional Fee Amount.  The Professional Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders.  Such funds shall not be considered property of the Estates, the Debtors, or the Reorganized Debtors in any way.

55.     The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Escrow Account as soon as

reasonably practicable after such Professional Fee Claims are Allowed; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Escrow Account.  When such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Escrow Account shall promptly be transferred to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court.

**XXV.**   **Waiver of Section 341(a) Meeting and Certain Filings and Reporting.**

56.     Subject to the occurrence of the Effective Date on or before November 6, 2022, the following are hereby permanently waived: (a) the requirement that the U.S. Trustee convene a meeting of creditors or equityholders pursuant to section 341(a) of the Bankruptcy Code; (b) the requirements that the Debtors file Schedules, SOFAs, and 2015.3 Reports (each as defined in the Scheduling Motion); and (c) any other requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Bankruptcy Court or U.S. Trustee as to any such list, schedule, or statement not filed as of the entry of this Confirmation Order.

57.     After the Confirmation Date, the Debtors or Reorganized Debtors, as applicable, unless otherwise specified herein, in the Plan, in the Restructuring Support Agreement, or in the Plan Supplement Documents shall have no obligation to (a) provide any reports to any parties otherwise required under any orders entered in the Chapter 11 Cases or (b) file with the Bankruptcy Court or serve on any party reports that the Debtors were obligated to file under the Bankruptcy Code or a Bankruptcy Court order; *provided* that the Reorganized Debtors will seek authority to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules; and *provided*, *further*, that, notwithstanding the foregoing, the Reorganized Debtors shall timely file all required monthly operating reports and post-confirmation quarterly

reports in a form prescribed by the U.S. Trustee until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

## XXVI. **Authorization to Consummate**.

58.    The Debtors are authorized to consummate the Plan in accordance with its terms at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions precedent in Article IX of the Plan.  The Debtors or Reorganized Debtors, as applicable, including their officers, managers, and directors (including the members of the New Board, as applicable), are hereby immediately authorized, without further application to or order of the Bankruptcy Court, to enter into and effectuate the Restructuring Transactions and to take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Restructuring Transactions to the extent consistent with the Plan (including the consent rights therein) and the Restructuring Support Agreement (subject to the applicable consent and consultation rights set forth therein).  To the extent not approved by the Bankruptcy Court previously, entry of this Confirmation Order shall be deemed approval of the Restructuring Transactions (including each of the transactions and related agreements contemplated thereby), and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors, as applicable, in connection therewith are hereby effective and authorized to be taken.

## XXVII.    **Directors and Officers of the Reorganized Debtors**.

59.    In accordance with Article IV.K of the Plan, on the Effective Date, the term of each of the current members of the boards of directors of Carestream Health and Carestream Holdings shall expire, such current directors shall be deemed to have resigned, and all of the directors for the initial term of the New Board shall be appointed.

## XXVIII.    __Post-Confirmation Modifications__.

60.    Without the need for further order or authorization of the Bankruptcy Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan and the Restructuring Support Agreement (subject to the applicable consent and consultation rights set forth therein) and, to the extent applicable, the terms of the New ABL Backstop Commitment Letter.

## XXIX. __Substantial Consummation__.

61.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

## XXX.    __Immediate Binding Effect; Waiver of Stay__.

62.    Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable to the fullest extent permitted under the Bankruptcy Code and applicable nonbankruptcy law.

63.    For good cause shown, the requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are waived. This Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court and shall not be stayed pursuant to the Bankruptcy Code, Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062, or otherwise.

**XXXI. <u>Disclosure of Facts</u>.**

64.     The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving action to be taken by or required of the Debtors.

**XXXII.     <u>Certain Government Matters</u>.**

65.     Notwithstanding any provision in the Plan, the Plan Supplement, this Confirmation Order, or other related Plan documents (collectively, "<u>Plan Documents</u>"): (a) nothing discharges or releases the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, liability, defense or Cause of Action of the United States or any State, or impairs the ability of the United States or any State to pursue any right, claim, liability, defense, or Cause of Action against any Debtor, Reorganized Debtor, or non-debtor; (b) contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements, or other interests of or with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Chapter 11 Cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law; and (c) all rights, claims, liabilities, defenses or Causes of Action, of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, claims, liabilities, defenses or Causes of Action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that nothing in the Plan Documents shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under non-bankruptcy law with respect to any such claim, liability, or Cause of Action.

