# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| CARESTREAM HEALTH, INC., *et al.*,[1] | ) Case No. 22-11778 (JKS) |
| Debtors. | ) (Jointly Administered) |

### DECLARATION OF MARC BROWN, MANAGING DIRECTOR OF ALIXPARTNERS, LLP, IN SUPPORT OF THE DEBTORS' DISCLOSURE STATEMENT FOR, AND CONFIRMATION OF, THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF CARESTREAM HEALTH, INC., AND ITS DEBTOR AFFILIATES

I, Marc Brown, hereby declare under penalty of perjury as follows:

**Background and Qualifications**

1. I am a Managing Director of AlixPartners, LLP ("AlixPartners") and serve as proposed financial advisor to the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2. I have more than 25 years of financial advisory experience, including valuing assets, securities and businesses, business plan diligence and development, assessing solvency and capital structures. Since joining AlixPartners, I have provided restructuring advice to companies and creditors, both in chapter 11 and on an out-of-court basis, in the automotive, chemicals, real estate, healthcare, telecom and technology industries. As an advisor, I have conducted numerous financial, valuation, and/or liquidation analyses for various companies, including General Motors,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Carestream Health, Inc. (0334); Carestream Health Acquisition, LLC (0333); Carestream Health Canada Holdings, Inc. (7700); Carestream Health Holdings, Inc. (7822); Carestream Health International Holdings, Inc. (5771); Carestream Health International Management Company, Inc. (0532); Carestream Health Puerto Rico, LLC (8359); Carestream Health World Holdings, LLC (1662); and Lumisys Holding Co. (3232). The location of the Debtors' service address is: 150 Verona Street, Rochester, New York 14608.

Intelsat S.A., Mallinckrodt PLC, Trident Health, Linn Energy, Inc., SIGA Technologies, Inc., Eastman Kodak Company, Velocity Holding Company, Inc. and McDermott International, Inc. I have an MBA in accounting, finance, and strategy with honors from the University of Chicago Booth School of Business, and am a Chartered Financial Analyst (Charterholder).

3. AlixPartners is a global independent restructuring consulting firm that has a wealth of experience providing financial advisory services, and has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to these chapter 11 cases. Since its inception in 1981, AlixPartners has provided restructuring or crisis management services in numerous large cases, including services targeted at restructuring, stabilizing, and improving a company's financial position.

4. I submit this declaration (this "Declaration") in support of approval of the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc., and Its Debtor Affiliates* [Docket No. 15] (as modified, amended, or supplemented from time to time in accordance with its terms, the "Disclosure Statement") and confirmation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc., and Its Debtor Affiliates* [Docket No. 14] (as modified, amended, or supplemented from time to time in accordance with its terms, the "Plan").[2]

5. Since August 2022, AlixPartners has been one of the principal advisors to the Debtors.[3] AlixPartners has been involved in the matters leading up to the Debtors' chapter 11

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Debtors' Memorandum of Law in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc., and Its Debtor Affiliates*, filed contemporaneously herewith, or the Plan, as applicable.

[3] The Debtors executed an engagement letter with AlixPartners on August 3, 2022.

filings, which include the negotiation of the Restructuring Support Agreement, preparing the Disclosure Statement, negotiating the Plan, and developing the Restructuring Transactions contemplated thereunder.

6. I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

7. The statements in this Declaration are, except where specifically noted or otherwise stated herein, based on my personal knowledge or opinion, information that I have received from the Debtors' employees or advisors, or employees of AlixPartners working directly with me or under my supervision or direction, or from the Debtors' books and records. If called to testify, I would testify to the facts set forth herein on that basis. I am authorized to submit this Declaration on behalf of the Debtors.

8. Neither AlixPartners nor I am being specifically compensated for this testimony other than pursuant to AlixPartners' engagement letter with the Debtors, subject to approval by this Court.

### The Plan Satisfies the Best Interests Test

9. Relying on information from the Debtors' advisors and my own personal knowledge, I have reviewed the classification of claims and interests under the Plan and the proposed distributions to each class of claims. My testimony below that the Plan should be confirmed is informed by this knowledge. Specifically, I believe that the Plan satisfies the requirements under the United States Bankruptcy Code (the "Bankruptcy Code") regarding the "best interests of creditors" test.

10. It is my understanding that section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired claim or interest either accept the plan or receive or retain under the plan property of a value that is not less than the value such holder would receive if the Debtors

were liquidated under chapter 7 of the Bankruptcy Code.  This is commonly known as the "best interests" test.  I understand that the projected recoveries for the Impaired Claims and Interests under the Plan are equal to or in excess of the recoveries estimated in a hypothetical chapter 7 liquidation.