66.     Without limiting the foregoing, for the avoidance of doubt, nothing shall: (a) require the United States or any State to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense, or Cause of Action; (b) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors, or any non-debtor; (c) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements, or other interests; (d) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (e) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (f) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law.

## XXXIII.    Chubb Insurance Program.

67.     Notwithstanding anything to the contrary in this Confirmation Order, the Plan, the Disclosure Statement, the Restructuring Support Agreement, the Plan Supplement, the DIP Orders, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction, discharge, or release, requires a party to opt out of any releases or be identified by name as a non-Releasing Party in this Confirmation Order, or confers Bankruptcy Court jurisdiction) and as a supplement to Articles IV.O and V.E. of the Plan:

   a.   on the Effective Date, all insurance policies (including any D&O Liability Insurance Policies) that have been issued at any time by ACE American Insurance Company, ACE Property & Casualty Insurance Company, Indemnity Insurance Company of

North America, Westchester Fire Insurance Company, Federal Insurance Company, Chubb Custom Insurance Company, Great Northern Insurance Company, and/or each of their U.S.-based affiliates and successors (collectively, "Chubb") to (or providing coverage to) any of the Debtors or any of their affiliates or predecessors, all extensions and renewals thereof, and all agreements, documents or instruments related thereto (each as amended, modified or supplemented and including any exhibit or addenda thereto, collectively, the "Chubb Insurance Program") shall be assumed pursuant to sections 105 and 365 of the Bankruptcy Code, and shall continue in full force and effect thereafter in accordance with their respective terms, and this assumption and the terms thereof shall not be altered, amended or modified notwithstanding Article V.A. of the Plan;

b.   nothing alters or modifies the terms and conditions of the Chubb Insurance Program, except that on and after the Effective Date, the Reorganized Debtors shall be liable in full for all of their and the Debtors' obligations under the Chubb Insurance Program, regardless of whether any such obligations arise or become due before or after the Effective Date, without the need or requirement for Chubb to file or serve any objection to a notice (or lack of such notice) of proposed Cure costs, including any Schedule of Proposed Cure Amounts, or file or serve a request, motion, or application for payment of or Proof of any Claim or Administrative Claim but in each case subject to the Debtors' or Reorganized Debtors' (as applicable) rights and defenses under the Chubb Insurance Program;

c.   nothing (including Article V.A. of the Plan) shall permit or otherwise effect a sale, assignment or any other transfer of the Chubb Insurance Program and/or any rights, proceeds, benefits, claims, rights to payments, or recoveries under or relating thereto without the prior express written consent of Chubb unless otherwise permitted pursuant to the terms of the Chubb Insurance Program and applicable non-bankruptcy law; and

d.   the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit:  (I) claimants with direct action claims against Chubb under applicable non-bankruptcy law to proceed with their claims; (II) Chubb to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) claims where a claimant asserts a direct claim against Chubb under applicable non-bankruptcy law, or (B) an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) Chubb to cancel any policy under the Chubb Insurance Program, and take other actions relating to the Chubb Insurance Program (including effectuating a setoff), to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Chubb Insurance Program.

XXXIV.    **Cash Management Matters.**

68.    For the avoidance of doubt, (a) all claims, setoff rights, and other rights under any Citibank Cash Management Agreements[4] are fully preserved, it being understood that such rights and claims are not being impaired by the Plan or the New Debt Documents; and (b) "First Lien Claims," as used in the Plan and the Confirmation Order, shall not include obligations to Citibank, N.A. or any of its affiliates constituting Cash Management Obligations under and as defined in the First Lien Credit Agreement, it being understood that all such obligations of the Debtors and Foreign Guarantor Subsidiaries shall remain unimpaired and enforceable against such Debtors and Foreign Guarantor Subsidiaries after the Effective Date in accordance with their terms.