11. To determine whether the Plan satisfies the best interests test, the Debtors, with the assistance of their advisors, prepared a liquidation analysis, which is attached to the Disclosure Statement as <u>Exhibit C</u> (the "<u>Liquidation Analysis</u>").  I oversaw the preparation of the Liquidation Analysis, and worked closely with a team of AlixPartners professionals in its development.

12. The Liquidation Analysis estimates the projected recoveries that would result from the liquidation of the Debtors in a hypothetical conversion to chapter 7 of the Bankruptcy Code on or about September 30, 2022 (the "<u>Liquidation Date</u>"), which is then compared with the estimated recoveries to Holders of Allowed Claims and Interests under the Plan.  The Liquidation Analysis was completed following due diligence performed by the AlixPartners team, including a review of the Debtors' books and records and discussions with the Debtors' management, and was based on a variety of assumptions that I believe are reasonable.  The Liquidation Analysis is based on the estimated value of the Debtors' assets and liabilities as of the Liquidation Date in a forced sale by a chapter 7 trustee, and incorporates various estimates and assumptions that are customarily used in chapter 11 cases similar to this one, including the projected costs associated with the administration of the estate and the support required to wind down the Debtors' operations in a hypothetical conversion to a chapter 7 liquidation.  Further, the assumptions contained within the Liquidation Analysis are subject to potentially material changes, including with respect to economic and business conditions as well as legal rulings.

13. Estimated Plan recoveries were determined, where applicable, based on the valuation analysis prepared by Houlihan Lokey Capital, Inc., which is attached to the Disclosure Statement as <u>Exhibit E</u> (the "<u>Valuation Analysis</u>") and described in the *Declaration of Andrew Turnbull, Managing Director of Houlihan Lokey Capital, Inc., in Support of the Debtors' Disclosure Statement for, and Confirmation of, the Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc., and Its Debtor Affiliates* (the "<u>Turnbull Declaration</u>"). The Valuation Analysis estimates a range of total enterprise and equity value of the Reorganized Debtors. Informed by the Valuation Analysis, the projected recoveries under the Plan and the results of the Debtors' Liquidation Analysis for all holders of Claims and Interests are as follows:

| Class | Claims and Interests | Plan Recovery | Liquidation Analysis Recovery (Range)[4] |
|---|---|---|---|
| Class 1 | Other Secured Claims | 100% | 100% |
| Class 2 | Other Priority Claims | 100% | N/A |
| Class 3 | First Lien Claims | 100% | 16% – 23% |
| Class 4 | Second Lien Term Loan Claims | 23% | 0% |
| Class 5 | General Unsecured Claims | 100% | 0% |
| Class 6 | Intercompany Claims | 100% / 0% | N/A |
| Class 7 | Intercompany Interests | 100% / 0% | N/A |
| Class 8 | Existing Interests | 0% | N/A |
| Class 9 | Section 510(b) Claims | 0% | N/A |

---

[4] The Liquidation Analysis Recovery is based on the assumption that the operations of both the Debtors and their non-Debtor affiliates will cease on the Liquidation Date.

14. Comparing the range of projected recoveries under the Liquidation Analysis to the estimated Plan recoveries indicates that each Holder of an Impaired Claim or Interest will receive or retain under the Plan property of a value, as of the Effective Date, that equals or exceeds the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. This is true even at the high end of the range of projected recoveries under the Liquidation Analysis. In a hypothetical chapter 7 liquidation, Holders of First Lien Claims (Class 3) would receive a recovery of between 16% and 23%, which is significantly less than their 100% recovery under the Plan. Holders of Second Lien Term Loan Claims (Class 4) and General Unsecured Claims (Class 5) would not receive any recovery at all, which is significantly less than their 23% and 100% recovery, respectively, under the Plan. Based on the Debtors' and their advisors' Plan valuation and recoveries set forth in the Plan, the Disclosure Statement, the Liquidation Analysis, and the financial projections for the Reorganized Debtors prepared by the Debtors' management and advisors and attached as <u>Exhibit D</u> to the Disclosure Statement—as well as the estimates and assumptions used therein—the liquidation recoveries are substantially lower than the recoveries provided by the Plan.

15. Accordingly, I believe the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing Declaration are true and correct to the best of my knowledge, information, and belief.

Dated: September 26, 2022

/s/ *Marc Brown*
Marc Brown
Managing Director
AlixPartners
300 N. La Salle Street, Suite 1800,
Chicago, Illinois 60654