XXXV.    **Headings; References to and Omissions of Plan Provisions.**

69.    Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

70.    References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

---

[4]    "Citibank Cash Management Agreements" means any agreements between Citibank, N.A. or any of its affiliates, on the one hand, and any Debtor or Foreign Guarantor Subsidiary, on the other hand, related to the Bank Accounts or the Cash Management System (as the terms "Bank Accounts" and "Cash Management System" are defined in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms and (D) Perform Intercompany Transactions and (II) Granting Related Relief* [Docket No. 12]).

**XXXVI.**     **References to Reorganized Debtors.**

71.    References to the "Reorganized Debtors" in this Confirmation Order and in the Plan shall refer to Reorganized Holdings and any of its direct and indirect subsidiaries.

**XXXVII.**     **Effect of Conflict.**

72.    This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern and control.

**XXXVIII.**     **Final Order.**

73.    This Confirmation Order is a final order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

**XXXIX.**     **Retention of Jurisdiction.**

74.    The Bankruptcy Court may properly, and upon the Effective Date, to the full extent set forth in the Plan and otherwise consistent with applicable law and subject to the terms of applicable Plan Supplement documents, shall, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including (to the extent consistent with applicable law) the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

**<u>Exhibit A</u>**

**Plan**

**<u>Exhibit B</u>**

**Confirmation Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CARESTREAM HEALTH, INC., *et al.*,[1] | ) | Case No. 22-11778 (JKS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF (I) ENTRY OF ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT FOR, AND CONFIRMING, THE DEBTORS' AMENDED JOINT PREPACKAGED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OCCURRENCE OF EFFECTIVE DATE

**PLEASE TAKE NOTICE** that on September [●], 2022, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Confirmation Order") confirming the *Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc. and Its Debtor Affiliates and Its Debtor Affiliates* [Docket No. [●]] (the "Plan"), and approving the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc. and Its Debtor Affiliates and Its Debtor Affiliates* [Docket No. 15] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") of the above-captioned debtors and debtors in possession (the "Debtors").[2]

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [●], 2022. Each of the conditions precedent to consummation of the Plan enumerated in Article IX of the Plan has been satisfied or waived in accordance with the Plan and the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Order, the Plan, and copies of all documents filed in these chapter 11 cases are available free of charge by visiting https://kccllc.net/Carestream or by calling the Debtors' restructuring information line at (877) 709-4750 (Toll-free from US / Canada) or +1 (424) 236-7230 (International). You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: http://www.deb.uscourts.gov.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Carestream Health, Inc. (0334); Carestream Health Acquisition, LLC (0333); Carestream Health Canada Holdings, Inc. (7700); Carestream Health Holdings, Inc. (7822); Carestream Health International Holdings, Inc. (5771); Carestream Health International Management Company, Inc. (0532); Carestream Health Puerto Rico, LLC (8359); Carestream Health World Holdings, LLC (1662); and Lumisys Holding Co. (3232).  The location of the Debtors' service address is:  150 Verona Street, Rochester, New York 14608.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the terms of the Confirmation Order and the Plan (which, for the avoidance of doubt, includes the Plan Supplement and all exhibits and documents related thereto) are binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan); all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan; each Entity acquiring property under the Plan; and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with Article IV.B. of the Plan, on the Effective Date, certain of the Debtors and other applicable parties engaged in a series of Restructuring Transactions as set forth in the Restructuring Steps Memorandum.

**PLEASE TAKE FURTHER NOTICE THAT** all requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than forty-five days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.

[*Remainder of page intentionally left blank*]

Dated: [●], 2022                    /s/ _____
Wilmington, Delaware

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400
Email:       ljones@pszjlaw.com
               tcairns@pszjlaw.com
               ecorma@pszjlaw.com

-and-

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Tricia Schwallier Collins (*pro hac vice* pending)
Yusuf U. Salloum (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:       patrick.nash@kirkland.com
               tricia.schwallier@kirkland.com
               yusuf.salloum@kirkland.com

-and-

Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Rachael M. Bentley (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:       nicole.greenblatt@kirkland.com
Email:       rachael.bentley@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*